UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
SPANSKI ENTERPRISES, INC. and
POLTEL INTERNATIONAL L.L.C.,         :

            Plaintiffs,         :
                                                   07 Cv.930 (GEL)

              v.                       :   DECLARATION OF
                                                 BOGUSLAW M. SPANSKI
TELEWIZJA POLSKA, S.A., ANNA          :
MILEWSKA, KRZYSZTOF SZTANDERA,
MARCIN BOCHENEK, JOHN DOES 1 - 10,    :

            Defendants.          :
------------------------------------------------------------X

        I, BOGUSLAW M. SPANSKI, hereby declare as follows:

        1.      I am the President of plaintiff Spanski Enterprises, Inc. ("SEI") and the sole managing member of plaintiff Poltel International L.L.C. ("Poltel"). I have personal knowledge of the matters set forth herein. I respectfully submit this declaration as my written direct testimony in support of plaintiffs' motion pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction enjoining defendant Telewizja Polska, S.A. ("TVP"), and all those acting in concert with it, from proceeding with or participating in a proceeding TVP commenced against SEI and Poltel in the Court of Arbitration at the Polish Chamber of Commerce.

        2.      I was born and raised in Poland. After finishing my high school education I attended School of Architecture of Silesian Institute of Technology where, in 1979, I obtained a Master Degree in Architecture. The same year, I started working as the architect at the Planning Department of the City of Gliwice.

3. In or about 1981, during a time of rampant uncertainty in Poland, my wife and I were granted political asylum in Italy and ultimately emigrated to Canada, where, after certifying my professional qualifications, I started working as an architect. During that time I also started various entrepreneurial ventures including inventing and commercializing a board game known as "Investor," which in 1985 was acclaimed one of the most successful board games in Canada, and later establishing a successful publishing company.

4. The declaration of martial law in Poland on December 13, 1981, resulted in a new wave of Polish immigrants coming to the United States and Canada. Beginning in the early 1990's, I and my company, SEI, perceived that there would be an emerging market to provide this greatly expanding community with a television channel in our "old tongue." I was encouraged by representatives of the Polish Government, in particular the Consul General of Poland in Toronto, who knew my business accomplishments, to undertake this task.

5. I contacted the then President of TVP in Warsaw, Mr. Wieslaw Walendziak, in January of 1994, and was asked to undertake negotiations regarding obtaining the license to TV Polonia with the International Relation Department of TVP.

6. After nearly one year of negotiations, by agreement dated as of December 14, 1994 (the "Agreement"), SEI acquired from TVP the exclusive right to broadcast a Polish language television channel produced by TVP, TV Polonia, including its copyrighted content in North and South America (the "Territory"). A true and correct copy of the Agreement (in Polish) is annexed hereto as Exhibit 1. A certified English translation of the Agreement is annexed hereto as Exhibit 2.

7. In exchange for these exclusive rights from TVP, SEI agreed, among other things, to pay TVP a sum equal to eight percent (8%) of the revenues received each calendar quarter derived from SEI's exploitation of TV Polonia and its content. The Agreement's term is twenty-five (25) years from the date of its execution, with an option to extend for ten (10) additional years.

8. Section 11 of the Agreement provided that the Agreement was governed by Polish law and that any disputes resulting from the Agreement would be handled by the Court of Arbitration at the Polish Chamber of Commerce in Warsaw, Poland.

9. After the execution of the Agreement, SEI expended more than $1 million establishing the necessary infrastructure to facilitate the distribution of TV Polonia including, among other things, establishing necessary operating companies, Telewizja Polska USA, Inc. and Telewizja Polska Canada Inc., hiring executives and technical personnel, and acquiring necessary equipment. This equipment and personnel were required in order to uplink TV Polonia's signal to the transatlantic satellite, lease the transponder channel on the satellite, downlink the TV Polonia signal from a satellite and to distribute the programming to various cable and satellite television operators in the United States and Canada. Through these efforts SEI created the market for TV Polonia in North America, and later substantially expanded the market for TV Polonia and other Polish language programming.

10. Pursuant to section 8 of the Agreement, TVP agreed that SEI would be permitted, but not required, to form a new corporation to carry out the business contemplated by the parties in the Agreement. This provision was included in the Agreement at the request of SEI because SEI, as a Canadian company, was concerned

that it might be necessary to establish an entity in the United States or in other countries in order to market TV Polonia throughout the Territory.

