# EXHIBIT 1

# UMOWA

TELEWIZJA POLSKA S.A.
BIURO KSIĘGOWOŚCI

2 6 SIE. 1996

zawarta dnia ......... 1994 roku w Warszawie, pomiędzy:

"Telewizją Polską" Spółka Akcyjna
z siedzibą w Warszawie
(zwaną dalej "TVP"),
reprezentowana przez ...........................

a

Spanski Enterpises Inc.
z siedzibą w Mississauga, Ontario, Kanada
(zwaną dalej "SEI"),
reprezentowaną przez Prezesa Bogusława M.Spanskiego.

## § 1.

Dla celów niniejszej umowy Strony ustalają, że:

a) "TV POLONIA" – oznacza program telewizyjny produkowany
   przez TVP i emitowany przez TVP za pośrednictwem
   przekazu satelitarnego;
b) "Sygnał" – oznacza sygnał programu "TV POLONIA" emitowany
   przez TVP za pośrednictwem przekazu satelitarnego;
c) "Terytorium" – oznacza Amerykę Północną i Amerykę
   Południową;
d) "Program" – oznacza polskojęzyczny program telewizyjny
   stworzony przez SEI i emitowany na Terytorium;
e) "Audycja" – oznacza część programu telewizyjnego,
   stanowiącą odrębną całość ze względu na treść,
   przeznaczenie lub autorstwo zawartych w niej przekazów.

## § 2.

1. TVP oświadcza, że jest producentem i prawnym posiadaczem
   Sygnału TV POLONIA.

2. TVP udziela SEI wyłącznego prawa do jednorazowego
   wykorzystywania Audycji TV POLONIA w ramach Programu.

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

SEI 000032

## § 2.

1.  TVP oświadcza, że jest producentem i prawnym posiadaczem Sygnału TV POLONIA.

2.  TVP udziela SEI wyłącznego prawa do jednorazowego wykorzystywania Audycji TV POLONIA w ramach Programu.

3.  W celu realizacji ust.2, TVP udziela SEI wyłącznego prawa do odbioru i wykorzystania Sygnału na Terytorium.

## § 3.

1.  Strony uzgadniają, że Program składać się będzie z Audycji TV POLONIA oraz - w miarę możliwości - z Audycji produkowanych na Terytorium i z reklam.

2.  TVP wyraża zgodę na przygotowywanie przez SEI Programu zgodnie z przyjętymi na Terytorium normami obyczajowymi i zwyczajami.

3.  SEI zobowiązuje się do zachowania pełnej integralności poszczególnych Audycji TV POLONIA.

4.  TVP wyraża zgodę na używanie przez SEI w celu realizacji niniejszej Umowy znaku graficznego TV POLONIA.

5.  SEI zobowiązuje się do przestrzegania praw osobistych twórców, artystów wykonawców i innych osób, w zakresie swej działalności programowej.

## § 4.

1.  TVP zobowiązuje się emitować program TV POLONIA o minimalnym czasie emisji 16 godzin na dobę oraz ponosić wszelkie koszty związane z produkcją i emisją tego programu.

2.  TVP zobowiązuje się zawiadamiać SEI o wszelkich planowanych zmianach technicznych parametrów emisji Sygnału oraz przekazywać dane techniczne dotyczące planowanych zmian z minimalnym wyprzedzeniem czasowym wynoszącym 90 dni.

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

**SEI 000033**

3. SEI zobowiązuje się ponosić wszelkie koszty związane z odbiorem i wykorzystaniem Sygnału TV POLONIA, promocją i marketingiem Programu oraz z jego produkcją i emisją na Terytorium, w tym koszty wynagrodzeń z tytułu ochrony praw autorów utworów literackich i muzycznych zwanych małymi prawami oraz dodatkowe koszty wykorzystania materiałów informacyjnych.

§ 5.

1. SEI zobowiązuje się do emisji Programu za pomocą przekazu satelitarnego, połączeń kablowych oraz innych, obecnie znanych i nie znanych technologii dystrybucji sygnału telewizyjnego. Decyzje, jakimi technikami dystrybucyjnymi Program będzie emitowany na Terytorium będą należeć jedynie i wyłącznie do SEI.

2. SEI zobowiązuje się do:
   - uzyskania 25.000 (dwadziestu pięciu tysięcy) zdeklarowanych subskrybentów przed rozpoczęciem emisji Programu;
   - rozpoczęcia stałej emisji Programu nie później niż do 1.XII. 1995 r.

§ 6.

1. W zamian za uzyskane od TVP prawa, o których mowa w § 2 ust.2 i ust.3, SEI zobowiązuje się przekazywać TVP kwoty płatne w walucie krajów, w których uzyskany został przychód w wysokości 8% (ośmiu procent) przychodów uzyskanych w danym kwartale z tytułu:
   a) stałych opłat subskrybentów Programu;

   b) emisji reklam w ramach Programu.

2. Po rozpoczęciu stałej emisji Programu SEI zobowiązuje się powiadamiać TVP w formie noty uznaniowej przesyłanej faxem i potwierdzanej listem poleconym o wysokości swych kwartalnych przychodów w ciągu 60 dni po zakończeniu każdego kwartału.

3. TVP zobowiązuje się wystawiać SEI faktury na kwoty, o których mowa w ust.1 i przesyłać je faxem oraz listem poleconym, w ciągu 3 dni po otrzymaniu od SEI przesłanej faxem noty uznaniowej, o której mowa w ust.2.

