UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
SPANSKI ENTERPRISES, INC., et al.,                          :
                                                            :
                            Plaintiffs,                     :
                                                            :     07 Civ. 930 (GEL)
      -against-                                             :
                                                            :     **OPINION AND ORDER**
TELEWIZJA POLSKA, S.A., et al.,                             :
                                                            :
                            Defendants.                     :
                                                            :
------------------------------------------------------------x

Jonathan Zavin, Christian D. Carbone, and John A. Piskora, Loeb & Loeb LLP, New York, New York, for Plaintiffs.

James D. Jacobs and Vasilis F. L. Pappas, Baker & McKenzie LLP, New York, New York, for Defendants.

GERARD E. LYNCH, District Judge:

      Plaintiffs in this action seek an injunction prohibiting defendants from proceeding with a foreign arbitration and also demand equitable and monetary relief for breach of contract and for copyright infringement. Plaintiffs filed a motion for a preliminary injunction to bar the arbitration, and defendants cross-moved to stay the instant proceedings and compel arbitration. On April 16, 2007, the Court held an evidentiary hearing solely on the question of whether the arbitration should be enjoined. Because defendants have expressed no intention to submit any evidence or further argument on this issue at a subsequent stage, and based on the findings of fact and conclusions of law stated below, defendants shall be permanently enjoined from proceeding with the foreign arbitration. Defendants' cross-motion will therefore be denied. The Court at this point makes no findings or conclusions with respect to plaintiffs' remaining claims.

**FINDINGS OF FACT**

Plaintiffs Spanski Enterprises, Inc. ("SEI"), and Poltel International L.L.C. are affiliated business entities organized in Canada and the U.S., respectively.[1] They purport to hold exclusive rights under a contract with defendant Telewizja Polska, S.A. ("TVP"), a Polish entity, to broadcast via television and internet, within a particular region and time period, certain Polish-language television programming produced by TVP.

This January, defendants filed a complaint against plaintiffs in the Court of Arbitration at the Polish Chamber of Commerce, to challenge various aspects of the contract. (See Feb. 6, 2007, Decl. of B. Spanski, Ex. K.) Plaintiffs then commenced suit in this Court, in relevant part requesting that defendants be enjoined from pursuing the Polish arbitration on the ground that the parties had agreed that any disputes arising under the contract be resolved not by the Polish arbitration court but rather by the federal court in New York City.

The parties entered into the contract ("Agreement"), granting plaintiffs the allegedly exclusive broadcast rights on December 14, 1994. Pertinent to the instant arbitrability dispute, Section 11 ("Arbitration Clause"), of the Agreement provided: "1. This Agreement is subject to Polish law. 2. Any disputes resulting from this Agreement will be handled by the Court of Arbitration at the Polish Chamber of Commerce in Warsaw in accordance with its rules of

---

[1] The Court makes these findings of fact based on the evidence of record, reasonable inferences drawn therefrom, assessment of credibility and demeanor, and resolution of any conflicts in the evidence. Citations to exhibits and testimonial evidence indicate some but not necessarily all of the direct evidence pertaining to a given finding. Certain additional findings of fact may be made as appropriate in the discussion of the Court's conclusions of law.
 Defendants have objected to the admissibility of certain evidence, specifically exhibits 25, 26, 27, 28, 29, 30 to the April 2, 2007, declaration of Boguslaw M. Spanski, and to paragraph 33 of that declaration. It is not necessary to rule on these objections, as the Court does not consider the contested evidence for purposes of rendering this decision.

procedure." (April 2, 2007, Decl. of B. Spanski ("Spanski Decl."), Ex. 2.)

In subsequent years, the parties modified aspects of their contractual relationship in various ways as reduced to two written instruments. (See Spanski Decl., Exs. 8, 10.) The second such instrument ("Second Amendment"), which describes itself as "Amendment No. 2 to the Agreement of December 14, 1994" as modified by the first, here irrelevant, instrument, was entered into on April 29, 2002. (Spanski Decl., Ex. 10.) In the instant arbitrability dispute, the parties disagree about the effect of Section 8 ("Forum Selection Clause"), of the Second Amendment, which reads, "The Agreement is subject to the law of the State of New York, USA, and all disputes will be regulated by the Federal Court in New York City." (Id.) It is clear from the face of the Second Amendment that every mention of "Agreement" refers to the 1994 Agreement,[2] and that "Amendment" refers to the Second Amendment except where used in the phrase "Amendment of November 4, 1999." (Id.) Accordingly, the Forum Selection Clause by its terms provides for litigation in New York of all disputes relating to the entire Agreement, not merely of disputes relating to the specific terms added or modified by the Second Amendment.

