# EXHIBIT C

```
75gwspaC.txt
                                                           1
     75gwspaC
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   SPANSKI ENTERPRISES, INC. and
 3   POLTEL INTERNATIONAL L.L.C.,
 4
 4                  Plaintiffs,
 5
 5              v.                              07 CV 930 (GEL)
 6
 6   TELEWIZJA POLSKA, S.A., et
 7   al.,
 7                  Defendants.
 8
 8   ------------------------------x
 9                                              New York, N.Y.
 9                                              May 16, 2007
10                                              4:30 p.m.
10
11   Before:
11                    HON. GERARD E. LYNCH,
12
12                                           District Judge
13
13                         APPEARANCES
14
14
15   LOEB & LOEB, LLP
15        Attorneys for Plaintiffs
16   BY:  JONATHAN ZAVIN
16        CHRISTIAN D. CARBONE
17
18   BAKER & MCKENZIE, LLP
18        Attorneys for Defendants
19   BY:  JAMES D. JACOBS
19
20
21
22
23
```

Page 1

75gwspaC.txt

                                                                    2

75gwspaC
1              (Case called)
2              MR. ZAVIN:  Your Honor, Jonathan Zavin and Christian
3    Carbone, from Loeb & Loeb.
4              MR. JACOBS:  Jim Jacobs, from Baker & McKenzie.
5              THE COURT:  Good afternoon.  What have we here?
6              MR. ZAVIN:  We have a problem that is at least partly
7    resolved, your Honor.
8              THE COURT:  I was kind of hoping that would be the
9    case.
10             MR. ZAVIN:  We're partly there.
11             Faced with the motion yesterday, we were sent today,
12   apparently from the Polish court, a notice withdrawing the
13   arbitration.  So, to the best of our knowledge, while we were
14   getting a fast Polish translation done, it does appear to us
15   that the arbitration has been withdrawn and the defendants'
16   counsel has in fact represented that that is the case.  So that
17   immediate problem is solved.
18             The reason we're still here is in our motion, what we
19   also ask for is fees in connection with making the motion.  And
20   they are not huge, but, frankly, under the circumstances, we
21   believe that Spanski should not have to pay for the fact that
22   TVP refused to withdraw the arbitration before we had to make a
23   motion for contempt.
24             I'd spoken with Mr. Jacobs more than a week ago,
25   before making the motion, and spoke with him a number of times,
                       SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300


                                                                    3

75gwspaC
1    so this was not sprung on the defendants.  We knew that the May
2    18 hearing was coming up in Warsaw.  We had no choice other
3    than to move, and we don't think, frankly, it's fair that
4    Mr. Spanski or Spanski Enterprises pay for that.
5              THE COURT:  Mr. Jacobs, any response?
6              This was a fairly clear-cut order.  The whole issue
7    was are we going to have this arbitration or not have this
8    arbitration.  Now, I take it that this is not just a matter of
9    sluggishness in taking some affirmative step.  I take it that

                                                               Page 2

75gwspaC.txt

```
10          the plaintiff got some kind of notice that this was going
11      forward.  In other words, they weren't just sitting around
12      wondering when it was going to get called off.
13              Am I wrong about that?
14              MR. JACOBS:  You are wrong, your Honor.  The fact was
15      that, if I understand your question correctly, we, the first
16      thing is that, as Mr. Zavin said, he contacted me, I guess it
17      was early last week, mid last week, about the fact that the
18      arbitration was not withdrawn, which, frankly, I wasn't aware.
19      And I contacted my partner in Poland, who then contacted
20      Mr. Spanski's attorney, in Poland.  Mr. Spanski's attorney, I
21      think he had some discussion.
22              Thereafter, we learned that Mr. Spanski met with TVP.
23      Both the parties met in Poland, had discussions, and it was our
24      understanding that they agreed that the arbitration would be
25      stayed.  My partner called Mr. Spanski's attorney last Friday
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

4

```
                                75gwspaC
 1      and said that was our understanding, would he please confirm it
 2      with Mr. Spanski.  We never got a return call on Friday.  We
 3      never got a return call on Monday.  We called twice, actually,
 4      in between, never got a return call, and did not get any return
 5      call until yesterday, 3:00, Polish time.
 6              THE COURT:  Now that I'm rereading your application,
 7      Mr. Zavin, I certainly am sympathetic to your situation and
 8      feeling that you had to do something, if this arbitration was
 9      scheduled for May the 18th.  What gave me the impression that I
10      stated a moment ago is your statement that the arbitration
11      court in Warsaw has scheduled a hearing for May the 18th, and
12      it appears to me that perhaps that had been scheduled long ago,
13      actually.
