James David Jacobs (JJ-7351)
Vasilis F.L. Pappas (VP-4281)
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 626-4100

Attorneys for Defendants and
Counterclaim Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SPANSKI ENTERPRISES, INC. and                                :
POLTEL INTERNATIONAL L.L.C.,                                 :
                                                             :
    Plaintiffs,                                             :
                                                             :
        -against-                                         :
                                                             :
TELEWIZJA POLSKA, S.A., ANNA                                 :
MILEWSKA, KRZYSZTOF SZTANDERA,                               :
MARCIN BOCHENEK, JOHN DOES 1-10,                             :      07 CIV 930 (GEL)
                                                             :
    Defendants and Counterclaim Plaintiffs,                 :
                                                             :
        -against-                                         :
                                                             :
SPANSKI ENTERPRISES, INC., POLTEL
INTERNATIONAL L.L.C., TELEWIZJA
POLSKA U.S.A. INC., TELEWIZJA
POLSKA CANADA INC. and BOGUSLAW
M. SPANSKI,

    Counterclaim Defendants.
------------------------------------------------------------ X

**MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL
AND IN SUPPORT OF TELEWIZJA POLSKA'S
MOTION FOR A PROTECTIVE ORDER**

# TABLE OF CONTENTS

|  | Page |
|---|---|

FACTUAL BACKGROUND ................................................................................................- 1 -

    A.    General Factual Background to the Litigation ......................................................- 1 -

    B.    Discovery to Date in this Matter and the Present Dispute....................................- 2 -

ARGUMENT.....................................................................................................................- 5 -

    A.    PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED, AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER GRANTED ...........................................................................................................- 5 -

        1.    Standard of Law.........................................................................- 5 -

        2.    Poland's National Interest in Enforcing the PDP Outweighs the U.S. Interest in Ensuring Compliance with Discovery Rules .............................................- 6 -

        3.    TVP Would Suffer Significant Hardship if TVP Were to be Compelled to Violate the Polish Data Protection Act ...............................................................- 10 -

        4.    Unredacted Documents are Not Important to the Litigation ....................................................................................- 12 -

        5.    TVP Has Acted in Good Faith...................................................- 14 -

CONCLUSION .................................................................................................................- 16 -

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*,
   105 F.R.D. 16, 30 (S.D.N.Y. 1984)..................................................................................8

*First Am. Corp. v. Price Waterhouse, L.L.P.*,
   154 F.3d 16 (2d Cir. 1998) ..............................................................................5, 6, 10, 12, 14

*In re Vitamins Antitrust Litigation*,
   2001 U.S. Dist. LEXIS 8904 (D. D.C. June 20, 2001)..........................................................8, 9

*In re Uranium Antitrust Litigation*, 480 F.Supp. 1138, 1143 (N.D. Ill. 1979)..............................8

*Minpeco, S.A. v. Conticommodity Services, Inc.*,
   116 F.R.D. 517, 523 (S.D.N.Y. 1987)..............................................6, 7, 8, 9, 10, 11, 12, 13, 14, 15

*Penninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*,
   2005 U.S. Dist. LEXIS 27815 ................................................................5, 6, 10, 11, 12, 14, 15

*Remington Products, Inc. v. N. Am. Philips Corp.*,
   107 F.R.D. 642, 651 (D. Conn. 1985)..................................................................................8

*Salerno v. Lecia, Inc.*,
   1999 U.S. Dist. LEXIS 7169 (W.D.N.Y. March 23, 1999)....................................................8, 9

*Societe Nationale Industrielle Aerospatiale v. United States District Court for the
   Southern District of Iowa*,
   482 U.S. 522 (1987) ................................................................................................................5

*Volkswagen, A.G. v. Valdez*,
   909 S.W.2d 900 (Sup. Ct. Tex. 1995) ...............................................................................8, 9

Defendant and Counterclaim Plaintiff Telewizja Polska S.A. ("TVP"), by its attorneys Baker & McKenzie LLP, submits this memorandum of law in opposition to plaintiffs' motion to compel TVP to provide personal data redacted from documents TVP produced to plaintiffs and in support of TVP's motion for a protective order, as well as the Declaration of Dr. Hab. Tomasz Stawecki dated July 19, 2007 (the "Stawecki Decl.") and the Affirmation of James David Jacobs dated July 19, 2007 (the "Jacobs Aff.").

