UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPANSKI ENTERPRISES, INC. and POLTEL
INTERNATIONAL L.L.C.,

     Plaintiffs and Counterclaim Defendants,

         -against-

TELEWIZJA POLSKA, S.A., ANNA MILEWSKA,
KRZYSZTOF SZTANDERA, MARCIN BOCHENEK, JOHN
DOES 1-10,

     Defendants and Counterclaim Plaintiffs,

         -against-

TELEWIZJA POLSKA U.S.A. INC., TELEWIZJA POLSKA
CANADA INC. and BOGUSLAW M. SPANSKI,

     Counterclaim Defendants.

07 CIV 930 (GEL) (GWG)

## DECLARATION OF DR HAB. TOMASZ STAWECKI
## IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO
## COMPEL PRODUCTION OF UNREDACTED DOCUMENTS, ETC.

I, Dr. hab. Tomasz Stawecki, under penalties of perjury, do hereby declare and state as follows:

<u>Introduction</u>

1.  My name is Tomasz Jan Stawecki. I am a member of the Faculty of Law and Administration at the University of Warsaw, Poland and the Head of the Legal Philosophy and Theory of State Department. I have worked at the University of Warsaw since 1980, and after I defended my doctoral thesis as well as my habilitation thesis (Polish and German second degree in academic career), I was admitted as a full member of the Faculty Board.

2.  I make this declaration in opposition to plaintiffs' and, to the extent applicable, counterclaim defendants', motion to compel production of unredacted documents and in

support of defendants' motion for a protective order. This declaration is based upon my expert knowledge of Polish public law, civil law systems in general, applicable European law and in particular the Law of August 29, 1997 on Personal Data Protection (the "PDP Law").

<u>Qualifications and Professional Experience</u>

3. I am trained and teach in Polish law, in particular in legal theory, general jurisprudence, and theory of legislation. Detailed information on my academic career is included in my *curriculum vitae* attached hereto as Exhibit A.

4. Additionally, I have developed professional practical experience in over fifteen years of private practice with the following international law firms in Poland: Dickinson, Wright, Moon, Van Dusen & Freeman between 1991 and 1996; Baker & McKenzie LLP between 1996 and 2007; and currently with Squire Sanders & Dempsey L.L.P. The quality of my work in private practice has been confirmed by, among other events, my nomination to the "Chambers Global World's Leading Lawyers" list.

5. Since 1991, I have been involved in the legislative process with respect to private law as well as public law. Most of this work relates to the collecting and processing of information on private persons (entities) by public authorities. This was the case of the National Court Register (businesses and various NGOs register), Register of Pledges (security interest register) as well as mortgage books. Recognition of my expertise in this field is confirmed by the fact that in 2006 the National Bank of Poland asked that I draft certain amendments to the Law on the Registered Pledge and Registry of Pledges, and in 2007 the Minister of Justice requested that I take the role of an expert representing the Polish government during Parliamentary debates.

## Subject matter of this Declaration

6. Defendants (sometimes collectively referred to as "TVP") have requested that I provide a my expert opinion on the question of whether Polish law compels TVP to conceal certain information (names of natural persons) when it provides copies of documents for the purpose of legal proceedings in the United State District Court.

## Materials reviewed to make this Declaration

7. For the purpose of this declaration I have reviewed current legal resources. All of them are publicly available and do not require any special permit or license to become accessible. The most important materials are the following:

a)    The Act of August 29, 1997 on the Protection of Personal Data (original text – Journal of Laws of October 29, 1997, No. 133, item 883; unified text – Journal of Laws of July 6, 2002, No. 101, item 926, as amended including the amendment of June 9, 2006 promulgated in the Journal of Laws 23, 2006, No. 104, item 711);

b)    The Act of December 29, 1992 on Radio and Television Broadcasting (original text – Journal of Laws of January 29, 1993, No. 7, item 34, unified text - Journal of Laws of 2004, No. 253, item 2531, as amended)

c)    Decision of the Supreme Administrative Court of March 30, 2006, case No. I OSK 628/05, available through the commercial legal editor LEX (record No. 198299) [with respect to requirement of direct legal basis of processing of personal data];