11.     To that end, on February 1, 1995, SEI caused plaintiff Poltel, a Delaware limited liability company, to be formed. By assignment dated as of March 7, 1995 (Exhibit 3 hereto) SEI transferred all of its right, title and interest under the Agreement to Poltel. Thereafter, by instruments dated as of March 14, 1995, Poltel licensed its rights under the Agreement to Telewizja Polska Canada, Inc. and Telewizja Polska U.S.A., Inc., in the respective territories of Canada and the United States. (Exhibits 4 and 5 hereto).

12.     In or about 1998, TVP objected to the Poltel assignment claiming, among other things, that the assignment by SEI to Poltel was not permitted by the Agreement and furthermore that the name "Poltel" was proprietary to TVP. Although SEI disagreed with TVP's position regarding these issues, SEI accommodated TVP's request and the assignment was cancelled by instrument dated July 27, 1999, which returned all rights under the Agreement to SEI. (Exhibit 6 hereto).

13.     TVP was fully aware that the Poltel assignment had been cancelled. Indeed, in addition to our written communications, I personally handed Mr. Jaroslaw Pachowski, a member of TVP's Board of Directors, an executed copy of the cancellation of the assignment on August 4, 1999, as well as new license agreements between SEI and Telewizja Polska Canada, Inc. and SEI and Telewizja Polska USA, Inc., at a meeting we were both attending in Los Angeles, California.

14.     In light of SEI's continuing success in promoting TV Polonia, beginning in or about 1999, TVP and SEI began discussing expanding their relationship beyond traditional television programming distribution methods (satellite, cable) in North and

4

South America. By addendum dated as of November 4, 1999, which was drafted by TVP's counsel (the "First Addendum"), TVP expressly granted SEI the exclusive right to broadcast TV Polonia over the internet within the Territory.[1] A true and correct copy of the First Addendum in its original Polish is annexed hereto as Exhibit 7. A certified English translation of the First Addendum is annexed hereto as Exhibit 8.

15. Beginning in our about 2002, after three additional years of successful collaboration, TVP and SEI commenced negotiations regarding a further expansion of their relationship. By instrument dated April 29, 2002, SEI and TVP entered into a second addendum to the Agreement (the "Second Addendum"). A true and correct copy of the Second Addendum in its original Polish is annexed hereto as Exhibit 9. A certified English translation of the Second Addendum is annexed hereto as Exhibit 10.

16. The Second Addendum, which was also drafted by TVP's counsel, altered the parties' relationship in two significant ways. First, the Second Addendum granted SEI exclusive rights in and to a second channel, TVP 3 Regionalna ("TVP 3"), including the copyrighted content of TVP 3. (Second Addendum § 1). The term of SEI's exclusive rights in TVP 3 was for ten years and expires in 2012. The term for TV Polonia remained 25 years and will expire in 2019, with an option to extend for an additional 10 years.

17. The Second Addendum also expressly provided that the entire Agreement and its addendums would be governed by New York law and that any and all disputes

---

[1] The Agreement provided SEI with exclusive rights in the Territory via satellite, cable and any presently known and unknown means of distributing a television signal. With the expansion of the internet in the late 1990's, as SEI started distribution of TV Polonia content on the internet, TVP requested that we include the internet in the First Amendment as a "known" method of distribution.

between the parties relating to the Agreement would be resolved by the Federal Court in the City of New York. (Second Addendum § 8). In adding this provision, the parties intended to amend and supersede section 11 of the Agreement which provided that Polish law governed the Agreement and that any disputes would be handled by arbitration in Warsaw, Poland.

18. The addition of section 8 of the Second Addendum was the product of extensive negotiations between SEI and TVP and was a crucial term of the deal for SEI for several reasons. First, in my experience, large commercial entities such as TVP, and particularly those owned by the Polish government as is TVP, can receive "favorable" treatment in the Polish courts and arbitrations, to the unfair detriment of those like me and SEI. Second, in light of the fact that SEI was granting rights to substantial entities throughout the Territory, it was equally important that our Agreement with TVP be governed by a more stable body of commercial law, as I understand is the case in New York.

19. In connection with the negotiation of the Second Addendum, I had extensive communications with representatives of TVP including Antoni Bartkiewicz, Ryszard Swiderski, Jaroslaw Pachowski, Robert Kwiatkowski, as well as other members of TVP's Board of Directors.