3

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

SEI 000034

4. SEI zobowiązuje się dokonywać wpłat kwot, o których mowa w ust.1 przelewem na rachunek bankowy wskazany przez TVP niezwłocznie po otrzymaniu od TVP przesłanej faxem faktury, o której mowa w ust.3, ale nie później niż w ciągu 14 dni od daty otrzymania faxu tej faktury.

## § 7.

1. SEI zobowiązuje się przekazywać TVP w ciągu 60 dni po zakończeniu danego kwartału kwartalne sprawozdania finansowe, na podstawie których obliczane będą należności TVP wynikające z niniejszej Umowy oraz pisemną informację dotyczącą liczby subskrybentów i zasięgu emisji Programu.

2. TVP przysługuje prawo do przeprowadzania na własny koszt, raz w roku audytu finansowego SEI, przeprowadzanego przez jedną z międzynarodowych firm księgowych dotyczących jedynie przychodów, o których mowa w § 6 ust.1.

3. TVP zobowiązuje się uprzedzać wspomniane wyżej podmioty o zamiarze przeprowadzania takich audytów z wyprzedzeniem 60 dni.

4. W przypadku stwierdzenia przez audyt nieprawidłowości przekraczających 10 % należnych TVP płatności, SEI zobowiązuje się pokryć koszt przeprowadzenia audytu finansowego.

5. Odsetki karne za zwłokę w regulowaniu zobowiązań SEI wobec TVP obliczane będą w oparciu o obowiązującą w dniu wymagalności danej wierzytelności 30-dniową stopę procentową LIBOR plus dwa punkty procentowe.

## § 8.

1. SEI oświadcza i TVP zgadza się, że:
   - w celu realizacji niniejszej Umowy założy korporację w państwie na Terytorium, na którą przeleje wszelkie prawa, zobowiązania i wierzytelności wynikające z niniejszej Umowy;
   - zadaniem tej korporacji będzie tworzenie Programu, o którym § 3 ust.1-3 oraz jego emisja na Terytorium.

2. SEI zobowiązuje się, że korporacja,o której mowa w ust.1 będzie prowadziła działalność wyłącznie w zakresie

4

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej S

Magdalena Staniszewska
radca prawny

SEI 000035

związanym z tworzeniem i emitowaniem Programu.

3. SEI zobowiązuje się niezwłocznie powiadomić TVP o założeniu korporacji,o której mowa w ust.1 oraz przedstawić kopie odpowiednich dokumentów założycielskich tej korporacji oraz dokumentów poświadczających przejęcie praw, zobowiązań i wierzytelności, będących przedmiotem niniejszej Umowy.

## § 9.

1. TVP nie ponosi odpowiedzialności za zaprzestanie emisji TV POLONIA spowodowane przez siłę wyższą.

2. W razie zaprzestania emisji lub likwidacji TV POLONIA, jak też w wypadku istotnego zmniejszenia czasu emisji TV POLONIA, Strony niezwłocznie uzgodnią inną formę współpracy, umożliwiającą nadawanie Programu, na warunkach możliwie zbliżonych do ustanowionych w niniejszej Umowie.

3. W razie zaistnienia istotnych zmian okoliczności, od których zależy wykonywanie niniejszej Umowy, Strony niezwłocznie przystąpią do jej renegocjacji.

4. TVP zastrzega sobie prawo do zmian w programie TV POLONIA, zmiany jego nazwy lub znaku graficznego, przy zachowaniu ogólnego charakteru tego programu.

## § 10.

1. Niniejsza Umowa zostaje zawarta na okres 25 (dwudziestu pięciu) lat i wchodzi w życie z dniem jej podpisania. TVP i SEI mogą przedłużyć jej obowiązywanie na kolejne okresy dziesięcioletnie.

2. Każda ze Stron może wypowiedzieć Umowę, gdy druga Strona dokona istotnego naruszenia postanowień niniejszej Umowy. W przypadku zaistnienia takiego naruszenia, Umowa może zostać rozwiązana w ciągu 90 dni od daty otrzymania przez stronę naruszającą powiadomienia, w którym Strona powiadamiająca wskaże naruszenie, a te nie zostaną skorygowane przez Stronę naruszającą. W razie zaistnienia istotnego naruszenia, które nie może być skorygowane, wypowiedzenie Umowy jest uzależnione od powtórzenia się takiego naruszenia w okresie 1 roku.

5

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

SEI 000036

## § 11.

1. Niniejsza Umowa podlega prawu polskiemu.

2. Wszelkie spory wynikłe na tle niniejszej Umowy będą rozpatrywane przez Sąd Arbitrażowy przy Krajowej Izbie Gospodarczej w Warszawie według regulaminu tego Sądu.

## § 12.

Realizacja niniejszej Umowy jest całkowicie uzależniona od posiadania prawnie wymaganych zezwoleń i licencji uzyskiwanych od właściwych organów w każdym kraju na Terytorium i na terenie Rzeczpospolitej Polskiej.

## § 13.

W przypadku, gdy którekolwiek postanowienie lub część niniejszej Umowy uznane zostanie za nieważne lub unieważnione, pozostała część praw i zobowiązań Stron pozostaje w całej mocy i musi być przestrzegana.

## § 14.

Umowa jest wiążąca dla wszystkich następców prawnych Stron, jak również dla innych podmiotów prawnych, które w jakikolwiek sposób przejmą prawa do działalności jako Strona w niniejszej Umowie.