Boguslaw Spanski, the president of SEI and sole managing member of Poltel International, has attested by a sworn declaration and by testimony during the April 16 hearing to certain events leading up to the formation of the Agreement and the Second Amendment. Defendants have offered no evidence to controvert Spanski's factual statements, and the Court finds no reason, having reviewed his written and oral testimony, to doubt the substance or credibility of his affirmations.

---

[2] This consistency is clear in the original Polish text. The parties have stipulated that the word "Agreement," in Section 10 of the English translation of the Second Amendment (Spanski Decl. Ex. 10) is a mistranslation that should accurately read "Amendment."

3

Spanski stated that he left Poland in approximately 1981 during a time of political turmoil, receiving political asylum abroad and ending up in Canada. Eventually he perceived a market for Polish-language television programming outside of Poland. He negotiated the 1994 Agreement between SEI and TVP.

Spanski also negotiated the Second Amendment with TVP on behalf of SEI. In a series of e-mails, printed versions of which were submitted to the Court by plaintiffs without contest (see Spanski Decl., Exs. 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23), the two sides specifically negotiated the fate of the Arbitration Clause. Spanski initially raised the issue in a March 27, 2002, e-mail, explaining that a certain third party involved in SEI's broadcasting of TVP's material "will not broadcast the signal, without an amendment to the provisions of [the Agreement] as regards Polish law governing." (Spanski Decl., Ex. 12.) He stated that SEI had had similar problems with broadcasting associates in the past. (See id.) He further wrote, "The only remaining hope is . . . if in the language of the . . . Addendum to the contractual Agreement . . . the following language can be incorporated: Subparagraph (1) of § 11 shall read as follows[:] [']This Agreement shall be governed by the laws of the United States of America.' Subparagraph (2) of § 11 shall read as follows: 'Any disagreements arising under the instant Agreement shall be resolved in accordance with the law of the State of New York, by the Federal Court of the City of New York.'" (Id.) He added, "Please let me know if we are going to be given the [']green light.' This matter is incredibly urgent!!!!" (Id.)

In several exchanges of e-mails, according to plaintiffs' exhibits, TVP at first resisted replacing the Arbitration Clause with the language Spanski proposed, but Spanski continued to insist. Spanski testified that negotiations over the change "were very extensive. I have spent

4

over a month . . . negotiating nothing else but this particular provision with then director of the law department of TVP." (4/16/07 Tr. 38-39.) In addition to the e-mail communications, Spanski said that he "made numerous phone calls" to TVP representatives. (4/20/07 Tr. 39.) He testified that negotiations were "taking very long, it was over a month," and at "first the board of TVP was reluctant, they didn't want to change the governing law and change to New York courts, federal courts." (Id.) But, he said, "as the time progresses, as I have used arguments and discussed the matter with [TVP representatives], they have agreed." (Id.) TVP drafted, and both parties eventually accepted, the final language of the Forum Selection Clause.

In agreeing to adopt the Forum Selection Clause, Spanski avers, TVP expressed to him an intention to revoke the Arbitration Clause. He swears that "[a]t no time . . . did anyone at TVP communicate to me or SEI any belief or understanding that SEI and TVP would still be bound to arbitrate any disputes following the execution of the Second [Amendment]. To the contrary, TVP's representatives . . . told me on numerous occasions that TVP . . . understood the meaning of these changes and that was why it took over a month to negotiate a single provision of the Second [Amendment]." (Spanski Decl. ¶ 30.)