14              MR. ZAVIN:  Yes, it was, sir.
15              THE COURT:  Now, it does say in your application that
16      a stay or suspension was agreed to, and that you believed that
17      that was insufficient.  Now, you may be right about that, but
18      wouldn't it be the case that if the arbitration were stayed, at
19      a minimum, that would relieve some of the time pressure, since,
20      if it was agreed that the arbitration wasn't going forward on
21      May the 18th, that would give time for further discussion, and
22      maybe for something less expensive, like a conference before
23      the Court, if there was any need to clarify what the scope of
24      the order was.
```

Page 3

75gwspaC.txt

                                            5

    MR. ZAVIN: Your Honor, with all due respect, there
           SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

75gwspaC
1  was no agreement to stay the arbitration. What happened here
2  is, following my conversations with Mr. Jacobs, I received an
3  e-mail and telephone call from our Polish counsel, saying that
4  they had been contacted by Baker & McKenzie who had proposed a
5  stay that was immediately rejected, and they were told no, that
6  the judge's orders were that they were to withdraw the
7  arbitration. When they were told that, that we declined to
8  agree to a stay, they -- now, I admit, I'm repeating what I've
9  been told by Polish counsel, we then asked Polish counsel to
10 follow up and say, ask, Are you withdrawing the arbitration.
11 And the response we got was, I won't tell you.
12    And that was the e-mail I received from Polish
13 counsel, where Mr. Jacobs's partner in Warsaw, simply faced
14 with the blunt question, What are you doing, said, We won't
15 tell you. That's when I then called Mr. Jacobs's office on
16 Monday, was told Mr. Jacobs was out. I then called Mr. Pappas
17 and left a voice mail for Mr. Pappas. Got no return call from
18 anybody on Monday, and it wasn't until Tuesday that we made the
19 motion for contempt; we tried to avoid doing this. We've been
20 trying for ten days just to get this withdrawn.
21    THE COURT: I'm inclined to think that Mr. Zavin has
22 the better of this argument. This is a pretty simple matter.
23 I don't know what I would have said if there had been some
24 argument by the defendant back when the order was entered
25 saying, well, why just order us to postpone this or whatever
           SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                            6

75gwspaC
1  until October, but if I recall correctly, and people can
2  correct me if I'm mistaken, my opinion just said something like
3  motion for an injunction barring the defendants from proceeding
4  with the arbitration is granted. And then there was some
5  process of settling that order, wasn't there?
6     MR. JACOBS: No, your Honor.
7     THE COURT: That's the last language that was there?
8     MR. JACOBS: Exactly, your Honor.
9     I think, you know, we can argue about what happened in
10 Poland, and neither Mr. Zavin nor I really have personal

Page 4

75gwspaC.txt

11  knowledge.  But I think what we all do have personal knowledge
12  of is the order here, which simply said that TVP was barred,
13  defendants were barred from going, proceeding, I think is the
14  word you used, proceeding with the arbitration.  And indeed,
15  defendants have never proceeded with the arbitration.
16          Now, what Mr. Zavin is complaining about is that we
17  didn't withdraw it as fast as he would have liked.  Now, maybe
18  Mr. Zavin has some complaint about that.  Maybe his complaint
19  is legitimate, but it certainly isn't a violation, a contempt
20  of court when this Court only said we should not proceed and
21  did not set any date and indeed did not talk about withdrawal.
22          THE COURT:  We can't be talking about a lot of money
23  here, and perhaps there's some misunderstanding that's at the
24  root of all this, and I don't know what exactly would be
25  required by the terms of the order.  The point is, as of now,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

75gwspaC
1   the arbitration demand has been withdrawn.  I assume that means
2   that everyone agrees that there is no arbitration going forward
3   and that the defendant is in compliance with the order.  I
4   don't think we've got a lot of money at stake, and, to some
5   extent, I think that given practice in this district and given
6   my individual practice, it probably would have been sufficient
7   to call chambers and say, we've got a problem, let's get
8   everybody in here, and then everybody would have gotten in
9   here, and we would be pretty much where we are now a lot more
10  cheaply.