## FACTUAL BACKGROUND

### A. General Factual Background to the Litigation[1]

In 1994, TVP, a Polish television station, producer and broadcaster, entered into a License Agreement with plaintiff Spanski Enterprises, Inc. ("SEI") in which it granted to SEI a non-exclusive license to broadcast in North and South America certain television shows produced and broadcasted by TVP. SEI assigned all of its rights and obligations under the License Agreement to plaintiff Poltel International L.L.C. ("Poltel"). The License Agreement was purportedly modified by two subsequently executed addenda in 1999 and 2002 between TVP and SEI.

In February, 2007, SEI and Poltel filed a Complaint against TVP and three of its former employees in which they alleged that TVP had breached the parties' written agreements and infringed SEI's copyrights. SEI claimed that the parties' agreements conferred on SEI exclusive rights to certain Polish-language television programming, and that TVP violated those rights by broadcasting the same television programming in North

---

[1] As the facts of the case are not relevant to the instant discovery dispute between the parties, TVP provides only a condensed summary of the facts of the case. True and correct copies of TVP's Amended Answer and Counterclaims and plaintiffs' Complaint are annexed as Exhibits A and B, respectively, to the Jacobs Aff. for the Court's reference.

and South America over the internet and negotiating license agreements with other companies which would grant those companies the right to broadcast the same programming in North and South America.

On April 9, 2007, TVP filed counterclaims against plaintiffs, as well as a number of counterclaim defendants. TVP contended that the rights conferred to SEI in the parties' agreements were non-exclusive licenses, and that the plaintiffs and counterclaim defendants breached the parties' agreements and violated TVP's copyrights by, *inter alia*, impermissibly re-broadcasting TVP's television programming in North and South America in their entirety, and offering TVP's television programming for viewing upon consumer demand. TVP also alleged claims for fraud and trademark infringement.

**B.     Discovery to Date in this Matter and the Present Dispute**

To date, TVP has produced over 6000 pages of documents to plaintiffs in response to their document requests (plaintiffs, in contrast, have produced only 375 pages of documents). However, in compliance with Poland's Data Protection Act (the "PDP"), and to avoid criminal as well as civil liability in Poland, TVP has redacted personal information of any natural persons identified in the documents produced.

The PDP was enacted by the Polish government on August 29, 1997. (Stawecki Decl., ¶ 13). It was enacted pursuant to the 1995 European Union Data Protection Directive 95/46/EC (the "EU Directive") which obligated all EU members and all countries in the process of acceding to the EU to harmonize their data protection laws with those of the EU. (Id.). The purpose underlying the enactment of the PDP was to protect the privacy rights of individuals residing in Poland. (Id. at ¶¶ 15, 16).

The PDP applies to state authorities, territorial self-government authorities, state and municipal organizations units, as well as non-public bodies carrying out public tasks, if they are involved in the "processing" of "personal data" by means of technical devices located in Poland. (Id. at ¶ 15). Such entities are referred to in the PDP as "controllers." (Id.). "Personal data" is defined by the PDP as including "any information relating to an identified or identifiable natural person." (Id. at ¶ 17). "Processing" of personal data is defined as including "any operation which is performed upon personal data, such as collection, recording, storage, organization, alteration, disclosure, and erasure." (Id.). TVP, as an entity carrying out public tasks which processes personal data, falls under the definition of entities to which the PDP applies, and all duties and obligations imposed on controllers by the PDP apply to TVP. (Id.).

The PDP law requires controllers to protect the interests of data subjects with care, and to ensure that (1) the data is processed lawfully, in strict accordance with the PDP and other applicable laws, and (2) that data is collected for specified and legitimate purposes and not further processed in a way incompatible with the intended purposes enunciated by the PDP. (Id. at ¶ 15). In other words, controllers are only permitted by the PDP to process (*i.e.*, collect, record, store, organize, alter, disclose, or erase) personal data for the specified purposes identified in the PDP. (Id. at ¶¶ 18-19). Other "processing" of personal data, such as the disclosure of personal data to a U.S. court, is not permitted by the PDP. (Id. at ¶¶ 15-19). Moreover, amendments made to the PDP in 2004 expressly prohibit the disclosure of personal data outside the EU, unless certain additional conditions are strictly met. (Id. at ¶¶ 22-24). Indeed, the EU issued an Opinion in 1999 in which it concluded that the United States does not provide sufficient

protection for personal data such that personal data could be transferred or disclosed to the United States. (Id. at ¶ 24). A number of exceptions to the prohibition on the disclosure of personal data exist in the PDP. None, however, apply to the instant case. (Id. at ¶¶ 20, 24).