d)    Decision of the Supreme Administrative Court of January 28, 2003, case No. II SA 2210/01, available through the commercial legal editor LEX (record No. 194468) [with respect to the meaning of "provisions of law" in the PDP Law];

e)    Decision of the Supreme Administrative Court of December 11, 2001, case No. II SA 2684/00 available through the commercial legal editor LEX (record No. 82799) [with respect to the meaning of "provisions of law" in the PDP Law];

f)    Resolution of the Supreme Court of July 13, 2006, case No. III SZP 3/06, published in the Official Collection of Supreme Court Decisions (OSNP) of 2007, No. 1-2, item 35 [with respect to pro-EU interpretation];

g)    Decision of the Supreme Administrative Court of March 24, 2006, case No. I FSK 767/05, available through the commercial legal editor LEX (record No. 202187) [with respect to pro-EU interpretation];

h)    Decision of the Regional Administrative Court for Warsaw of March 31, 2006, case No. VI SA/Wa 1654/05, available through the commercial legal editor Lex (record No. 197273) [with respect to pro-EU interpretation];

8. Although the individual decisions of the Supreme Court and the Supreme Administrative Court are not directly binding on the parties in other cases and a Polish court is not unconditionally bound by previous decisions issued in such unrelated matters, past decisions of both Supreme Courts constitute authoritative interpretation of general laws and therefore are taken into account during Polish courts' decision making.

## Legal Status of Expert Opinion

9. This declaration states my expert legal opinion. I am not an employee of TVP nor bound by any other direct contract. This declaration is also not a statement of TVP or of any other parent or subsidiary of TVP. The only relation even tangentially relevant to my declaration is that since July 1, 2007 I have been associated with Squire Sanders Wachacki sp. k., a Polish affiliate of Squire Sanders & Dempsey L.L.P. I am associated with Squire

4

Sanders as an independent contractor having the status of Of Counsel. I understand that Squire Sanders Wachacki sp. k. represents defendants in Poland.

Defendants' arguments for nondisclosure of certain information

10. I have been informed that under the discovery procedure taking place in the court proceedings in New York, TVP is obliged to provide plaintiffs with a number of its documents relating to the matter in dispute. I further understand TVP has provided (or is providing) such documents. However, all names of individuals (natural persons) mentioned in those documents, as well as other sensitive data, such as titles or functions, addresses or telecommunication contacts, or the like, have been redacted in a way making it impossible to identify a person.

11. Plaintiffs claim that all such redacted data should be disclosed to them, otherwise its rights in the trial would be severely restricted and plaintiffs' ability to conduct discovery and to prepare for the trial is by that fact prejudiced. Plaintiffs apparently suggest defendants have no legal basis upon which to withhold the redacted data.

12. To the contrary, it is my opinion that Polish law prohibits defendants from disclosing information relating to individuals. Under Polish law all such information is regarded as "personal data" and as such is subject to protection under the PDP Law. Since I am informed that many of the documents delivered to plaintiffs contain names of actual or past employees of TVP or contractors of TVP, any unauthorized disclosure of the documents would expose TVP not only to the charge of breach of the PDP Law, but also claims of individuals who suffered any loss, cost or other inconvenience as a result of disclosure of their personal data.

<u>Status of TVP under the PDP Law and obligations of TVP</u>

13. The PDP Law was introduced by an act of the Polish Parliament on August 29, 1997, as amended. The key motivation underlying the enactment of the PDP Law was a general obligation of the Republic of Poland to harmonize Polish laws with European law, in particular with the 1995 European Union Data Protection Directive (95/46/EC).  Within the European Union (the "EU") and with respect to all countries in the process of formal accession to the EU, the harmonization of laws is a fundamental process to make legal systems of all member countries coherent.   Under the harmonization process a member country or a candidate to the EU does not directly apply a piece of legislation enacted by the EU authorities (as in case of EU regulations), but is obliged to modify its own laws in accordance with principles, goals and policies specified in the directives adopted by the Council of the EU or the European Parliament. This was the case with the PDP Law.