20. I first raised with TVP the issue of changing the governing law of the Agreement and revoking our agreement to arbitrate on March 27, 2002, while we were negotiating the Second Addendum (Exhibit 11 hereto; a certified translation of that document is attached as Exhibit 12 hereto). In my March 27, 2002 e-mail, I proposed that section 11 of the Agreement be changed in the Second Addendum to require the

6

application of American law and that any disputes would be resolved in the Federal Courts in New York City. I explained to Mr. Bartkiewicz that these changes were extremely important to SEI and to the companies that were undertaking delivery and distribution of the signals of TV Polonia and TVP3 Regionalna from SEI and its affiliates.

21. In an e-mail to me dated March 28, 2002 (Exhibit 13 hereto, with corresponding certified translation of that document attached) Antoni Bartkiewicz advised that the legal office of TVP did not feel that there was any basis to change the law of jurisdiction from Polish law to American law. At that time, Ryszard Swiderski of TVP sent me a copy of the proposed Second Amendment (Exhibit 14 hereto, with corresponding certified translation of that document attached) which did not include my proposed changes to Section 11 of the Agreement.

22. By another e-mail dated March 28, 2002 (Exhibit 15 hereto, with corresponding certified translation of that document attached) , I again explained to Mr. Bartkiewicz why the changes to section 11 of the Agreement were required and that if TVP's unwillingness to agree to change the governing law and arbitration agreement would jeopardize our ability to expand the distribution of TV Polonia in South America.

23. By e-mails dated March 29, 2002, April 13, 2002 and April 18, 2002, I communicated with several individuals at TVP, including Ryszard Swiderski, Tadeusz Skoczek, Tomasz Posadzki and Jaroslaw Pachowski, regarding our need for the Second Addendum to change section 11 of the Agreement and I included specific language constituting SEI's proposal. (Exhibits 16, 17 and 18, hereto, with corresponding certified translations of those documents attached).

7

24. After additional negotiations, regarding other provisions of the Second Addendum, I was advised on at least two occasions that the Board of TVP was considering SEI's proposed modifications to section 11 of the Agreement. On April 4, 2002, I received an e-mail from Ryszard Swiderski and Agnieszka Jaworska (it was actually my understanding at the time that Mr. Swiderski sent me e-mails from Ms. Jaworska's e-mail address) that the Board of TVP had not changed its position regarding SEI's proposed modifications (Exhibit 19 hereto, with corresponding certified translation of that document attached). On April 17, 2002, Mr. Swiderski (through Ms. Jaworska's address) e-mailed me again and advised that the Board of TVP had deliberated over SEI's proposed changes, but had not made a final decision. (Exhibit 20 hereto, with corresponding certified translation of that document attached).

25. By e-mail dated April 22, 2002 (Exhibit 21 hereto, with corresponding certified translation of that document attached) Mr. Swiderski proposed that the Agreement would be subject to American law for only six months and would revert to Polish law unless the parties otherwise agreed. I communicated to Mr. Swiderski that this proposal would not be acceptable.

26. On or about April 25, 2002 I received from TVP a draft of the Second Addendum which included, in section 8, TVP's agreement that New York law would apply to the Agreement and that the Federal Courts in the City of New York would resolve any and all disputes.

27. The only change that TVP made to the language I proposed was making it more clear that the change pertained to the entire Agreement, including its amendments. It was clear to me, and I have every reason to believe clear to TVP, that section 8 of the

8

Second Amendment modified and superseded section 11 of the Agreement, including terminating our prior agreement to arbitrate in Poland under Polish law. That was the whole point of the negotiations and that provision of the Second Addendum.

28. On April 25, 2002, I sent Mr. Swiderski and Ms. Jaworska an e-mail (Exhibit 22 hereto, with corresponding certified translation of that document attached) with a version of the Second Addendum that SEI was able to accept which included section 8 as drafted by TVP.

29. On April 26, 2002, Mr. Swiderski sent me by e-mail an execution copy of the Second Addendum (Exhibit 23 hereto, with corresponding certified translation of that document attached) which, again, included our agreement to change the governing law and that any and all disputes would be resolved in the New York Courts. Shortly thereafter, I received an executed version of the Second Addendum from TVP, which I signed and returned to TVP.

30. At no time, during the negotiation of the Second Addendum or thereafter did anyone at TVP communicate to me or SEI any belief or understanding that SEI and TVP would still be bound to arbitrate any disputes following the execution of the Second Addendum. To the contrary, TVP's representatives, including Mr. Swiderski, told me on numerous occasions that TVP and its Management Board understood the meaning of these changes and that was why it took over a month to negotiate a single provision of the Second Addendum.