## § 15.

1. Umowa zawiera wszystkie uzgodnienia zawarte pomiędzy Stronami w związku z przedmiotem Umowy.

2. Zmiany niniejszej Umowy wymagają formy pisemnej pod rygorem nieważności.

## § 16.

Wszelkie zawiadomienia i dokumenty wydawane lub sporządzane przez którąkolwiek ze Stron będą przekazywane

6

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

drugiej Stronie osobiście lub wysyłane pocztą poleconą z
potwierdzeniem odbioru lub telefaxem z potwierdzeniem
przyjęcia przekazu na poniższy adres lub na adres
wskazany w formie pisemnej przez Stronę:

TELEWIZJA POLSKA S.A                    SPANSKI ENTERPRISES INC.

ul.J.P.Woronicza 17                     5100 Montclair Drive
00-999 Warszawa                         Mississauga, Ontario
Polska                                  L5M 5A6
                                        Canada

Biuro Zarządu                           B.M.(Bob) Spanski
                                        Prezes

Tel.(48 2) 647-81-02                    Tel.(01 905) 5699049
Fax.(48 22) 43-33-61                    Fax.(01 905) 5699049


§ 17.

Niniejszą Umowę sporządzono w języku polskim w czterech
jednobrzmiących egzemplarzach, po dwa egzemplarze dla
każdej ze stron.


Telewizja Polska S.A.                   Spanski Enterprises Inc.

*Walendwek*

*B. Borkowski*


7       Za zgodność
        z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

**SEI 000038**

# EXHIBIT 2

*USA*                     *Second Version*

[stamp]
TELEWIZJA POLSKA, S.A.
BOOKKEEPING OFFICE
[illegible]
*961468*
[stamp] August 26, 1996

## AGREEMENT

effected on --- 1994 in Warsaw, by and between:

"Telewizja Polska" S.A. [publicly held corporation]
with headquarters in Warsaw
(hereinafter "TVP")
represented by ---

and

Spanski Enterprises Inc.
With headquarters in Mississauga, Ontario, Canada
(Hereinafter "SEI")
represented by Mr. Boguslaw M. Spanski, President

### § 1

The following terms are hereby defined for the purposes of this Agreement:

a) "TV POLONIA" -- refers to the television program produced by TVP and broadcast by TVP via satellite;
b) "Signal" – refers to the "TV POLONIA" program signal broadcast by TVP via satellite;
c) "Territory" – refers to North American and South America;
d) "Program" – refers to the Polish language TV program created by SEI and broadcast in the Territory
e) "Show"-- refers to a part of the television program constituting a separate unit with regard to its contents, destination or authorship of message contained therein

### § 2

1. TVP declares that it is the producer and legal owner of the TV POLONIA Signal.
2. TVP gives SEI the exclusive right to one-time use of TV POLONIA shows in its Program.

[illegible signature]                          **This is a true copy of the original**

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel

### § 2

1. TVP declares that it is the producer and legal owner of the TV POLONIA Signal.
2. TVP gives SEI the exclusive right to one-time use of TV POLONIA shows in its Program.
3. To implement Section 2 above, TVP grants SEI the exclusive right to receive and use the Signal in the Territory.

### § 3

1. The parties agree that the Program will consist of TV POLONIA shows and – where practical -- Shows produced in the Territory and advertisements.
2. TVP agrees that SEI will produce Shows in accordance with community standards and customs prevailing in the Territory.
3. SEI undertakes to preserve the full integrity of each TV POLONIA show.
4. TVP agrees to the use of TV POLONIA's logo by SEI in implementing this Agreement.
5. SEI undertakes to respect individual rights of creators, performers and other persons in its programming activity.

### § 4

1. TVP undertakes to broadcast TV POLONIA programs with minimal broadcast time of 16 hours per day and to be responsible for all costs related to production and broadcast of this program.
2. TVP undertakes to notify SEI of any planned technical changes to the emitted signal parameters and to transfer technical data regarding such planned changes at least 90 days prior to implementation.

2

This is a true copy of the original

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel

[illegible signature]

3. SEI undertakes to be responsible for all costs related to reception and use of TV POLONIA's signal, Program promotion and marketing as well as production and broadcast in the Territory including the cost of royalties for authors of copyrighted literary and musical works, i.e. so-called petty rights, as well as additional costs of using informational materials.

## § 5

1. SEI undertakes to broadcast the Program via satellite, cable connections and other currently known and as yet unknown television signal distribution technologies. Decisions as to distribution technologies for Program broadcast within the Territory will be at the sole discretion of SEI.
2. SEI undertakes to:
   - recruit 25,000 (twenty-five thousand) subscribers before the start of Program broadcast;
   - begin continuous Program broadcasting until no later than 12/1/1995.

## § 6

1. In exchange for the rights granted by TVP as described in § 2, Sections 2 and 3 above, SEI undertakes to transfer to TVP payments, paid in currencies of the countries in which revenues have been generated, in the amount of 8% (eight percent) of revenues generated in each quarter from:
   a) Regular payments from Program subscribers
   b) Broadcast of advertisements during the program.
2. After the beginning of continuous Program broadcasting, SEI undertakes to notify TVP, within <u>60 days</u> of the end of each quarter, of the amount of its quarterly revenues by a faxed credit memorandum confirmed by registered mail.
3. TVP undertakes to issue invoices for SEI for the amounts listed in Section 1 above and to send them by fax and by registered mail within 3 (three) days of receipt by SEI of the faxed credit memorandum referred to in Section 2.

3

**This is a true copy of the original**

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel

[illegible signature]

4.  SEI undertakes to transfer payments referred to in Section 1 to the bank account indicated by TVP immediately after receiving the faxed invoice from TVP referred to in Section 3, but no later than within 14 days of receipt of the faxed invoice.