At the hearing, in response to questioning by the Court, Spanski testified more specifically as to TVP's expressed understanding of the Forum Selection Clause's effect. The Court asked whether, "[i]n any of those discussions [with TVP] that you can recall," the topic of arbitration versus litigation, "as distinct from the subject of whose law would govern," was discussed. (4/16/07 Tr. at 39-40.) Spanski answered, "Explicitly the arbitration was gone . . . . It could not make any sense in [my] mind . . . or anybody at TVP at the time that we could have New York's law and federal courts in New York dealing in arbitration in Poland. It is totally

5

absurd." (Id. at 40.) The Court followed up, "When you said that it was explicit that this [Forum Selection Clause] was replacing arbitration, who said that?" (Id.) Spanski replied, "the head of the legal department [at TVP]." (Id.) He testified that the "Poland arbitration was gone and that was explicitly . . . told to me." (Id. at 41.) The Court credits this testimony, which was not seriously challenged by defendants.

## CONCLUSIONS OF LAW

I.   Legal Standards

To determine the arbitrability of a dispute, a court must decide two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of the arbitration agreement encompasses the claims at issue. Bank Julius Baer & Co. v. Waxfield, Ltd., 424 F.3d 278, 281 (2d Cir. 2005).

As is well known, there is a "strong federal policy favoring arbitration as an alternative means of dispute resolution," especially in the context of international transactions. Bank Julius Baer, 424 F.3d at 281 (internal quotation marks and citation omitted). Therefore, in the present international relationship, "if there is a reading of the [contract] that permits the Arbitration Clause to remain in effect, [the Court] must choose it." Id. at 284.

It is similarly well established, however, that "[a]rbitration is entirely a creature of contract." Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 104 (2d. Cir. 2006). The question of "which disputes are subject to arbitration," if any, is "determined entirely by an agreement between the parties . . . . Without the contract, the arbitration . . . never could exist." Id.; see also Volt Info. Sciences v. Bd. of Trustees, 489 U.S. 468, 478 (1989) ("[The Federal Arbitration Act] simply requires courts to enforce privately

negotiated agreements to arbitrate, like other contracts, in accordance with their terms."); see also Bank Julius Baer, 424 F.3d at 285 ("On remand, . . . the district court should explore [appellee]'s claims that [individuals with authority] never actually executed the Arbitration Agreement.  If they did not, then the Arbitration Agreement obviously does not bind them.")

In construing a contract, courts should give words and phrases "their plain meaning" and avoid "if possible" interpretations that render any clause "superfluous or meaningless."  LaSalle Bank Nat'l Assoc. v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005).[3]  In the context of a dispute over whether a contract provides for arbitration, "if there is a reading of the various agreements that permits the Arbitration Clause to remain in effect, we must choose it: [T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . . [W]e cannot nullify an arbitration clause unless the forum selection clause specifically precludes arbitration."  Bank Julius Baer, 424 F.3d at 284.

---

[3] At the April 16 hearing, defense counsel argued that "it's federal law, not state law, which determines the interpretation of these clauses."  (4/20/07 Tr. 51.)  However, the "national substantive law governing questions of the validity and the enforceability of arbitration agreement . . . comprises generally accepted principles of contract law," Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 845 (2d Cir. 1987), and any New York law applied to resolve the questions in this case is relied on for its articulation of accepted principles of contract law.  Defendants have cited no particular contract law principles that should be applied, only specifically objecting to the taking of parol evidence as somehow improper.  (See 4/20/07 Tr. 51.)  However, it is a generally accepted principle of contract law that extrinsic evidence of the parties' expressed intent may be taken where the meaning of a contract is ambiguous on its face.  11 Williston on Contracts § 33:39 (4th ed. 2006) ("If the courts are split on the question whether evidence of the surrounding circumstances may be admitted where no ambiguity exists . . . , there is unanimity that such evidence may be admitted when an ambiguity does exist.")  In any event, this Court's determination that the Arbitration Clause was revoked does not require departing the contractual text to consider extrinsic evidence of the parties' intent.

If the contract is "straightforward and unambiguous," it should be interpreted on its own terms, "without resort to extrinsic evidence," LaSalle Bank, 424 F.3d at 205, and from the point of view of a reasonable person, Antilles S.S. Co., Ltd. v. Members of American Hull Ins. Syndicate, 733 F.2d 195, 204 (2d Cir. 1984). However, "when the meaning of the contract is ambiguous and the intent of the parties becomes a matter of inquiry," then "a question of fact is presented." LaSalle Bank, 424 F.3d at 205. At that point, "it is entirely realistic to examine . . . the actual intent of the parties in the particular case." Antilles S.S., 733 F.2d 195 at 204. Evidence of intent may be useful, because "[c]ontracts should be viewed in the light in which they were made. The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." Postlewaite v. McGraw-Hill, Inc., 411 F.3d 63, 69 (2d Cir. 2005).