11          Now, I can't certainly fault the plaintiff for doing
12  this in a more formal manner, given what seems to be some lack
13  of response or responsiveness by the defendant.  But I want to
14  make something very clear.  To the extent there's any ambiguity
15  in the order, that can be fixed, and if there's some genuine
16  dispute about is a stay enough or does it have to be withdrawn
17  and when does it have to be withdrawn, the proper way to deal
18  with that is to come before the Court as quickly as possible.
19          What I think the plaintiff was absolutely
20  unambiguously entitled to under this order was some security
21  that there wasn't going to be an arbitration taking place on
22  May the 18th.  And to the extent that there's any fencing
23  around about that, that seems to me to be problematic.  But I
24  do take it from Mr. Zavin's affidavit that there was at least
25  an offer on the part of the defendant to stay the arbitration.

Page 5

75gwspaC.txt

                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300

                                                                              8
     75gwspaC
 1            Now, we could quibble about whether that was
 2   sufficient.  That quibble is moot because now the arbitration
 3   has been withdrawn, so plaintiff has gotten the maximum of what
 4   it contends it was entitled to, and I think we can write off
 5   whatever happened in the interim to misunderstanding, and I'll
 6   deny the application for fees.
 7            But I want there to be no misunderstanding.  This
 8   Court has ordered that this dispute be resolved here.  We've
 9   got a trial date.  It's going to be resolved here.  What way it
10   will be resolved, I don't know.  I haven't her heard the trial
11   yet.  But if there are maneuvers to try to bring this back
12   before a Polish arbitration tribunal sometime between now and
13   October, I will regard that as a breach of this order.  I don't
14   anticipate that's going to happen, but the thing the plaintiff
15   is entitled to, whether there's some nominal proceeding or
16   there's not a nominal proceeding, is nothing is going to happen
17   in any arbitral tribunal in Poland or anywhere else between now
18   and October.  They're entitled to feel secure about that and
19   not have to come running back to Court because there's some
20   answer their phone calls or because there's some dispute about
21   what it means.  If there's a dispute about what it means, get
22   the heck back here, and we'll iron out whatever that dispute
23   is.
24            Now, there's also a reference in here to the defendant
25   taking a position that plaintiff has breached the agreement or
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300

                                                                              9
     75gwspaC
 1   that they're entitled under the agreement to terminate.
 2   Nothing in my order has anything to do with that.  They can
 3   take what position they want.  It may mean that they're in
 4   breach and maybe everybody will sue each other and we'll have
 5   counterclaims and all kinds of good stuff, when it comes the
 6   right time to resolve the rights and wrongs of the contract.  I
 7   certainly didn't adjudicate anything about whether the
 8   plaintiff has complied with its end of the contract or whether
 9   the defendant has any right to terminate or anything else like
10   that.  People do what they do with respect to contracts, at
11   risk of being found later to be in breach, and everybody knows

                                                                        Page 6

75gwspaC.txt

12  how that works, and we've now got a forum established to deal
13  with it, if it has to be dealt with.
14          MR. Zavin.
15          MR. ZAVIN:  If I may, your Honor, I respectfully
16  slightly disagree with what your Honor just said because you're
17  absolutely correct, you did not adjudicate it, nor did we ask
18  you to previously.  What happened here, however, is we were
19  before your Honor on May 1, to set a schedule for when this
20  case would be heard.  We agreed, at that time, on October 15.
21          As your Honor undoubtedly knows, when this case was
22  commenced, it was commenced by order to show cause and request
23  for preliminary injunction, that has gotten pushed back at
24  various times.  Shortly following that agreement for an October
25  15 hearing, what we received was a notice of breach, which

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                      10

75gwspaC
 1  gives the defendant a right to terminate in 90 days.  While
 2  that was dated April 27, prior to the time we were to appear
 3  before your Honor, it was delivered to us after we appeared
 4  before your Honor.  The net result is that in our view the
 5  defendants' finding another way to deprive this Court of
 6  jurisdiction because that 90 days comes prior to the hearing
 7  now.
 8          THE COURT:  Let me just ask Mr. Jacobs, just to be
 9  sure, you're not maintaining that if the agreement is
10  terminated, the Court somehow loses jurisdiction?
11          MR. JACOBS:  Not at all, your Honor.  Not at all.
12  I would like to make a comment about the preliminary
13  stay of the arbitration, so there's no misunderstanding.  We
14  still have time to appeal.  And one of the reasons, I'm sure,
15  that the client did not approve withdrawal was it was
16  considering whether it should go for appeal and for a stay.
17  Obviously we got down to the wire.  The decision has not yet
18  been made to appeal, but, of course, we still have that right.