There are severe consequences for the breach of the PDP in Poland. (Id. at ¶¶ 25-26). Any violators of the PDP can be criminally prosecuted by the Polish government, with criminal liability potentially including up to US $250,000 in fines and up to two years imprisonment. (Id. at ¶ 25). Further, any officers or employees of a company found to violate the PDP can be held personally criminally liable. (Id.). Moreover, any violators of the PDP can be held civilly liable to any individual found to suffer any loss or harm occasioned by an impermissible disclosures of personal data. (Id. at ¶ 26).

A procedure is available under the PDP to permit a controller to process personal data even though it is prohibited by the PDP. (Id. at ¶ 27). According to the PDP, a controller may apply to the Inspector General for Personal Data protection (the "IGPDP") for a permit to process personal data and transfer such personal data to the United States. (Id.). Such a permit would permit parties to produce documents to a U.S. court containing personal data of Polish natural persons. (Id.).

In the instant case, TVP, in a good faith effort to comply with both U.S. as well as Polish law, produced all the documents in its possession, custody, or control responsive to plaintiffs' discovery requests, and redacted any personal data, as that term is the defined in the PDP, in the documents produced. Further, TVP is applying to the IGPDP, also known as "GIODA", to produce unredacted documents containing personal data in

an effort to further comply with its obligations under U.S. discovery rules. A decision from GIODA is expected within two to four weeks.

In a further effort to increase the likelihood that GIODA would issue a permit that would allow TVP to legally process the personal information, TVP requested plaintiffs to specify which of the documents were indispensable or otherwise had evidentiary value. Plaintiffs refused to narrow their requests from the liberal discovery permitted under the Federal Rules ("reasonably calculated to lead to admissible evidence") to that specified in the PDP – *i.e.*, "necessary … if a party wants to prove his/her claims are well grounded." (Stawecki Decl., ¶ 24.2.c; Jacobs Aff., Ex. C).

## ARGUMENT

### A.  PLAINTIFFS' MOTION TO COMPEL SHOULD BE DENIED, AND DEFENDANTS' MOTION FOR A PROTECTIVE ORDER GRANTED

#### 1.  <u>Standard of Law</u>

"In deciding whether to compel foreign entities to engage in discovery practices arguably prohibited by foreign law, courts must determine whether comity requires deference to the foreign law." *Penninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., Ltd.*, 2005 U.S. Dist. LEXIS 27815 at * 4 (S.D.N.Y. Nov. 14, 2005) (citing *First Am. Corp. v. Price Waterhouse, L.L.P.*, 154 F.3d 16, 22 (2d Cir. 1998)). In making this determination, the Second Circuit applies a balancing test distilled from the Restatement of the Foreign Relations Law of the United States, which was cited with approval by the Supreme Court in *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522 (1987). This balancing test requires courts in this Circuit to consider the following principal factors:

> (1) the competing interests of the nations whose laws are in conflict, (2) the hardship of compliance on the party or witness from whom discovery is sought, (3) the importance to the litigation of the information and documents requested, and (4) the good faith of the party resisting discovery.

*Minpeco, S.A. v. Conticommodity Services, Inc.*, 116 F.R.D. 517, 523 (S.D.N.Y. 1987). *See also, First Am. Corp.*, 154 F.3d at 22 (citing *Minpeco* with approval); *Penninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27815 at *3.