14. The harmonization of the PDP Law with the EU Directive 95/46/EC has principal importance because it requires any Polish public authority (court, governmental agency, etc.) to apply a "pro-EU interpretation" of Polish statutes, including the PDP Law.  This means that interpretative discretion of a relevant authority is limited;  the statute must be interpreted and applied in accordance with the standard methods of interpretation (with a priority to literal/textual interpretation), as well as with the principles of EU *acquis communautaire*. The Supreme Court, the Supreme Administrative Court and the Regional Administrative Court for Warsaw have confirmed the principle of mandatory pro-EU interpretation in numerous rulings, including cases III SZP 3/06, I FSK 767/05 and VI SA/Wa 165/05.

15. The PDP Law applies to state authorities, territorial self-government authorities, as well as to state and municipal organizational units.  Pursuant to Section 3.2 of the PDP Law it applies also to (among others) non-public bodies carrying out public tasks, having

their seat or residing in the territory of the Republic of Poland or in a third country, if they are involved in the processing of personal data by means of technical devices located in the territory of the Republic of Poland.   Although TVP is not a state, self-government or municipal authority, pursuant to the Law of December 29, 1992 on Radio and Television Broadcasting it is recognized as an entity carrying out public tasks ("specific tasks within public mission" - Section 21 of the Law of 1992).   Since TVP is an entity which decides on the purposes and means of the processing of personal data, pursuant to Section 7.4 of the PDP Law it has a status of "controller" (*administrator danych*).   All duties and obligations imposed on "controllers" apply to TVP. The obligations of a controller are specified in a rigorous manner.   A controller performing the processing of data should protect the interests of data subjects with due care, and in particular ensure that: (1) the data are processed lawfully, that is in strict accordance with the PDP Law and other applicable laws;  and (2) the data are collected for specified and legitimate purposes and are not further processed in a way incompatible with the intended purposes. More specific obligations of data controllers are described below beginning at paragraph 19.

16. The PDP Law has two main purposes:   it determines the principles of personal data processing and the rights of individuals whose personal data is or can be processed as part of a data filing system.

17. The scope of the PDP Law is very broad.   First, this is a result of the broad definition of "processing" of personal data.   The PDP Law, Section 7.2, defines that term as including any operation which is performed upon personal data, such as collection, recording, storage, organization, alteration, disclosure and erasure.   Therefore there is no doubt that under the PDP Law a disclosure to the US court of information containing personal data is recognized as "processing" of personal data.   The word "processing" does not require that personal information will become subject to the PDP Law only if it is contained and

organized in computer systems, formal records, files, etc. Such interpretation is incorrect. First, the PDP Law (Section 2.2.1) provides directly that "The Act shall apply to the processing of personal data in [...] files, indexes, books, list or other registries" in addition to computer systems (Section 2.2.2). It is clear then that computer systems (or any mechanical instruments) are one of several methods of collection and processing of personal data. Second, Section 2.1 of the PDP Law provides that personal data are protected if they "are or can be processed as a part of data filing system" (... *zbiór danych*). Therefore it is not a necessary condition to be included in a filing system. Third, commentaries to the EU Directive 95/46/EC which includes similar concept of personal data state clearly, that by "filing system" one should understand various non-mechanical collections of documents such as an employee's files, official forms and questionnaires, as well as police or court files. [See: J. Barta, P. Fajgielski, R. Markiewicz: *Ochrona Danych Osobowych. Komentarz* (Protection of Personal Data. Commentary), 3rd Edition, Kraków 2004, pages 390 and 397].

Second, under the PDP Law "personal data" means any information relating to an identified or identifiable natural person. This definition only requires that a person can be inferentially identified ("An identifiable person is one who can be identified, directly or indirectly, in particular by reference to an identification number or to one or more factors specific to his physical, physiological, mental, economic, cultural or social identity.") (Section 6.2 of the PDP Law). (An English translation of cited Sections of the PDP Law is attached as Exhibit B). Thus, it is enough that any individual mentioned in the documents provided by TVP may be identified for the information to have the status of personal data.