31. In or about 2006, I learned that due to political changes in Poland, among other things, the entire senior management of TVP was replaced. In an effort to strengthen SEI's relationship with these new TVP executives, I traveled to Warsaw in the

9

Summer of 2006 to familiarize them with TVP's relationship with SEI and potentially seek out new opportunities that we could jointly pursue. Shortly thereafter, Ms. Anna Milewska of TVP sent me a proposed "new" agreement between SEI and TVP. A copy of TVP's proposed "new agreement" which was provided to me in both English and Polish is annexed hereto as Exhibit 24.

32. TVP's proposed new agreement was unacceptable to SEI for a number of reasons. Among other things, the TVP sought to require SEI to surrender its 25-year exclusive rights in TV Polonia, surrender its 10-year exclusive rights in TVP 3, in exchange for which SEI would receive a one-year, non-exclusive license and potentially be obligated to pay TVP a higher share of revenues. In addition, TVP's proposed new agreement (at Article 6) would have reinstated the application of Polish law and the parties' agreement to arbitrate any disputes in Warsaw, Poland. TVP's proposed agreement was never accepted by SEI.

33. Finally, the minimal documents produced by TVP to my counsel further demonstrates to me that TVP was fully aware at all times that the Agreement required any disputes between SEI and TVP to be resolved before this Court under New York law. TVP's own documents contain numerous statements expressing its understanding (as well as ours) that the Second Addendum superseded the prior understanding to arbitrate in Poland under Polish law:

- The Addendum is to remain in effect for a period of 10-years from the date of signing (section 6 of the addendum). The Addendum does not specify the procedure for dissolution, while it includes significant amendment unfavorable to TVP: The Agreement (per point 1) becomes subject to the laws of the State of New York, and the settlement of disputes falls under the jurisdiction of the Federal Courts. (DEF00015-17; document dated March 3, 2005; Exhibit 25 hereto; a certified translation of that document is attached as Exhibit 26 hereto).

- The Agreement ought to be dissolved, but the matter isn't simple, as the provisions of the Agreement deals exclusively with the procedure in the event of substantial violations. The applicable law for the Agreement is the law of the State of New York (Addendum No. 2) ….. The only solution is dissolving the Agreement through mutual consent of both parties. (Id., Exhibit 25)

- The next addendum of April 29, 2002 introduced more changes to the agreement: ….It was agreed that the agreement is to be subject to the laws of the State of New York of the United States of North America, and any disputes are to be settled by Federal courts in the city of New York. Please note: as regards the changes in the amendment significant for TV Polonia. The most significant and pregnant is the change of jurisdiction … (DEF00018-29; March 18, 2005 letter from the President of TVP to the Chairman of the Supervisory Board; Exhibit 27 hereto; a certified translation of that document is attached as Exhibit 28 hereto).

- Appendix no. 2 of 4/29/2002: The following changes were made: ….The Contract is subject to the law of the State of New York, USA. All disagreements are to be resolved by the federal courts in the city of New York. ("PROTOCOL 7/2005; DEF00030 through DEF00063; Exhibit 29 hereto; a certified translation of that document is attached as Exhibit 30 hereto)

- The content of amendment no. 2 was the subject of the discussion at meetings of the Board of the company on March 26-27, 2003 and on April 17, 2004. The legal analysis concerned the change of jurisdiction from Polish to American law. The Acting Director of the Legal Department XXX stated that from the formal-legal point of view, there were no obstacles to signing the amendment in this vein, even though it might bring about great difficulty for TVP S.A. if it were to come to any claims. After becoming familiar with the comments on the project the Board accepted the project and obligated the Chairman XXX to execute it. (Id. DEF00040)

- Negative points to be considered in the Contract …..In the opinion of the auditors, the provisions introduced to the contract by the two addenda are not favorable for TVP-S.A. in these points: ….In Addendum no. 2: …The change of legal jurisdiction of the Contract from Polish law to the law of the State of New York in USA, and the transfer of possibilities of resolving disputes from Arbitration Court of the National Chamber of Commerce in Warsaw to federal courts in the city of New York.(Id. DEF00051-52)

- **Proposals**: In light of the above, it is necessary to do the following: … 1. With help of a specialized law firm, to make an analysis of the provision of the Contract on the basis of the law of the State of New York in the USA, identifying the possibilities of changes of provisions that are disadvantageous for the company. (Id. DEF00056)

11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 2nd day of April 2007.

/s/ BOGUSLAW M. SPANSKI

565209