### § 7

1.  SEI undertakes to forward to TVP within 60 days of the end of each quarter, quarterly financial reports to be used as the basis for calculation for amounts due to TVP hereunder, as well as information in writing regarding the number of subscribers and program broadcast coverage.
2.  With regard to revenues referred to in § 6 Section 1, TVP has the right to perform, once per year and at its own cost, a financial audit of SEI, carried out by one of the international auditing firms.
3.  TVP undertakes to give the above-mentioned subject 60 days notice of its intention to perform an audit.
4.  If the audit finds irregularities in excess of 10% of the amounts due to TVP, SEI undertakes to cover the cost of the financial audit.
5.  Penalty interest for delayed payment by SEI to TVP will be calculated based on the 30 day LIBOR interest rate in effect on the day when the payment was due plus 2%.

### § 8

1.  SEI represents and TVP agrees that:
    - in order to implement this Agreement it will set up a corporation in a country in the Territory to which it will assign all rights, obligations and liabilities hereunder;
    - The business of said corporation will be creation of the Program referred to in § 3 Sections 1-3 and its broadcast in the Territory.
2.  SEI undertakes to make the corporation referred to in Section 1 to do business consisting only in creation and broadcast of the Program.

4

**This is a true copy of the original**

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel


[illegible signature]

3.  SEI undertakes to notify TVP immediately that the corporation referred to in Section 1 has been set up and to present copies of the relevant incorporation documents as well as of documents certifying that the rights, obligations and liabilities hereunder have been assumed by it.

### § 9

1.  TVP takes no responsibility whatsoever for interruption of TV POLONIA broadcast for any reason beyond its control.
2.  In case of broadcast interruption or liquidation of TV POLONIA as well as if TV POLONIA broadcast time is significantly reduced, the parties will immediately agree to a different form of collaboration enabling Program broadcast on terms and conditions as close as possible to those agreed upon hereunder.
3.  In case of occurrence of significant circumstances on which implementation of this Agreement depends, the parties will immediately begin to renegotiate this Agreement.
4.  TVP reserves the right to introduce changes to the TV POLONIA Program, to change its name or logo, while retaining its general character.

### § 10

1.  The term of this Agreement is 25 (twenty-five) years and it comes into effect on the date of its signing. TVP and SEI may extend its term by subsequent 10 year periods.
2.  Each party may terminate this Agreement if the other party commits a significant violation of its provisions. In case of such violation, this Agreement may be terminated within 90 days of receipt by the offending party of notification in which the notifying party will indicate violations and those will not be corrected by the offending party. If the significant violation cannot be corrected, this Agreement will be terminated if the violation is repeated within 1 year.

5

**This is a true copy of the original**

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel

[illegible signature]

### § 11

1. This Agreement is subject to Polish law.
2. Any disputes resulting from this Agreement will be handled by the Court of Arbitration at the Polish Chamber of Commerce in Warsaw in accordance with its rules of procedure.

### § 12

Implementation of this Agreement is wholly dependent upon obtaining legally required permits and licenses from the appropriate agencies in each of the countries within the Territory and within the Republic of Poland.

### § 13

If any provision or part of this agreement will be deemed invalid or terminated, the remaining rights and obligations of the parties will remain in full force and effect and must be complied with.

### § 14

This Agreement is binding upon all legal successors of the parties as well as for any other legal entities that may in any manner assume the right to act as a party to this Agreement.

### § 15

1. This Agreement contains all understandings between the parties hereto.
2. Changes in this Agreement must be made in writing to be valid.

### § 16

Any notifications and documents issued or made by either party will be forwarded to the

6

**This is a true copy of the original**

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel


[illegible signature]

other party in person or sent by registered mail with confirmation of reception or by fax with confirmation of reception to the address below or to the address indicated in writing by a party.

TELEWIZJA POLSKA S.A.                    SPANSKI ENTERPRISES
17 J.P. Woronicz St.                     5100 Montclair Drive
00-999 Warsaw                            Mississauga, Ontario
Poland                                   L5M 5A6 Canada

Management Office                        B.M. (Bob) Spanski, President

Tel. (48 2) 647-81-02                    Tel. (01 905) 5699049
Fax (48 22) 43-33-61                     Fax (01 905) 5699049

### § 17

This Agreement was made in Polish in four identical copies, two for each party.

Telewizja Polska S.A.                    Spanski Enterprises Inc.
[illegible signature]                    [illegible signature]
[illegible signature]

7

**This is a true copy of the original**

Legal Office of Telewizja Polska
[signature]
Magdalena Staniszewska
Legal Counsel

[illegible signature]

City of New York, State of New York, County of New York

I, Dr. Piotr Graff, hereby certify that the following document ("August 26, 1996 (eff. 1994) Agreement") is, to the best of my knowledge and belief, a true and accurate translation from Polish into English.

_Dr. Piotr Graff_

Dr. Piotr Graff

Sworn to before me this

22nd  day of March 2007

_Paul D. Ralston_

Signature, Notary Public

PAUL D. RALSTON
otary Public, State of New Yo
No. 01RA6023867
Qualified in Queens County
mmission Expires May 3

Stamp, Notary Public

# EXHIBIT 3

ASSIGNMENT

THIS AGREEMENT is made as of the 7th of March, 1995.