II.     Standards Applied

    A.     The Contract Unambiguously and Specifically Precludes Arbitration.

Plaintiffs' request for an injunction of the arbitration shall be granted, and defendants' motion to compel arbitration denied, because the contract unambiguously, on its own terms, "specifically precludes" such arbitration. Bank Julius Baer, 424 F.3d at 284. Plaintiffs therefore cannot be required to submit to the disputed arbitration.

Defendants misinterpret certain Second Circuit authority as holding that, where a preexisting arbitration clause is claimed to be superseded by a subsequent agreement, a finding that the subsequent agreement "specifically precludes" arbitration, Bank Julius Baer, 424 F.3d at 284, requires the use of certain magic words in the preclusive clause – in particular, making explicit "refer[ence] to the arbitration clause." (D. Mem. in Opp. and to Compel at 8, 10.) In

8

other words, as defendants would have it, a party may not by a written contract revoke an agreement to arbitrate without explicitly referencing the arbitration clause in the revoking instrument. But the Court of Appeals held no such thing. Rather, it stated that,"[*i*]*n the circumstances presented to us in this appeal*, we cannot say that the Forum Selection Clause, which does not even mention arbitration, either specifically precludes arbitration or contains a positive assurance that this dispute is not governed by the Arbitration Agreement." Bank Julius Baer, 424 F.3d at 284 (internal quotation marks omitted) (emphasis added), citing Personal Security & Safety Systems v. Motorola, 297 F.3d 388, 396, n.11 (5th Cir. 2002). Those "circumstances" involved, relevantly, a "broad agreement" – specifying neither choice of law or of forum – to arbitrate "any unresolved dispute," id. at 280, 282, and a subsequent set of agreements, dealing with different subject matter, that contained a nonexclusive forum selection clause, id. at 282. That forum selection clause provided that, "[w]ithout limiting the right of [appellant] to bring *any action or proceeding* against [appellee] . . . in the courts of *other jurisdictions*, [appellee] hereby irrevocably submits to the jurisdiction of any New York State or Federal court sitting in New York City, and . . . hereby irrevocably waives . . . the defense of an inconvenient forum to the maintenance of any Action in *any* jurisdiction," id. (emphases added). Assessing the contractual language before it, the Bank Julius Baer Court held that "there is nothing inconsistent between the arbitration obligation and the instant forum selection clause." Id. at 284 (emphasis added). It construed the nonexclusive forum selection clause to be "complementary" to the agreement to arbitrate, in that the clause could provide for a forum in which to enforce an award determined during an arbitration. Id.

9

Unlike in the circumstances of Bank Julius Baer, here the disputed Forum Selection Clause particularly and exclusively designates both a choice of law and of a forum-specific adjudicator to govern all disputes under the entire Agreement between the parties. These choices directly contradict each of the choices expressed in the 1994 Arbitration Clause, and they do so by the same drafting form: a statement of the governing law, followed by a statement of the governing body. The Forum Selection Clause renders "all disputes" under the "Agreement" subject to the law of New York and to "regulat[ion] by the Federal Court in New York City." (Spanski Decl., Ex. 10.) The Arbitration Clause would render "[a]ny disputes" under the "Agreement" subject to Polish law and to being "handled by the Court of Arbitration at the Polish Chamber of Commerce in Warsaw." (Id., Ex. 2.) There is no dispute that the term "Agreement" in the Second Amendment refers to the main licensing contract between the parties, and this Court's own review of the Second Amendment – whose sole purpose, on its face, is to amend the terms of the main licensing agreement – shows this to be the intended reference. Nor do defendants attempt, as they sensibly could not, to distinguish the meanings of " all disputes" or of "regulated," as stated in the Forum Selection Clause, from the meanings of "any disputes" or of "handled," as stated in the Arbitration Clause.