19          THE COURT:  Yes, but that's a whole other matter.
20  whatever you do in this court, and by this court, I mean in the
21  United States courts, you have a right to do.  By all means, go
22  appeal if you want to appeal, and if the circuit says that
23  Lynch got it wrong, it won't be the first time.  And if they
24  say go to Poland, you go to Poland.  They're the bosses over
25  me.  So whatever happens there happens, and certainly it would

                    SOUTHERN DISTRICT REPORTERS, P.C.

                                                                Page 7

75gwspaC.txt

11

75gwspaC
1   be extraordinarily presumptuous and no doubt illegal for me to
2   tell you can't, it would be somehow a contempt of this order to
3   ask an appropriate appellate court to stay the order, and if
4   they grant a stay, well, then the order is no longer in effect
5   until the stay is lifted. So then you can do whatever you
6   want, but so long as the order is in place is all I'm talking
7   about.
8           MR. ZAVIN: Your Honor, if I just might.
9           MR. JACOBS: By the way, your Honor, you're correct.
10  We are not disputing that in fact this Court has jurisdiction
11  and that this case will proceed absent possibly an appeal.
12          THE COURT: Right. The determination of the contract
13  wouldn't deprive the Court of jurisdiction, as far as I can
14  see. And anyway, Mr. Jacobs isn't saying that it does. All
15  that means is, very likely, since the defendant now is
16  maintaining that the plaintiff is in some kind of breach, I see
17  some kind of counterclaim in the future. I also imagine the
18  plaintiff will say that notice is some kind of anticipatory
19  breach in itself, and we may have more things to do in
20  October --
21          MR. ZAVIN: With one exception.
22          THE COURT: -- than is currently set up.
23          Yes.
24          MR. ZAVIN: When I said deprive the Court of
25  jurisdiction, I meant functionally deprive it because if 90
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

12

75gwspaC
1   days from the date of that termination, the defendant makes it
2   impossible to receive the signal for retransmission, the
3   plaintiff is out of business 45 days before your Honor would be
4   hearing this case. The plaintiff would move for a preliminary
5   injunction --
6           THE COURT: Then the damages will be really large if
7   it turns out they were wrong to do that.
8           MR. ZAVIN: Except that that is the very reason that
9   we were entitled to preliminary relief. What we're suggesting,
10  I'm not just here whining about it. I'm suggesting a cure
11  here. We agreed to the October 15 date because we were unaware
12  that the defendant was prepared to possibly act before that.

Page 8

75gwspaC.txt

13  we would like the Court to reconsider and give us an earlier
14  trial date because what we've proposed to the defendants, just
15  so the Court is aware, is they could serve their notice of
16  termination, if they are willing to wait until October 15 and
17  have an agreed-upon cure date, after final decision in this,
18  that's fine. But if they're not, if they're sitting there
19  saying we're going to put the plaintiff out of business prior
20  to a trial, we can't live with that.
21           THE COURT: So you're saying you want from the
22  defendant some kind of standstill agreement that whatever
23  rights people are invoking, that nothing is going to change
24  vis-a-vis the existing whatever, I'm not sure what the right
25  word is, the existing operations between the plaintiff and the

             SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                          13
     75gwspaC
     defendant, until after this case is resolved?
 1           MR. ZAVIN: And that under the agreement, the way the
 2   agreement is structured, the plaintiff, Spanski Enterprises,
 3   has 90 days to cure following any notice of termination, notice
 4   of breach.
 5           What the defendant is doing is putting us in a
 6   position, saying by waiting until October 15, you're 90, at
 7   best, they can either terminate before, or we will have lost
 8   the cure period, reschedule this for October 15.
 9           THE COURT: Wait. If you really have breached, then
10   you ought to cure.
11           MR. ZAVIN: But we don't believe we've breached.
12  That's why we brought this action back in February.
13           THE COURT: If you don't believe you've breached, you
14  haven't lost anything. You don't normally get to have an
15  adjudication of whether you're in breach of a contract that
16  gives you 90 days to cure. You have a contract, there's a
17  90-day cure provision, you take the risk. You either say to
18  your counterparty, sorry, we don't think we're in breach, see
19  you in court, or you cure. If you don't cure, then we have the
20  litigation happen. That's what normally happens in these
21  cases, isn't it?