### 2. Poland's National Interest in Enforcing the PDP Outweighs the U.S. Interest in Ensuring Compliance with Discovery Rules

The first factor courts must consider in determining whether or not to defer to a foreign law prohibiting the disclosure of certain information is the competing interests of the nations whose laws are in conflict. *First Am. Corp.*, 154 F.3d at 22; *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27185 at *3; *Minpeco*, 116 F.R.D. at 523. Here, on the one hand, the "United States has a general interest in ensuring compliance with discovery rules, and in ensuring that plaintiffs have access to discoverable information." *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS at *6. On the other hand, Poland has a strong national interest in enforcing the PDP and in preserving the privacy of its citizens. In this regard, Poland's "national interest ... trumps the United States' interest in ensuring compliance with discovery obligations." *Id.*

With respect to the United States' interest in ensuring compliance with discovery rules, "there are necessarily limits on plaintiffs' ability to discover relevant information." *Id.* For example, the Court has held that where discovery is sought from a foreign entity which is prohibited by a foreign law from disclosing certain information in a "private civil action[] rather than criminal or civil enforcement proceedings in which the United

- 6 -

States government is the party moving to compel," less deference is accorded to the United States' interest in ensuring compliance with its discovery rules. *Minpeco*, 116 F.R.D. at 523. In *Minpeco*, a private civil action, the Court held the United States' interests were outweighed by those of Switzerland which prohibited the disclosure of certain information, stating that "[w]ere this a criminal or administrative action, this court could accord some deference to the determination of the Executive Branch – the arm of the government charged with primary responsibility for formulating and effectuating foreign policy – that the adverse diplomatic consequences of the discovery request would be outweighed by the benefits of disclosure." *Id.* (citations and quotation marks omitted). Therefore, while the United States certainly has an interest in ensuring compliance with its discovery rules, it is not a particularly strong interest in the instant case as it is a private civil action amongst private individuals and entities.

Conversely, Poland has a significant interest in enforcing the PDP. The Polish government enacted the PDP pursuant to the European Union Data Protection Directive, which it was obligated to do prior to its accession to the European Union in 2004. (Stawecki Aff., ¶¶ 13-14). The PDP was enacted with the legitimate purpose of protecting the fundamental and individual rights of its citizens to privacy. (Id. at ¶ 16). In *Minpeco*, Minpeco moved for an order compelling BPS to produce documents and answer interrogatories. BPS refused to provide certain documents and interrogatory answers containing information whose disclosure would violate Swiss bank secrecy laws. *Minpeco*, 116 F.R.D. at 519. Specifically, the Swiss bank secrecy laws prohibited the disclosure of a customer's identity or any other information about a customer obtained in the context of a banking relationship. *Id.* at 524. In some instances, BPS produced

responsive documents and redacted information the disclosure of which was prohibited by Swiss law. *Id.* at 520. The Court held that Switzerland had a strong interest in the enforcement of its bank secrecy laws because it had a "legitimate purpose of protecting commercial privacy inside and outside Switzerland," distinguishing Switzerland's bank secrecy laws "from a number of other foreign anti-disclosure laws whose purpose courts have determined do not warrant deference" -- *i.e.*, a "French 'blocking statute' designed solely to protect French business from foreign discovery," a "Dutch 'blocking statute' designed to frustrate discovery in U.S. antitrust cases," and "Canadian, Australian, and South African statutes enacted for express purpose of impairing jurisdiction of U.S. courts over activities of uranium cartels." *Id.* at 524 (citing *Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co.*, 105 F.R.D. 16, 30 (S.D.N.Y. 1984); *Remington Products, Inc. v. N. Am. Philips Corp.*, 107 F.R.D. 642, 651 (D. Conn. 1985); *In re Uranium Antitrust Litigation*, 480 F.Supp. 1138, 1143 (N.D. Ill. 1979)). In the present matter, Poland's PDP, like Switzerland's bank secrecy law, is a statute that was enacted for a legitimate purpose. It is not a statute designed to frustrate U.S. discovery or to protect Polish business from U.S. discovery. Rather, as set forth above, the PDP was enacted for the legitimate purpose of complying with an EU Directive and to protect the fundamental privacy rights of Polish citizens.

Indeed, courts throughout the United States have recognized the legitimacy of European Data Protection Acts in respect of the disclosure of personal information of European citizens, and have refused to compel foreign entities from producing such personal information on the basis of those Data Protection Acts. *See, e.g., In re Vitamins Antitrust Litigation*, 2001 U.S. Dist. LEXIS 8904 (D. D.C. June 20, 2001); *Salerno v.*

*Lecia, Inc.*, 1999 U.S. Dist. LEXIS 7169 (W.D.N.Y. March 23, 1999); *Volkswagen, A.G. v. Valdez*, 909 S.W.2d 900 (Sup. Ct. Tex. 1995).