18. TVP as a data controller is obliged to meet two types of obligations specified by the PDP Law: (1) local compliance requirements; and (2) obligations relating to cross-border data transfer. As shown below the present case does not meet the exceptions in the more liberal local compliance requirements set forth in Section 23. Even if those

requirements were met, the more strict exceptions to the cross-border transfer requirements stated in Section 47 prevent the disclosure of the personal data in this case.

<u>Circumstances permitting personal data processing</u>

19. In this Declaration I am not going to describe specifically all obligations of TVP under the PDP Law due to the fact that some of them are irrelevant from the perspective of discovery procedure. What matters in this case is first of all the prohibition of processing personal data without a direct legal basis. Protection of personal data is not, however, absolute. There are certain circumstances under which a controller of personal data is entitled to process personal data. Such circumstances are listed in Section 23 of the PDP Law. This list may not be interpreted broadly: any controller of personal data is allowed to process data only if it is proved that each condition for such action is strictly met. That interpretation was upheld by the decision of the Supreme Administrative Court, case No. I OSK 628/05 quoted above.

20. To determine whether TVP's decision to redact the names and other information that would enable plaintiffs to identify certain individuals was necessary, we have to examine the exceptions to the PDP Law that permit such disclosure. Pursuant to the PDP Law the processing of personal data is permitted only if:

1) "the data subject [an individual] has given his/her consent, unless the processing consists in erasure of personal data" (Section 23.1.1 of the PDP Law).

This rule does not apply to the discovery procedure. The vast number of individuals mentioned in the documents provided to the Court makes it impractical, if not impossible, to contact each such individual and to request him/her for consent to disclose information to plaintiffs. What is more important, even if TVP delivered such request to each relevant individual, there is no guarantee that consent would be

9

obtained. Therefore, for practical reasons this exception does not help defendants and plaintiffs solve the problem the disclosure of personal data;

2) "processing is necessary for the purpose of the exercise of rights and duties resulting from a legal provision" (Section 23.1.2 of the PDP Law).

For two reasons this second exception to the prohibition of disclosure of documents also does not constitute a basis for TVP to disclose sensitive information to plaintiffs. First, it is a well established interpretation that whenever Polish statutes use the expression or reference to "other statutes" or "legal provisions", it should be interpreted as "legal provisions of Polish law" [See for example the decisions of the Supreme Administrative Court, case No. II SA 2210/01 and II SA 2684/00, quoted in point 7 (d) of this Declaration]. Prior to Poland's accession to the EU on May 1, 2004, the European Commission notified Poland that the original wording of Section 23.1.2 of the PDP Law was too ambiguous. Therefore, pursuant to an amendment to the PDP Law enacted on January 22, 2004, Section 23.1.2 was revised to read as quoted above, so that it could also be interpreted as including European law. The conclusion resulting from these decisions of the Supreme Court and this legislative history of the enactment of this provision is that an interpretation of the discussed clause to include the "legal provisions of *any* jurisdiction" is unreasonable.

The second reason is that a disclosure of data to the plaintiffs is a situation of "cross-border transfer of personal data to the third country". Such transfers are regulated by Sections 47 and the following provisions of the PDP Law. According to the commonly accepted rules of legal reasoning in Poland the provisions of Section 47 ff are recognized as exceptions which render the general clause of Section 23.1.2 of the PDP Law inapplicable to cross-border transfers.

3) "processing is necessary for the performance of a contract to which the data subject is a party or in order to take steps at the request of the data subject prior to entering into a contract" (Section 23.1.3 of the PDP Law).

A dispute in a court between the parties to a certain contract is not recognized as "performance of that contract". Therefore the plaintiffs are not allowed to base their claims on this clause.

4) "processing is necessary for the performance of a task provided for by law and carried out in the public interest" (Section 23.1.4 of the PDP Law).

In the case of this clause two conditions must be met: (1) the disclosure should be proven as necessary for the performance of a task provided for by law, and (2) it should be "carried out in the public interest". Neither of these tests is met in the present case: a lawsuit of a private party is not a "task provided by law" and it cannot be recognized as "carried out in the public interest" since it is carried in the interest of private parties (the plaintiffs).

5) "processing is necessary for the purpose of the legitimate interests pursued by the controllers or data recipients, provided that the processing does not violate the rights and freedoms of the data subject" (Section 23.1.5 of the PDP Law).