B E T W E E N :

> SPANSKI ENTERPRISES INC., a corporation incorporated under the laws of the Province of Ontario
>
> (hereinafter referred to as the "Assignor")

- and -

> POLTEL INTERNATIONAL LLC, a limited liability company formed pursuant to the laws of the State of Delaware
>
> (hereinafter referred to as the "Assignee")

WHEREAS as of the 14th day of December, 1994, the Assignor entered into a certain agreement with Telewizja Polska S.A., a copy of which is annexed hereto as Schedule "A" (the "Agreement");

AND WHEREAS the Assignor proposes to assign all of its right, title and interest in and to the agreement to the Assignor.

NOW THEREFORE, in consideration of the sum of one ($1.00) dollar (the receipt and sufficiency whereof is hereby acknowledged) the parties hereto agree as follows:

1.    The Assignor hereby assigns unto the Assignee all of its right, title and interest in and to the Agreement.

H:\JANINE\WPDOCS\0667-ASN

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

-2-

2.    The Assignee covenants and agrees to indemnify and save the Assignor harmless from any and all liabilities which the undersigned may incur under the Agreement.

IN WITNESS whereof the parties hereto have executed this agreement and affixed their corporate seals.

SIGNED, SEALED AND DELIVERED
in the presence of:

SPANSKI ENTERPRISES INC.

Per:

POLTEL INTERNATIONAL LLC

Per:

E:\JANINE\WPDOCS\9687-ASN

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

# EXHIBIT 4

THIS AGREEMENT made the 14th day of March, 1995,

BETWEEN:

> POLTEL INTERNATIONAL LCC., a limited liability company
> established pursuant to the laws of the State of Delaware (the
> "Licensor")

> - and -

> TELEWIZJA POLSKA CANADA INC., a corporation incorporated
> under the laws of the Province of Ontario and having its head
> office in the City of Mississauga, in the Regional Municipality
> of Peel and Province of Ontario (the "Licensee")

WHEREAS by an agreement made as of the 7th day of March, 1995, the Licensor received
an assignment of a certain agreement made the 14th day of December, 1994, (the "Head
License") a copy of which assignment annexed hereto as Schedule "A", the Licensor acquired
the exclusive right throughout North America and South America to a use the signal of a
certain television program known as "TV POLONIA" as produced by Telewizja Polska S.A.
and transmitted via satellite;

AND WHEREAS the Licensor proposes to grant a licence to the Licensee whereby the
Licensee shall have the exclusive right to a use the signal of the said television program
throughout Canada.

IN CONSIDERATION OF the mutual covenants contained in this agreement, the Licensor
and Licensee agree as follows:

1. DEFINITIONS:

In this agreement the following phrases shall have the following meanings respectively:

"Signal" shall mean the signal of a certain television program known as "TV POLONIA" as

H:\JAN\NEWT\DOCS\9457-AGT

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

2

produced by Telewizja Polska S.A. and transmitted via satellite;

"TV POLONIA" shall mean the television program produced by Telewizja Polska S.A. and known as "TV POLONIA";

"Territory" shall mean the country of Canada;

## 2. LICENCE:

Subject to the payment of the licence fee, the terms and conditions hereof, and the due performance by the Licensee of its obligations, the Licensor grants and the Licensee accepts a limited licence under copyright to use the Signal. This licence does not grant any right to the Licensee to authorize others to transmit telecasts of the Signal, nor does it grant so-called subscription and theatre television rights, i.e., the right to telecast the pictures for reception only by those paying a fee for that or in places where an admission fee is charged. The Licensee shall perform all non-financial obligations of the Licensor under the Head Licence, and without limiting the generality of the foregoing, this license shall be specifically subject to and shall incorporate the terms and conditions of the Head Licence.

## 3. LICENCE FEE:

The Licensee agrees to pay the total licence fee stipulated in Schedule "B", in consideration of the grant made by Licensor of the right and licence to telecast the pictures.

## 4. TERM:

The term of the license granted hereunder shall commence on the date hereof and shall terminate on the 14th day of December, 2019. In the event the Head License is terminated for any reason whatsoever, the term of the license granted hereunder shall be terminated

E:\JANNE\WPDOCS\637-AGT

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

3

as of the same date.

## 5. TAXES:

(1)    The Licensee shall pay without limitation any tax, levy or charge however denominated, imposed or levied against the Licensor (excluding only any applicable net income or franchise taxes) by any statute, law, rule or regulation now in effect or enacted including, without limitation, quotas, licences, contingents, import permits, state, county, city or other taxes however denominated relating to or imposed on licence fees, rentals, negatives, prints or other material, or the right or privilege to use them in connection with any picture licensed, and whether imposed on or levied on or in connection with the importation of any material supplied by the Licensor or otherwise; it being the intent that the licence fee specified as the consideration for the licence granted shall be a net amount, free and clear of any tax, levy or charge of whatever kind however denominated.

(2)    To the extent that any such taxes, levies or charges are paid by the Licensor, the licensee will reimburse the Licensor on demand, and on the failure of licensee to so reimburse the Licensor, the Licensor will have available to it all of the remedies provided for in this agreement with respect to unpaid licence fees as well as other remedies as may be provided by law.

## 6. FORCE MAJEURE:

If the Licensor shall fail to make timely delivery of the Signal, by reason of any act of God, strike, riot, labour dispute, flood, public disaster, public transportation or laboratory difficulties or any other reason, similar or dissimilar, beyond the control of the Licensor, this failure on the part of the Licensor shall not be considered to be a breach or violation of this agreement.