Unlike in Bank Julius Baer, the later clause here covers precisely the same subject matter as the earlier, and in a directly contradictory way. The Forum Selection Clause in this case is plainly "inconsistent" with the Arbitration Clause. Bank Julius Baer, 424 F.3d at 284. The clauses are not, therefore, susceptible to "a reading . . . that permits the Arbitration Clause to remain in effect." Bank Julius Baer, 424 F.3d at 284. There is no plausible reading on which the two provisions can be reconciled, or on which the later provision can be seen as an attempt to

modify the scope of the arbitration clause, rather than flatly to revoke it.  Thus, although the Forum Selection Clause does not explicitly use the word "arbitration," it need not, as its plain and unambiguous terms nevertheless "specifically preclude[]" the disputed arbitration.[4]  Id.

> B. Even if the Contract Were Ambiguous, the Evidence Would Establish that the Parties Intended the Contract to Preclude Arbitration.

While the Court does not find the Forum Selection Clause to be ambiguous in its revocation of the arbitration aspect of the Arbitration Clause, even if it did, the extrinsic evidence decisively supports the conclusion that the parties intended this effect.  No one has contested Spanski's affirmations as to the multi-stage, month-long negotiation between SEI and TVP specifically over the survival of the agreement to have contract disputes arbitrated in Poland.  Spanski has credibly testified that TVP representatives explicitly stated to him their understanding that adopting the Forum Selection Clause would mean losing the arbitration right – not just the choice of law – created by the Arbitration Clause.  Indeed, the evidence shows that negotiations over the Forum Selection Clause did not address piecemeal the choice of law at one point and the choice of adjudicator at another.  Rather, the parties clearly tussled over two

---

[4] Defendants attempt to rely on Personal Security, 297 F.3d 388, where the Fifth Circuit Court of Appeals construed together an arbitration clause and an exclusive forum selection clause to deem the given dispute subject to arbitration.  That decision of course does not constitute binding authority for this Court.  And in any event it does not help defendants.  In construing the clauses together to read them as providing both for arbitration and for a forum in which to litigate only nonarbitrable disputes, the Personal Security Court noted marked structural and substantive differences between the two.  297 F.3d at 395-96.  It focused on such differences as the use of the terms "disputes" and "claims" in the arbitration clause, in contrast to the use of the phrase "suit or proceeding" in the forum selection clause, in concluding that the parties intended all contractual claims to be arbitrated in the first instance, with any contests over already-arbitrated claims to be brought in a particular forum.  Id. at 396.  Thus, the Personal Security Court, like the Bank Julius Baer Court, found it "possible" to reconcile purportedly conflicting provisions.  Id. at 393.  As discussed, however, the contested provisions in the instant dispute cannot be so reconciled.

possibilities, and those possibilities consisted of submitting disputes either to the Polish arbitration court under Polish law or to the federal court in New York under New York law.

Besides Spanski's testimony that TVP representatives told him they knew that the Forum Selection Clause would operate to revoke the Arbitration Clause altogether, SEI has offered other evidence supporting the conclusion that the parties intended this effect. Spanski informed TVP that SEI's third-party business associates were reluctant to become involved in broadcasting arrangements subject to Polish adjudication under the Arbitration Clause. He expressly stated that precluding Polish arbitration was urgent for this business reason and therefore a key demand in SEI's negotiation of the Second Amendment. The evidence establishes TVP's own resistance, expressed over some time and in numerous exchanges with Spanski, to adopting the Forum Selection Clause. Evidence of that resistance permits the reasonable inference that TVP's eventual acquiescence to drafting and adopting the Forum Selection Clause – the text of which is nearly identical to that originally proposed by Spanski – was a deliberate concession to the known result that the Arbitration Clause would be revoked.

## CONCLUSION

The salutary principle that contracts should be interpreted to favor arbitration does not extend to precluding parties from modifying their contract to revoke an arbitration agreement in a subsequent written contract, or to interpreting contracts against their plain language and the manifest intent of the parties. To do so would contravene the still more fundamental principle that parties may not be compelled to arbitrate unless they have agreed to do so.

Here, the language of the Second Amendment to the parties' Agreement, as well as its negotiation history, conclusively establishes that the parties intended to revoke their prior

agreement to arbitrate disputes under Polish law, and substitute an express agreement to submit disputes to the federal courts in New York under New York law.

Accordingly, plaintiffs' motion for an injunction barring the defendants from proceeding with their Polish arbitration action is granted, and defendants' motion to compel arbitration is denied.

SO ORDERED.

Dated: New York, New York
       April 23, 2007

                                                          _____
                                                          GERARD E. LYNCH
                                                          United States District Judge