22           MR. ZAVIN: Not necessarily, your Honor. The reason
23  this was brought on the way it was, back in February now,
24  January, February, was, among other things, to avoid this type
25           SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                          Page 9

75gwspaC.txt

14

75gwspaC
1  of problem.  As your Honor may recall, it was the defendant who
2  said no, let's not have the preliminary injunction on the
3  merits, let's first decide the forum alone and assured the
4  Court that that wouldn't delay consideration on the merits, we
5  could still do that in June or July.  And then suddenly that
6  became impossible because of this adjudication as to the forum.
7        Your Honor, we're not trying to push the trial date to
8  make things difficult for the Court.  What we're trying to do
9  is preserve the status quo, what we all thought we were
10 agreeing to when we were before your Honor on May 1.
11       THE COURT:  Right.  What we understood at the time was
12 that by entering the choice of forum injunction, we were in
13 effect preserving the status quo pending the adjudication in
14 October.  Now, again, when I say preserving the status quo, I
15 don't mean that there was any specific agreement that nobody
16 was going to do anything else.  But certainly, it was the
17 understanding we were operating on, that having resolved the
18 forum issue, things would take their course, and we would
19 decide the case on the merits in the fall, and there was no
20 need for any further injunctive relief.
21       Let me hear from Mr. Jacobs.  First of all, is there
22 any issue with respect to holding things together between now
23 and October?
24       MR. JACOBS:  Your Honor, Mr. Zavin and I, in our
25 conversations, essentially have discussed how we could do that,
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

15

75gwspaC
1  and I've offered, Mr. Zavin has made an offer, and I take it
2  back to the client.  I threw out a few suggestions, Mr. Zavin
3  rejected them.  So I've taken Mr. Zavin's suggestion back to
4  the client, see if it's agreeable, but I think the situation's
5  pretty much as you said.  TVP, my client, has an absolute right
6  to serve a notice of termination under the contract, and has
7  done so, has a 90-day cure period.  I think the law, as your
8  Honor says, someone's in breach of contract does so at their
9  risk and doesn't have the right to generally go to court and
10 get a declaratory judgment prior to final adjudication, and, of
11 course, the terminating contracting party does so at his risk.
12 And I don't think there's any allegation here that TVP can't
13 afford whatever judgment this Court awards.

Page 10

75gwspaC.txt

          THE COURT:  Mr. Zavin, the original claim here is that
14
15   the defendant is in breach because of some agreement that it
16   entered with somebody else, isn't that right?  Remind me what
17   exactly they did that brought you here in the first place.
18          MR. ZAVIN:  Your Honor, there were a number of claims.
19   One of the primary claims was that SCI, Spanski, had the
20   exclusive right to broadcast, transmit this programming on the
21   Internet, that the defendant, starting on January 15, had put
22   virtually all of its programming up on the Internet available
23   in the United States, undercutting the exclusive right.  There
24   was also in the complaint various claims for declaratory
25   judgment as to what rights the parties had.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                  16

75gwspaC
 1          The claims in the complaint, the notice of breach
 2   almost mirrors the complaint.  Every one of these things that
 3   they're claiming was, is now a breach, I believe, I don't think
 4   almost without exception, and possibly without exception, is in
 5   the complaint.
 6          THE COURT:  I'm sorry.  Is in their arbitration
 7   complaint?
 8          MR. ZAVIN:  No.  In our complaint for declaratory
 9   judgment, because I believe the complaint was for both
10   copyright infringement, for their affirmative acts, and for
11   declaratory judgment with respect to the disputes among the
12   parties.  So every one of the things listed in this notice of
13   breach is before this Court.
14          THE COURT:  Okay.  So your complaint is you have a
15   right to do various things, and they're saying you don't?
16          MR. ZAVIN:  In a broad sense, yes.  And in some case
17   the converse, that they do not have the right to do certain
18   things because of the exclusive nature of the agreement between
19   the parties, that only we have the right to do them.
20          THE COURT:  I was always ready to do this in August.
21   I remain ready to do it on August the sixth for two weeks, and
22   I don't know why we couldn't do it on August the sixth.  I
23   can't do it any sooner anyway, Mr. Zavin, so you haven't got a
24   lot to work with.
25          MR. ZAVIN:  At one point you had offered us July.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                  17

Page 11

75gwspaC.txt

75gwspaC
July 25,     July 24, 25, 26.  I think those were the dates.
1            THE COURT:  Yes, but that was for like three days.
2            MR. ZAVIN:  May I make a suggestion, your Honor.
3            THE COURT:  Yes.
4            MR. ZAVIN:  There is one other issue I'd like to bring
5       to your Honor's attention while we're here.  It's a much more
6       easier issue.  Mr. Jacobs and I have discussed a possible
7       solution to that, this one is less immediate than the hearing
8       that had been scheduled for May 18.  May we try to work this
9       out and, if we cannot, come back before your Honor next week.