In *Salerno*, the U.S. District Court for the Western District of New York considered the European Union Directive on which the PDP is based and a German Data Protection Act enacted pursuant to the same directive in a motion to compel. It held that "the document production sought by plaintiff is precluded by Directive 95/46/EC and by the German Act on Data Protection." *Salerno*, 1999 U.S. Dist. LEXIS 7169 at *9-10. In *Volkswagen*, the Supreme Court of Texas vacated an order from a trial court in Texas which compelled a foreign corporation to produce personal information of natural persons in violation of the German Data Protection Act. *Volkswagen*, 909 S.W.2d at 903. In *In re Vitamins*, the U.S. District Court for the District of Columbia refused to compel the production of information that would cause the defendants to violate the same German Data Protection Act holding that "defendants do appear to have some legitimate privacy law concerns … [and that] the Court is hesitant to order these defendants to violate their country's laws … ." *In re Vitamins*, 2001 U.S. Dist. LEXIS 8904 at *53-54. In that case, the Court ordered that defendants file a privacy log detailing what requested information would be covered by German privacy laws so that plaintiffs could then determine "whether that requested information is <u>absolutely essential</u> to their case and whether there is a way to … safeguard defendants from liability in the production of the information." *Id.* at *54 (emphasis supplied). This is precisely what TVP suggested plaintiffs do in the instant proceedings – *i.e.*, TVP asked plaintiffs to identify which documents they believed contained indispensable information in an effort to facilitate a more likely successful application to GIODO. *See supra*, p. 5; *infra*, p. 14.

The importance of Poland's PDP is also reflected by the fact that violations of the PDP can result in significant criminal fines and imprisonment, as well as civil liability. (Stawecki Aff., ¶¶ 25-26). In *Minpeco*, the Court acknowledged Switzerland's strong national interest in its bank secrecy laws by referring to the criminal and civil sanctions available for the violation of Switzerland's bank secrecy laws. *Minpeco*, 116 F.R.D. at 524. In that case, penal sanctions could be imposed on officers, directors, employees or agents of a bank for any violations of Switzerland's bank secrecy laws, and "[i]ntentional violations [were] punished by imprisonment of up to six months or by a fine of up to 50,000 Swiss francs ... [as well as] a variety of administrative sanctions ... ." *Id.* In the instant case, violations of Poland's PDP can result in criminal "fines up to the equivalent of US $250,000 or more, as well as imprisonment. The length of such imprisonment may extend up to two years." (Stawecki Aff., ¶ 25). Corporate officers and employees could be held personally criminally liable for any violations of Poland's PDP. (Id.) Moreover, violations of the PDP could result in civil liability. (Id. at ¶ 26).

Therefore, in the case at bar, even though both the United States and Poland have national interests at stake, Poland's strong national interest in protecting the privacy of its citizens must outweigh the United States' interest in ensuring compliance with its discovery rules.

### 3. TVP Would Suffer Significant Hardship if TVP Were to be Compelled to Violate the Polish Data Protection Act

"The second important factor to consider is the potential hardship which would be imposed on [TVP] by an order compelling the requested discovery." *Minpeco*, 116 F.R.D. at 525. *See also, First Am. Corp.*, 154 F.3d at 22; *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27185 at *3. In *Peninsula Asset Mgmt.*, in holding that a Korean entity

- 10 -

was not obligated to produce information in violation of a Korean statute prohibiting such disclosure, the Court recognized the importance of the fact that violations of the Korean statute would result in criminal liability in Korea. In that case, Peninsula served a subpoena on FSS, a quasi-governmental entity in Korea that regulated Korean financial institutions and financial markets. *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27815 at *1. FSS refused to comply with the subpoena, and Peninsula moved for contempt. FSS argued that it was prevented from complying with Peninsula's subpoena by a provision of the Korean statute that created FSS. *Id.* at *2. The Korean statute provided that FSS employees could not reveal to outsiders any information obtained in the course of their duties, and that violations of the Korean statute were "punishable by substantial fines and imprisonment." *Id.* at *2-3.