Under this clause a controller of personal data is obliged to pursue the legitimate duties of the controllers or of data recipients. The disclosure of information by TVP to plaintiffs is not the normal legitimate interest of TVP (the controller).

The second possibility is the "pursuit of legitimate interests of data recipient". This provision of the PDP Law also does not permit TVP to disclose to plaintiffs data allowing for identification of individuals, since the additional condition also has to be

11

met: "processing does not violate the rights and freedoms of the data subject". In our case individuals mentioned in the documents provided by TVP to plaintiffs have a risk of being called as witnesses or even to be sued as a result of the lawsuit between plaintiffs and defendants. Therefore TVP must bear in mind the rights and freedoms of its current or former managers, employees and contractors. Section 23.1.5 does not provide a basis for disclosure of personal data to the plaintiffs.

21. As shown above the interpretation of Section 23 of the PDP Law must be very strict and literal. Furthermore, another well recognized principle of Polish legal practice is that statutory provisions in the domain of public law, particularly such provisions which may have an impact on citizens' rights and liberties, must not be interpreted in a way other than strictly and literally. Accordingly, yet another justification exists that requires that the PDP Law be interpreted to prevent disclosure of personal data to the plaintiffs, absent an express exception to the contrary.

<u>Obligations relating to cross-border data transfer.</u>

22. Notwithstanding the general exceptions to the prohibition of processing personal data without direct consent of the individual to whom such data relates, an amendment to the PDP law in 2004 imposed additional rules as to the cross-border transfer of data. Those rules apply to any transfer of personal data to a third country. It is clear under the PDP Law that the United States of America is covered by the expression "third country". The legal definition of that term provides that a "third country" means "a country which does not belong to the European Economic Area" (the "EEA") (section 7.7 of the PDP Law).

23. The purpose underlying the specific regulations relating to cross-border transfers of personal data to non-EEA countries was to impose additional control over personal data, independent from that specified in the general provisions of the PDP Law. The cross-border

regulations require that any form of data processing, which is authorized pursuant to section 23 of the PDP Law, is subject to additional conditions, if disclosure of such data (notwithstanding the technology applied) results in the transfer of data to a country or territory defined as a "third country". Following the EU Directive 95/46/EC, Polish PDP Law differentiates the status of EU members (plus three other countries together with EU members constituting the EEA) and "the rest of the world". It is a principle of European as well as of Polish law that a transfer of data within the EEA may be conducted without restrictions, while a transfer "outside EEA" is authorized only if specific conditions are fulfilled.

24. Pursuant to the PDP Law the following rules apply to a transfer to a third country (Section 47 of the PDP Law).

1)   "The transfer of personal data to a third country may take place only, if the country of destination ensures at least the same level of personal data protection in its territory as that in force in the territory of the Republic of Poland" (Section 47.1 of the PDP Law).

This quite general clause (which is taken from European law as set forth in EU Directive 95/46/EC) has resulted in specific disputes between the EU Commission and the authorities of the United States. In the opinion of EU agencies the level of protection of personal data in the United States is not sufficient for the purposes of the cited provision. The position of the EU was expressed in Opinion 1 (99) concerning the level of data protection in the United States and the ongoing discussions between the European Commission and the United States Government, adopted by the Working Party on January 26, 1999 [5092/98/EN/final, WP 15, USDOC Electronic Commerce Task Force, Safe Harbor Principles; A. Gidari,

M. Aglion, EU Privacy Directive May Hamper E-Commerce, IP Magazine June 29, 1998].

The principle set forth in Section 47.1 does "not apply to the transfer of personal data required by other laws or by the provisions of any ratified international agreement" (Section 47.2 of the PDP Law). I am not able to identify any such laws or treaties which would apply to the above captioned lawsuit.

2)   Notwithstanding the general prohibition of transfer of personal data to a "third country", the PDP Law provides for certain exceptions. According to Section 47.3 of the PDP Law, a controller may transfer the personal data to a third country provided that:

a)   "the data subject has given his/her written consent" (Section 47.3.1 of the PDP Law).