H:\LAN\NEW\7DOCS\67.AGT

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

4

## 7.    DEFAULT AND TERMINATION:

If licensee defaults in the payment of any instalment of the total licence fee, or in the performance of any of its other obligations and the default shall not be cured within thirty (30) days after written notice of it to licensee, or if licensee becomes insolvent, or if a petition under any Bankruptcy Act shall be filed by or against licensee (which petition, if filed against licensee, shall not have been dismissed within thirty (30) days), or if licensee executes an assignment for the benefit of creditors, or if a receiver is appointed for the assets of licensee, or if licensee takes advantage of any applicable insolvency or any other like statute, or if licensee breaches the provisions of any other agreement or agreements entered into with Licensor (any one of the above acts is called "event of default"), then Licensor may terminate this agreement and any other agreements between the parties then in existence by giving written notice to licensee at any time after the occurrence of the event of default. Whether or not Licensor exercises this right of termination, Licensor shall on the occurrence of the event of default have no further obligation to deliver prints of pictures and shall be entitled to immediate return of all prints delivered to and in possession of licensee. An event of default under this agreement shall be considered to be an event of default under all other licences granted by Licensor to licensee, and shall entitle Licensor to terminate any other licences. On the occurrence of any event of default, the total licence fee shall become immediately due and payable. Licensor shall be entitled to recover from licensee in addition to the unpaid portion of the total licence fee, reasonable counsel fees or collection agency fees incurred by Licensor to enforce the provisions of this agreement.

## 8.    LATE PAYMENT:

Without prejudice to any other right or remedy available to Licensor under this agreement, any payment scheduled to be made by licensee to Licensor which is not made within sixty (60) days after the date when the payment was due will bear interest, commencing as from its original due date, at the rate of prime plus five (5%) per cent of any such payment for

EAJANTNEW\DOCS\9407.AGT

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska

5

each thirty (30) days (or part of that) the amount remains unpaid. In the event that the rate of interest exceeds the maximum applicable legal interest rate, the rate will be reduced to the maximum applicable legal interest rate and other terms of this agreement will remain in full force. Any amounts which become due to Licensor shall immediately be due and payable and shall be governed by other terms of this agreement relating to the payment of money.

## 9. COMPLETION OF TELECAST PRIOR TO EXPIRATION OF TERM:

Anything contained in this agreement to the contrary notwithstanding, if licensee telecasts each picture the number of times permitted prior to the expiration of the term set forth in Schedule "A", this licence shall for all purposes be considered terminated as of the date on which the last permitted telecast occurs and any then remaining unpaid portion of the total licence fee will become due and payable. Failure by the licensee to complete the maximum number of telecasts permitted on or before the expiration of the term of the licence granted in this agreement shall not serve to extend the term of this agreement except as provided for in para. 13.

## 10.   NOTICES:

All notices required to be given to the Licensor shall in the absence of specific advice to the contrary, be mailed or cabled to Licensor at _____ and all notices required to be given to licensee shall, in the absence of specific advice to the contrary, be mailed or cabled to the licensee at the address set forth in Schedule "A".

## 11.   ASSIGNMENT:

This agreement and the rights and licences granted to the licensee are personal to Licensee and Licensee agrees not to sell, assign, mortgage, pledge or hypothecate any such rights or

E:MANNEWTDOCS4457-AGT

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

6

licences in whole or in part without obtaining the prior written consent of the Licensor, nor shall any of the rights or licences be assigned or transferred by the licensee to any third party by operation of law or otherwise. Any assignment in violation of the foregoing sentence shall be null and void. In the event that Licensor consents to any such assignment by licensee, licensee shall nevertheless remain fully and primarily responsible and liable to the Licensor for full, complete and faithful performance of all terms of this agreement to be performed on the part of the licensee. Licensor may assign, transfer, pledge or hypothecate all or any part of the licence fees to be received by Licensor. Licensee agrees that in the event of receipt of written notice of assignment by Licensor, moneys due to the Licensor shall be paid to any third party assignee in accordance with such instructions without offset, deduction, counterclaim or other credits which the licensee may have or claim to have against the Licensor except as may be available under the terms of this agreement. Licensor may assign this agreement to any corporation controlling, controlled by or under common control with Licensor or to any person, firm or corporation which may become the Licensor of the pictures.

12.    RESERVATION OF RIGHTS:

All licences, rights and interest in, to and with respect to the pictures not specifically granted to licensee shall be and are specifically and entirely reserved to Licensor and may be fully exploited and utilized by Licensor, without regard to the extent to which any rights may be competitive with licensee.

13.    WAIVER:

A waiver by either party of any breach or default by the other party shall not be construed as a continuing waiver of the same or any other breach or default under this agreement.

E:\JAN\NEW\DOCS\K47.MGT

Za  zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

7

**14.    CONSTRUCTION:**

This agreement shall be interpreted and construed in accordance with the laws of the Province of Ontario, Canada.

**15.    ENTIRE AGREEMENT:**

This agreement constitutes the entire agreement between the parties and all prior understandings are merged here. This agreement cannot be changed or terminated orally and no amendments, modifications or assignments shall be binding on Licensor until accepted in writing by a duly authorized agent or officer of Licensor. The titles of the paragraphs of this agreement are for convenience only and shall not in any way affect the interpretation of this agreement or any paragraph of it.

IN WITNESS whereof the parties have executed this agreement under the hands of their duly authorized officers and have affixed their corporate seals this 14th day of March, 1995.

POLTEL INTERNATIONAL LLC

Per: _____

TELEWIZJA POLSKA CANADA INC.

Per: _____

R:\JANINE\WPDOCS\KEI-AGT

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej S.