10           THE COURT:  Sure.  But remember, trial dates go like
11      hot cakes.
12           MR. ZAVIN:  I'm aware of the problem.
13           THE COURT:  So my feeling at this point is something
14      like this.  This is originally an application for a preliminary
15      injunction.  It is an expedited sort of matter.  I think it is
16      verging on insane to have a third hearing in this matter.
17      There's only going to be one more shot.  That shot is a
18      consolidated trial on the merits and preliminary injunction
19      hearing.  I can do that on August 6 for two weeks.  I now have
20      you booked for October 15 for two weeks, so it's moving back to
21      August, unless the parties can work out something that will be
22      a satisfactory accommodation to all sides so that we've got
23      some agreement in place.  I don't care what it is; it's not my
24      business.  That enables the parties to leave the trial in
25                       SOUTHERN DISTRICT REPORTERS, P.C.
                                   (212) 805-0300

                                                                    18

75gwspaC
October.
1            Totally apart from any of this, I've learned that I'm
2       going to have to attend a judicial conference on the 15th,
3       16th, and 17th, and so what I was going to sound you out about,
4       and in fact probably coerce, is moving the beginning of trial
5       back to October, whatever it is, the day after Columbus Day,
6       the Tuesday, October 9.  That way, we would substitute three
7       days of that week for the first three days of the following
8       week, as part of the trial, so that would be my current
9       timetable, assuming nobody's got insuperable problems starting
10      then.
11           MR. ZAVIN:  I do not.
12           THE COURT:  All right.  So, again, the trial is now
13      set to begin on October the ninth, to be suspended for the
14

Page 12

75gwspaC.txt

15    15th, 16th, and 17th of October, and then continue with
16    whatever we need thereafter.
17         MR. ZAVIN: Your Honor, I don't have a calendar in
18    front of me. What I'm thinking of is we may have witnesses in
19    from overseas. Many, all of the witnesses are from overseas,
20    and I'm thinking how long we're going to be keeping them here.
21         THE COURT: We'll work it out. First of all, this is
22    a bench trial, is it not, or am I wrong about that?
23         MR. ZAVIN: We don't know yet because we don't know
24    the defendants' position on that yet. We've requested a jury.
25    They arguably have a right to, under the FSA, not to have a

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    19

75gwspaC
jury.
1          THE COURT: If it's a bench trial, that simplifies the
2     scheduling. With a jury trial, since I'm the one who is
3     causing this problem, I guess I don't have the standing that I
4     usually do to kind of whip the parties into shape to have
5     witnesses available at every moment for the jury's convenience.
6     And if that means that some witnesses are going to have to be
7     scheduled to come in the second week of trial, we'll live with
8     that somehow. But, again, I don't know how long this is really
9     going to take. And that also is impacted by whether it's a
10    bench trial or a jury trial. It's something the parties take
11    into account in thinking about costs and thinking about what's
12    the most efficient and just way of proceeding.
13         What I've got available is the ninth, tenth, and 11th.
14    I suppose if the parties told me early enough that it was
15    desirable, for whatever reason, I can probably throw in the
16    12th and have that not be my usual Friday calendar day. Then
17    we've got the 18th and then we've got the whole following week.
18    And once again, I can do something on the Fridays if I have to.
19    So there's plenty of time in there for this --
20         MR. ZAVIN: Yes.
21         THE COURT: -- that I can give without impacting other
22    trials that I've got scheduled following this. So you've got,
23    in effect, two weeks of trial days spread over three weeks.
24    I'm sure we can do that if we need to do it. I've got two
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    20

75gwspaC                                                       Page 13

75gwspaC.txt

1  weeks on August the sixth and we'll move it up to there if the
2  parties can't work out some satisfactory modus vivendi that
3  will carry us through to October. I can't do anything much
4  better than that no matter what because I've got other things
5  going on between now and August. So that's I think where we
6  are. And hopefully the parties will work all of this out.
7       MR. ZAVIN: One other issue, your Honor, if I can beg
8  your indulgence.
9       When the defendants produced the few documents they
10 did initially in connection with the venue on the arbitration
11 question, they redacted all of the names from the documents,
12 and what I mean by this is these were official documents from
13 Polish television, but if there was a memo, the name was
14 redacted as to who it was to and to who it was from. So what
15 we have is documents with no names, so you can't tell who was
16 doing what.