Similarly, in *Minpeco*, as set forth in greater detail above, the Swiss bank secrecy laws imposed criminal as well as administrative penalties on any officers, directors, employees, or agents of a bank disclosing a customer's identity or any other information about a customer obtained in the context of a banking relationship. *Id.* at 524. The Court held that this caused the hardship to weigh heavily in the balance of U.S. and Swiss interests. *Id.* at 526.

In the present matter, as set forth above, significant criminal as well as civil sanctions exist in Poland for violations of the PDP. If compelled to produce unredacted documents disclosing the identity of Polish citizens or information sufficient to determine the identity of Polish citizens, TVP, its officers, and its employees would be subject to criminal fines up to US $250,000 and up to two years imprisonment. (Stawecki, ¶ 25). Further, TVP, its officers, and its employees could be exposed to significant civil liability

(Id. at ¶ 26). Therefore, TVP, its officers, and its employees would suffer significant hardships if TVP were compelled to produce unredacted documents as part of its discovery obligations in this case.

Moreover, it is not only TVP that would be subject to criminal and civil liability if required to produce unredacted documents in violation of the PDP. Its officers and even employees may also be criminally and civilly liable. In *Minpeco*, the Court noted that "[i]n analyzing the hardship factor, it is also important to focus on the status in the litigation at hand of the party resisting discovery." *Id.* The Court held that "[w]here the party sought to be compelled to produce documents in violation of foreign secrecy laws is merely a neutral source of information, and not itself a target of a criminal investigation or an adverse party in litigation, some courts have found the hardship to weigh more heavily in the balance." *Id.* TVP's officers and employees, who may feel the largest impact of any criminal or civil sanctions imposed for violations of the PDP, are not adverse parties. This too should militate against any order compelling TVP to produce unredacted documents.

### 4.     Unredacted Documents are Not Important to the Litigation

"The third factor to be considered is plaintiffs' need for the documents and information whose production it seeks to compel." *Minpeco*, 116 F.R.D. at 527. *See also, First Am. Corp.*, 154 F.3d at 22; *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27185 at *3. In the present matter, TVP has produced over 6000 pages of documents in compliance with its discovery obligations under U.S. law, and has redacted the names of any Polish individuals identified in compliance with Poland's PDP. Plaintiffs seek the

production of unredacted documents disclosing the redacted names and other personal information of any natural persons.

In *Minpeco*, the Court held that Minpeco did not have a demonstrable need for the documents and information it sought to compel, even though the information Minpeco sought was "highly relevant" and "crucial to the litigation." *Minpeco*, 116 F.R.D. at 527-28. The Court held in this manner because Minpeco "ha[d] already obtained a significant amount of discovery for use in their case" such that there was a "reduced degree of importance of the requested discovery . . . ." *Id.* at 528, 529. The Court held that "[t]his consideration counsels against a decision to issue a production order in two ways." *Id.* at 529.

> First, a court is less willing to order a foreign witness to engage in conduct in a foreign country that will violate that country's law where the need for the information located abroad is less crucial to the litigation. Second, compliance by BPS with a compulsion order will require the disclosure of confidential commercial information about all its brokerage customers even though plaintiffs do not contend that they expect information about more than a small number to be helpful to their case, with the result that the cost in international comity will likely to exceed the benefit to the conduct of these American litigations.

*Id.* at 529-30 (internal citations omitted).

In the present matter, even if the redacted names in the documents produced by TVP are "highly relevant" or "crucial to the litigation," this does not by itself warrant an order to compel discovery in the face of a foreign law prohibiting such disclosures. First, plaintiffs have already obtained a significant amount of discovery for use in their case, as TVP has already produced to plaintiffs over 6000 pages of documents. Second, the only issue relevant to plaintiffs' case against defendants is whether defendants violated plaintiffs' alleged exclusive copyrights negotiated in 1994, 1999, and 2002. Plaintiffs

- 13 -

already know the identities of the current and former employees of TVP with whom they negotiated these allegedly exclusive copyrights.[2]