The problem of consent of an individual whose personal data are to be disclosed and/or transferred has already been discussed. Furthermore, this particular provision of the PDP Law introduces an additional requirement as it requires that such consent has to be in writing.

b)   "the transfer is necessary for the performance of a contract between the data subject and the controller or takes place in response to the data subject's request" (Section 47.3.2 of the PDP Law), or "the transfer is necessary for the performance of a contract concluded in the interests of the data subject between the controller and third party" (Section 47.3.3 of the PDP Law).

The issues of "performance of contract" and "interests of the data subject [individual]" have been discussed above and led to the conclusion that they do

14

not provide plaintiffs with an effective ground for a demand to obtain documents from TVP without redactions.

c) "the transfer is necessary or required by reasons of public interests or for the establishment of legal claims" (Section 47.3.4 of the PDP Law).

As I explained above, Section 23.1.5 entitles a controller of the personal data to process such data if "processing is necessary for the purpose of the legitimate interests pursued by the controllers or data recipients, in particular for the purposes of vindication of claims resulting from economic activity, provided that the processing does not violate the rights and freedoms of the data subject". Contrary to Section 23, the regulation in Section 47 is much more specific. It authorizes cross-border transfer of personal data if "the transfer is necessary or required by reasons of public interests or for the establishment of legal claims". Plaintiffs as private entities do not have any legitimate title to claim their acts are in the public interest in order to justify disclosure of information contained in the documents transferred by defendants to plaintiffs under the pre-trial discovery procedure.

Nor is the cross border transfer of data to the United States necessary or required "for the establishment of legal claims" ("*wykazanie zasadności roszczeń prawnych*"). That argument fails due to at least three important reasons. First, under Polish law "establishment of legal claims" has to be understood in a very narrow manner. It is an exception from the general rule of Section 47.1 of the PDP Law (general prohibition of cross-border transfer to the third countries) so it must be interpreted very strictly. The generally accepted principle of legal reasoning in Poland is "*exceptiones non sunt*

15

*extentendae*" ("Do not interpret exceptions extensively"). Therefore taking into account Polish legal terminology a more idiomatic translation of the phrase "*wykazanie zasadności roszczeń prawnych*" would be "the transfer is necessary ... if a party wants to prove his/her claims are well grounded". That means that personal data are to play a role of an argument in a dispute/law suit, not merely a tool to search for arguments. Stated in other words the personal data to be transferred cross border must establish the claim, rather than just provide a means to possibly discover information or data that will establish the claim. Indeed, discovery that is had routinely in the United States, as I understand it, is prohibited in Poland. For example, Poland's reservation to the Hague Convention discussed below illustrates that Poland law severely restricts a litigant's ability to discover evidence. In our case plaintiffs request the personal data consisting of approximately 6000 pages of documents. Most, if not all, of the personal information that plaintiffs seek is sought for discovery purposes and thus is improper and forbidden under Polish law. Furthermore, I understand that, because of the liberal discovery rules in the United States, many of these documents do not contain relevant evidence. Thus, these documents undoubtedly contain the personal information of scores of persons, only a fraction of whom can yield any information relating to plaintiffs' claims and possibly none of whom can establish plaintiffs' claims. Even if Polish law permitted the transfer of documents that would lead to discovery of information that establishes a claim, which it clearly does not permit, it certainly would require the person seeking that data to identify those documents with a high likelihood that they would establish a party's claim in order to prevent the wholesale release of

16

irrelevant personal information. The Working Party document discussed below directly supports the proposition that only documents disclosing personal data that directly support a claim can be transferred. I understand that plaintiffs have refused to identify those documents which they believe will establish their claim.