Magdalena Staniszewska
radca prawny

# EXHIBIT 5

THIS AGREEMENT made the 14th day of March, 1995,

BETWEEN:

> POLTEL INTERNATIONAL LCC., a limited liability company
> established pursuant to the laws of the State of Delaware (the
> "Licensor")
>
> - and -
>
> TELEWIZJA POLSKA U.S.A. INC., a limited liability company
> established pursuant to the laws of the State of Delaware and
> having its head office in the City of Chicago, in the State of
> Illinois, U.S.A. (the "Licensee")

WHEREAS by an agreement made as of the 7th day of March, 1995, the Licensor received an assignment of a certain agreement made the 14th day of December, 1994, (the "Head License") a copy of which assignment annexed hereto as Schedule "A", the Licensor acquired the exclusive right throughout North America and South America to use the signal of a certain television program known as "TV POLONIA" as produced by Telewizja Polska S.A. and transmitted via satellite;

AND WHEREAS the Licensor proposes to grant a licence to the Licensee whereby the Licensee shall have the exclusive right to a use the signal of the said television program throughout the U.S.A.

IN CONSIDERATION OF the mutual covenants contained in this agreement, the Licensor and Licensee agree as follows:

1. DEFINITIONS:

In this agreement the following phrases shall have the following meanings respectively:

"Signal" shall mean the signal of a certain television program known as "TV POLONIA" as

H:\ANTNEW\7DOCS\0587-AGT.USA

*Za zgodność*
*z oryginałem*

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
*radca prawny*

2

produced by Telewizja Polska S.A. and transmitted via satellite;

"TV POLONIA" shall mean the television program produced by Telewizja Polska S.A. and known as "TV POLONIA";

"Territory" shall mean the country of The United States of America;

## 2. LICENCE:

Subject to the payment of the licence fee, the terms and conditions hereof, and the due performance by the Licensee of its obligations, the Licensor grants and the Licensee accepts a limited licence under copyright to use the Signal. This licence does not grant any right to the Licensee to authorize others to transmit telecasts of the Signal, nor does it grant so-called subscription and theatre television rights, i.e., the right to telecast the pictures for reception only by those paying a fee for that or in places where an admission fee is charged. The Licensee shall perform all non-financial obligations of the Licensor under the Head Licence, and without limiting the generality of the foregoing, this license shall be specifically subject to and shall incorporate the terms and conditions of the Head Licence.

## 3. LICENCE FEE:

The Licensee agrees to pay the total licence fee stipulated in Schedule "B", in consideration of the grant made by Licensor of the right and licence to telecast the pictures.

## 4. TERM:

The term of the license granted hereunder shall commence on the date hereof and shall terminate on the 13th day of December, 1999. In the event the Head License is terminated for any reason whatsoever, the term of the license granted hereunder shall be terminated

E:\JANINE\WPDOCS\9687-AGT.USA

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

3

as of the same date.

## 5. TAXES:

(1)    The Licensee shall pay without limitation any tax, levy or charge however denominated, imposed or levied against the Licensor (excluding only any applicable net income or franchise taxes) by any statute, law, rule or regulation now in effect or enacted including, without limitation, quotas, licences, contingents, import permits, state, county, city or other taxes however denominated relating to or imposed on licence fees, rentals, negatives, prints or other material, or the right or privilege to use them in connection with any picture licensed, and whether imposed on or levied on or in connection with the importation of any material supplied by the Licensor or otherwise; it being the intent that the licence fee specified as the consideration for the licence granted shall be a net amount, free and clear of any tax, levy or charge of whatever kind however denominated.

(2)    To the extent that any such taxes, levies or charges are paid by the Licensor, the licensee will reimburse the Licensor on demand, and on the failure of licensee to so reimburse the Licensor, the Licensor will have available to it all of the remedies provided for in this agreement with respect to unpaid licence fees as well as other remedies as may be provided by law.

## 6. FORCE MAJEURE:

If the Licensor shall fail to make timely delivery of the Signal, by reason of any act of God, strike, riot, labour dispute, flood, public disaster, public transportation or laboratory difficulties or any other reason, similar or dissimilar, beyond the control of the Licensor, this failure on the part of the Licensor shall not be considered to be a breach or violation of this agreement.

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

*Magdalena Staniszewska*
radca prawny

4

### 7.    DEFAULT AND TERMINATION:

If licensee defaults in the payment of any instalment of the total licence fee, or in the performance of any of its other obligations and the default shall not be cured within thirty (30) days after written notice of it to licensee, or if licensee becomes insolvent, or if a petition under any Bankruptcy Act shall be filed by or against licensee (which petition, if filed against licensee, shall not have been dismissed within thirty (30) days), or if licensee executes an assignment for the benefit of creditors, or if a receiver is appointed for the assets of licensee, or if licensee takes advantage of any applicable insolvency or any other like statute, or if licensee breaches the provisions of any other agreement or agreements entered into with Licensor (any one of the above acts is called "event of default"), then Licensor may terminate this agreement and any other agreements between the parties then in existence by giving written notice to licensee at any time after the occurrence of the event of default. Whether or not Licensor exercises this right of termination, Licensor shall on the occurrence of the event of default have no further obligation to deliver prints of pictures and shall be entitled to immediate return of all prints delivered to and in possession of licensee. An event of default under this agreement shall be considered to be an event of default under all other licences granted by Licensor to licensee, and shall entitle Licensor to terminate any other licences. On the occurrence of any event of default, the total licence fee shall become immediately due and payable. Licensor shall be entitled to recover from licensee in addition to the unpaid portion of the total licence fee, reasonable counsel fees or collection agency fees incurred by Licensor to enforce the provisions of this agreement.