17      The reason we were told this was done, under the
18 Polish Data Security Act, that they were not allowed to give
19 personal data outside of Poland. We've got an opinion of
20 Warsaw counsel and we've also looked at a translation of the
21 act itself. We don't think it's applicable nor is it necessary
22 and obviously makes it extremely difficult to litigate a case
23 if you're looking at a document and you don't know who sent it
24 or who it was to.
25      THE COURT: Yes. Again, I'm assuming this is not an

                                                            21

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

75gwspaC
1  attorney-client sort of issue.
2       MR. ZAVIN: No.
3       THE COURT: This is something else.
4       MR. ZAVIN: No. This is not attorney-client.
5       THE COURT: I'm not going to rule on some discovery
6  dispute that hasn't been properly briefed or presented, but it
7  certainly seems to me that under our rules of procedure, there
8  are all sorts of ways, that the plaintiff is going to be
9  entitled to get that information. Whether it's posed as an
10 issue of whether the documents are properly redacted, whether
11 it's posed as an issue of finding out a witness list or people
12 with knowledge, there are lots of ways in which the plaintiff
13 is going to be entitled to something like complete copies of
14 these documents. And, of course, if there's some foreign law
15 that prevents the defendant from doing that or some reason why

                                                       Page 14

75gwspaC.txt

16  the defendant doesn't want to do that, there might well be
17  consequences as to inferences that will be drawn or sanctions
18  that have to be made in the discovery process. I don't think
19  I'm ready to rule on that.
20          MR. ZAVIN: Nor was I asking you to, your Honor. I
21  wasn't that presumptuous.
22          THE COURT: Talk these things through. But one thing
23  that I am trying to be very clear about that is we're going to
24  be trying this matter, whether in August or in October. By the
25  time of the trial date, all these things are going to be
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                                22

75gwspaC
 1  resolved and everybody better get on their horses and work to
 2  first resolving the issue of the timetable and whether it's
 3  going to be one or the other, and, secondly, whatever it is,
 4  you're going to have to tee up whatever issues need to be
 5  resolved between now and that date.
 6          Now, I'm very hopeful, dealing with responsible
 7  counsel for reasonable parties, that this is not going to
 8  require constant judicial supervision. If it does, all you
 9  have to do is tell me, and I'll put the magistrate judge on it
10  right away, because I'm not going to be spending time between
11  now and August riding herd on discovery disputes, but someone
12  will.
13          MR. ZAVIN: Your Honor.
14          THE COURT: And it will be done if it needs to be
15  done. But the first step is meet and confer about all these
16  things. Work it out. The main message that I'm sending is we
17  may be having a trial as soon as less than three months from
18  now. That's less than 90 days for you to do whatever discovery
19  or other processes that need to be done. I'd suggest starting
20  tomorrow morning, or even this evening, having these
21  conversations. And if these things can't be worked out,
22  there's a forum in which they will be worked out and we'll
23  expedite whatever we need to expedite to get it done.
24          MR. ZAVIN: I was asking a simple question. I was not
25  expecting your Honor to decide the dispute. We have exchanged
              SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

                                                                23

75gwspaC
 1  e-mails on it. At the moment, we seem to be at an impasse. My

Page 15

75gwspaC.txt

2  question is: In what form would your Honor and how would you
3  like us to present this to you or the magistrate judge, this
4  particular dispute?
5           THE COURT: If this one is ready, get a joint
6  submission as soon as possible. Most likely, I'll refer it to
7  the magistrate judge, but why don't you send it to me in the
8  first instance, and I'll take a look at it and see if it's
9  something quick. But once again, I'm have having a hard time
10 seeing the merit of a position that says that if there is some
11 document, depending what the document is, and maybe it's
12 trivial, and maybe we don't care, but if we're talking about an
13 issue of identifying who is the person who took the action,
14 it's going to take a lot of convincing to convince me that
15 there's some reason why that information is subject to any kind
16 of privilege. Other countries have their own laws, but it
17 certainly doesn't sound like the kind of thing I've encountered
18 even in Switzerland, that you can't say who made the decision
19 within a corporation.
20         MR. JACOBS: Your Honor, just to speak to the issue so
21 we don't seem like the total black sheep of the courtroom here,
22 I've been involved in a number of these cases representing
23 foreign companies out of Europe. Your Honor's probably aware
24 there is this data protection policy that they have in Europe,
25 and Poland has its own regimen. And layered on top of that is

                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

                                                              24

75gwspaC
1  the EU's. Now, I'm not an expert in that by any means. I
2  understand my Polish office has an expert in it. They've
3  looked at it. They've assured me that what they've done here
4  is required by the law.