Finally, plaintiffs cannot contend that if TVP is compelled to produce unredacted documents that plaintiffs can expect information about more than a small number to be helpful to their case. In over 6000 pages of documents consisting of e-mails, memoranda, letters, notes, minutes, and so on, TVP has produced to plaintiffs, a great many Polish citizens are identified, most of whom are irrelevant to plaintiffs' case. To require TVP to produce unredacted documents disclosing the identities of so many Polish citizens in violation of Poland's PDP would result in a cost to international comity that would exceed the benefits to the conduct of this litigation. Indeed, TVP suggested that plaintiffs limit their request to the documents they view as indispensable or of high evidentiary value in order to maximize the likelihood that GIODO will issue a permit that allows TVP to process the personal data. Plaintiffs refused to limit their requests. (Jacobs Aff., Ex. C).

### 5. **TVP Has Acted in Good Faith**

"The last factor to be taken into account is the good faith shown by the party resisting the discovery." *Minpeco*, 116 F.R.D. at 528. *See also, First Am. Corp.*, 154 F.3d at 22; *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27185 at *3. In *Minpeco*, the Court held that BPS had acted in good faith because it "appear[ed] that BPS ha[d] 'in good faith made diligent efforts' to provide the discovery requested by plaintiffs." *Id.*

---

[2] Indeed, it was plaintiffs' counsel who identified the relevant current and former employees of TVP at TVP's request to enable TVP to get a "head start" on locating relevant and responsive documents to plaintiffs' document requests, as reflected in plaintiffs' counsel's letter of March 16, 2007. (Jacobs Aff., Ex. D).

(internal citations omitted). Critical to the Court's determination that BPS had acted in good faith was the fact that "BPS ha[d] made extensive attempts to secure waivers of bank secrecy rights from its trading customers, albeit with limited success." *Id.* Equally important to the Court's holding was that "BPS ha[d] also produced a substantial volume of documents ... [which] certainly cut[] against a finding that BPS ha[d] exhibited bad faith in complying with plaintiffs' requests." *Id.* (internal citations omitted). The Court also held that "[i]t [was] also worth noting that this [was] not a situation in which the party resisting discovery has relied on a sham law such as a blocking statute to refuse disclosure nor a situation in which the resisting party has not made reasonable efforts to apply to the appropriate governmental authority for an exemption to such a statute." *Id.* (internal citations omitted).

Similarly, in *Peninsula Asset Mgmt.*, the Court held that "FSS ha[d] made a good faith effort to comply with plaintiffs discovery demands." *Peninsula Asset Mgmt.*, 2005 U.S. Dist. LEXIS 27815 at *7. The Court held that FSS had acted in good faith because "FSS ha[d] requested leave to comply from its headquarters in Seoul, and that permission was denied." *Id.* "In addition, prior to the subpoena, FSS produced some documents ... to the plaintiffs." *Id.*

In the case at bar, it is beyond dispute that TVP has acted in good faith. Like the entities resisting discovery in *Minpeco* and *Peninsula Asset Mgmt.*, TVP has made a good faith effort to comply with its discovery obligations. It has produced to plaintiffs over 6000 pages of documents -- compared to plaintiffs' production of only 375 pages of documents -- redacting only the personal information of natural persons as required by the PDP. Additionally, TVP seeks leave from Polish governmental authorities, GIODO,

for a waiver of the PDP rules for the purposes of this lawsuit, and to produce unredacted documents to plaintiffs. TVP anticipates that it will have GIODO's ruling within two weeks and in no event more than a month. TVP has done all it can do under the circumstances, to comply with its discovery obligations under U.S. law, while at the same time complying with Poland's privacy laws. As such, there can be no doubt TVP has acted in good faith.

## CONCLUSION

For the foregoing reasons, TVP respectfully requests that the Court deny Plaintiffs' motion to compel it to produce unredacted documents, and grant TVP's motion for a protective order.

Dated: July 19, 2007
        New York, New York

                                    Baker & McKenzie LLP

                                    By: _____
                                    James David Jacobs (JJ-7351)
                                    Vasilis F.L. Pappas (VP-4281)
                                    Baker & McKenzie LLP
                                    1114 Avenue of the Americas
                                    New York, New York 10036
                                    (212) 626-4100

                                    *Attorneys for Defendants
                                    and Counterclaim Plaintiffs*