Second, a very similar interpretation was presented at the level of European law. In the Directive 95/46/EC general rules of the cross-border transfer are called "Principles" (Article 25) and the exceptions, including "establishment, exercise of defence of legal claims" are called "Derogations" (Article 26). [see: text of the Directive 95/46/EC at: http://www.cdt.org/privacy/eudirective/EU_Directive_.html].   In addition, pursuant to Article 29 of Directive 95/46/EC the Commission established the "Working Party", an independent European advisory body on data protection and privacy, composed of representatives of authorities designated by each EU Member States and representatives of the Commission and other European institutions (Article 29. 1 and 2 of the Directive). On November 25, 2005 the Working Party adopted "Working document on a common interpretation of Article 26 (1) of Directive 95/46/EC of 24 October 1995". In that "Working document" (point 2.4, page 15) the Working Party said:

*"The Working Party emphasises that the concept of "establishment, safeguarding or defense of legal claims" must here again be subject to strict interpretation. Thus, for example, the parent company of a multinational group, established in a third country, might be sued by an employee of the group currently posted to one of its European subsidiaries. The exception in Article 26(1)(d) appears to allow the company to legally request the*

17

*European subsidiary to transfer certain data relating to the employee if these data are necessary for its defence.*

*In any event, this exception cannot be used to justify the transfer of all the employee files to the group's parent company on the grounds of the possibility that such legal proceedings might be brought one day.*"

Arguments of the Working Party have been fully accepted among Polish legal scholars. They are repeated as highly recommended in the leading commentary to the PDP Law [see: Andrzej Drozd: *Ustawa o ochronie danych osobowych. Komentarz. Wzory pism i przepisy, Wydanie 2* (2nd edition), Warszawa 2006, s. 305]. Therefore using the example presented by the Working Party as analogy we could say: under Section 47.3.4 of the PDP Law the plaintiffs would be authorized to claim personal data from defendants Anna Milewska, Krzysztof Sztandera and Marcin Bochenek (who are natural persons). However, plaintiffs are not authorized to claim such data relating to other employees or contractors of TVP, since legal proceedings have not been brought against these other persons.

Third, the Working Party has also added: "*In addition, this exception can only be applied if the rules governing criminal or civil proceedings applicable to this type of international situation have been complied with, notably as they derive from the provisions of the Hague Conventions of 18 March 1970 ("Taking of Evidence" Convention) and of 25 October 1980 ("Access to Justice" Convention)*". It means that the interpretation of Section 47.3.4 is also subject to the rules of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, concluded in Hague on March 18, 1970 (effective as of October 7, 1972) to which the United States is a party. The Republic of Poland however made a reservation to Article 23 of the Convention declaring that "it will not execute Letters of Request issued for the purpose of obtaining 'pre-trial discovery of documents' as known in common law countries". That reservation precludes the argument that the

18

transfer of data for the establishment of legal claims is permitted under Polish law.

d)   Two remaining exceptions that permit cross-border data transfer are: the transfer is necessary in order to protect the vital interests of the data subject and the transfer relates to data which are publicly available. Neither of such conditions is relevant in our case.

### Consequences of breach of PDP Law

25. The analysis presented above demostrates that pursuant to the PDP Law defendants are not authorized to provide the Court and the plaintiffs with documents with full information on individuals responsible for or involved in current practices of TVP.   The breach of TVP's obligations under the PDP Law would result in various types of liability as specified in Chapter 8 of the PDP Law.   It would include personal criminal liability of corporate officers and in some cases of employees of TVP as the data controller. The criminal liability may include fines up to the equivalent of US \$250,000 or more, as well as imprisonment. The length of the period of such imprisonment may extend up to two years.

26. In addition, in the case of any breach by TVP of the PDP Law, any individual who suffered any loss or harm may enforce its rights under general provisions of the Civil Code of 1964. The scope of TVP's liability in that case is difficult to predict at this stage.

### Available solution

27. A solution to the prohibition of disclosure of personal data by defendants to plaintiffs is available.   According to the provisions of the PDP Law (Section 48, along with Sections 12 and 18) TVP may apply to the Inspector General for Personal Data Protection (the "IGPDP") for an individual permit to process data and transfer them to the United States. A positive decision of the IGPDP issued pursuant to Section 12.1, 12.2 in connection with

19

18.1 of the PDP Law would enable defendants to provide plaintiffs with clean documents without any redaction. That would make possible effective and successful pre-trial discovery.

<u>Qualifications</u>

28. This declaration is limited solely to the laws of the Republic of Poland.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 19, 2007 in Warsaw Poland.

Dr. hab. Tomasz Stawecki