### 8.    LATE PAYMENT:

Without prejudice to any other right or remedy available to Licensor under this agreement, any payment scheduled to be made by licensee to Licensor which is not made within sixty (60) days after the date when the payment was due will bear interest, commencing as from

E:\JANINE\WDOCS\96D-AGT.USA

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

5

its original due date, at the rate of prime plus five (5%) per cent of any such payment for each thirty (30) days (or part of that) the amount remains unpaid. In the event that the rate of interest exceeds the maximum applicable legal interest rate, the rate will be reduced to the maximum applicable legal interest rate and other terms of this agreement will remain in full force. Any amounts which become due to Licensor shall immediately be due and payable and shall be governed by other terms of this agreement relating to the payment of money.

## 9. COMPLETION OF TELECAST PRIOR TO EXPIRATION OF TERM:

Anything contained in this agreement to the contrary notwithstanding, if licensee telecasts each picture the number of times permitted prior to the expiration of the term set forth in Schedule "A", this licence shall for all purposes be considered terminated as of the date on which the last permitted telecast occurs and any then remaining unpaid portion of the total licence fee will become due and payable. Failure by the licensee to complete the maximum number of telecasts permitted on or before the expiration of the term of the licence granted in this agreement shall not serve to extend the term of this agreement except as provided for in para. 13.

## 10. NOTICES:

All notices required to be given to the Licensor shall in the absence of specific advice to the contrary, be mailed or cabled to Licensor at 1114 North Milwaukee Ave., Chicago, ILL. 60622, USA, and all notices required to be given to licensee shall; in the absence of specific advice to the contrary, be mailed or cabled to the licensee at the address set forth in Schedule "A".

## 11. ASSIGNMENT:

This agreement and the rights and licences granted to the licensee are personal to Licensee

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

6

and Licensee agrees not to sell, assign, mortgage, pledge or hypothecate any such rights or licences in whole or in part without obtaining the prior written consent of the Licensor, nor shall any of the rights or licences be assigned or transferred by the licensee to any third party by operation of law or otherwise. Any assignment in violation of the foregoing sentence shall be null and void. In the event that Licensor consents to any such assignment by licensee, licensee shall nevertheless remain fully and primarily responsible and liable to the Licensor for full, complete and faithful performance of all terms of this agreement to be performed on the part of the licensee. Licensor may assign, transfer, pledge or hypothecate all or any part of the licence fees to be received by Licensor. Licensee agrees that in the event of receipt of written notice of assignment by Licensor, moneys due to the Licensor shall be paid to any third party assignee in accordance with such instructions without offset, deduction, counterclaim or other credits which the licensee may have or claim to have against the Licensor except as may be available under the terms of this agreement. Licensor may assign this agreement to any corporation controlling, controlled by or under common control with Licensor or to any person, firm or corporation which may become the Licensor of the pictures.

12.    RESERVATION OF RIGHTS:

All licences, rights and interest in, to and with respect to the pictures not specifically granted to licensee shall be and are specifically and entirely reserved to Licensor and may be fully exploited and utilized by Licensor, without regard to the extent to which any rights may be competitive with licensee.

13.    WAIVER:

A waiver by either party of any breach or default by the other party shall not be construed as a continuing waiver of the same or any other breach or default under this agreement

E:\JANINE\E'7DOCS'9847-AGT.USA

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej S-

*Magdalena Staniszewsko*
radca prawn-

7

14.   CONSTRUCTION:

This agreement shall be interpreted and construed in accordance with the laws of the State of Delaware, U.S.A.

15.   ENTIRE AGREEMENT:

This agreement constitutes the entire agreement between the parties and all prior understandings are merged here. This agreement cannot be changed or terminated orally and no amendments, modifications or assignments shall be binding on Licensor until accepted in writing by a duly authorized agent or officer of Licensor. The titles of the paragraphs of this agreement are for convenience only and shall not in any way affect the interpretation of this agreement or any paragraph of it.

IN WITNESS whereof the parties have executed this agreement under the hands of their duly authorized officers and have affixed their corporate seals this 14th day of March, 1995.

POLTEL INTERNATIONAL LLC

Per:

TELEWIZJA POLSKA U.S.A. INC.

Per:

Za zgodność
z oryginałem

Biuro Prawne Telewizji Polskiej SA

Magdalena Staniszewska
radca prawny

E:\JANINE\WPDOCS\RAT-AGT.USA

# EXHIBIT 6

THIS AGREEMENT made the 27th, day of July 1999

BETWEEN:

> **SPANSKI ENTERPRISES INC.**, a corporation incorporated
> under the laws of the Province of Ontario
> (hereinafter referred to as the "Assignor")

- and-

> **POLTEL INTERNATIONAL LLC.**, a limited liability company
> established pursuant to the laws of the State of Delaware
> (hereinafter referred to as the "Assignee")

WHEREAS by parties entered into an agreement made as of the 7th day of March, 1995, based on which Assignee received an assignment of all the right, title and interest in and to the certain agreement made the 14th day of December, 1994 (The "Head License");

AND WHEREAS now the parties decide and agree to made the said Assignment agreement of March 7th 1995 NULL and VOID, and by doing so to jointly attest and agree that all the rights, title and interest of the Assignor in the original agreement of December 14th 1994 shall hereby revert to the Assignor for its sole benefit.

IN WITNESS whereof the parties have executed this agreement under the heads of their duly authorized officers this 27th day of July, 1999.

SPANSKI ENTERPRISES INC.

Per: _____

POLTEL INTERNATIONAL LLC.

Per: _____

SEI 000012