5           Now, are there ways around it? I have not
6  investigated. But what we tried to do for Mr. Zavin here was
7  produce the documents here in this country, which requires that
8  they be brought out of Poland, brought out of Europe, and
9  shipped here, as quickly as possible. Mr. Zavin's already got
10 some production last week, and he should get a very large
11 production tomorrow because we're Bates stamping them today.
12 They're mainly in Polish. One of the reasons we went to this
13 effort is so we could translate it here, not have to inspect
14 the documents in person. There's maybe a total way around this
15 if he's willing to go to Poland and look at the privileged
16 documents and they don't leave Poland.

                                                     Page 16

75gwspaC.txt

17          THE COURT: I would guess there is a less expensive
18  way around it if parties are as creative as they ought to be.
19          MR. JACOBS: I suggest to Mr. Zavin that his Polish
20  counsel get together with my office and work it out.
21          THE COURT: I think that's probably a good place to
22  start, because the main thing is that to the extent that
23  documents are going to be offered in evidence, that the Court
24  has some idea what they mean, whether that's me or a jury, and
25  that the plaintiff has the opportunity to depose people who

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    25
75gwspaC
1   need to be deposed or call witnesses who need to be called, or,
2   if it comes to that, make arguments about what inferences
3   should be drawn from the unavailability of which people, if it
4   comes to that. To do any of that, they need to know who the
5   relevant players are.
6           Now, I am certain that if the issue here is the
7   document can't come out of Poland without somebody's name
8   blacked out, however, it is entirely acceptable for Mr. Zavin
9   or his representative in Poland to see the original documents
10  and make notes on who it is, and convey back to Mr. Zavin who
11  it is, that there will be some way of overcoming whatever
12  evidentiary obstacles that may pose in an American court and we
13  will have in effect complete information here. Since, as I
14  understand it, Mr. Zavin, I'm correct you've got Polish
15  counsel, right? Not talking about you having to get on a plane
16  to Warsaw.
17          MR. ZAVIN: That's correct, your Honor. And my Polish
18  is not good.
19          THE COURT: I think this is going to solve itself.
20  The necessary solution is that the plaintiff have the
21  information. I don't think the necessary solution is that we
22  have to somehow get a document in a pristine form provided that
23  the plaintiff is aware of the information of who they need to
24  be talking to and who made the decision and provided that the
25  document can eventually be introduced in an American courtroom

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

                                                                    26
75gwspaC
1   with an appropriate stipulation or some appropriate way of
2   dealing with the fact that the document looks peculiar and

                                                              Page 17

75gwspaC.txt

3  doesn't say on its face all the things that we know it says.
4  The mechanics of this, I expect, you can work out. But, once
5  again, there are, no doubt, ways to do this. If what I'm being
6  told at the end of the day is that somehow the plaintiff
7  doesn't get full discovery of what actually happened here,
8  there will be appropriate consequences because, in my view, the
9  plaintiffs' entitled to that. I hope I don't have to do any
10  more resolving, but, if necessary, you'll tell me what the
11  problem is and I'll either resolve it myself or ship it off to
12  the magistrate judge.
13      MR. JACOBS: Your Honor, I'm reasonably assured, as
14  you are, that we'll work it out.
15      The last thing we wanted to do was to do this blacking
16  out because it's an enormous effort. To black it out, you have
17  to copy the document once, black it out, copy them again, and
18  finally Bates number them and copy them once more. We had no
19  great desire to do it, and it was done in an effort to get the
20  documents out of Poland as quickly as possible in what we
21  believed was in accordance with the law. I'm sure we'll work
22  something else out.
23      THE COURT: I'm sure you'll work something out. I
24  don't need to worry now about what was done or what has been
25  done because it's not of interest. I appreciate that we did
              SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

                                                               27

75gwspaC
1  things on an expedited basis. If that results in a production
2  that the plaintiff is dissatisfied with, before the trial,
3  there will either be production that the plaintiff is satisfied
4  with in one way or another, or there will be something for me
5  to adjudicate because of the resulting dissatisfaction, but
6  we're not there yet.
7      Okay. Thank you very much.
8      (Adjourned)

                                                         Page 18

75gwspaC.txt

18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Page 19