Exhibit A

EXHIBIT A

TO

DECLARATION OF DR HAB. TOMASZ STAWECKI

CURRICULUM VITAE

**GENERAL INFORMATION**

**Name:** Tomasz Stawecki
**Date of birth:** 19 July 1957
**Address:** 05-540 Zalesie Górne, 29 Jesionowa St.
**Phone:** (48 22) 756 58 72

**Languages & Degree of Proficiency:**  Polish (native), English (fluent), Russian (good), German (passive)

**Marital status:**  Married to Krystyna Stawecka (Regional Court/Sąd Okręgowy judge in Warsaw), two children (age 24 and 18)

**EDUCATION & TRAINING**

| | |
|---|---|
| 1976 - 1980 | Studies at the Faculty of Law and Administration, University of Warsaw |
| 1980 | Master of Law |
| 1991 | Doctor of Law. Doctoral thesis: Political participation in a democratic state. The study of American and British legal and political thought |
| 2006 | Habilitation degree based on the dissertation "Public Registries -Functions of the Institution" |

**EMPLOYMENT RECORD**

| | |
|---|---|
| Since 1980 | Faculty of Law and Administration, Warsaw University; lecturer in jurisprudence (legal philosophy), comparative private law (with respect to security interests) and legal issues of project financing. |
| 1986-1990 | Member of the editorial staff of the *"Państwo i Prawo"* monthly journal ("State & Law"); |
| 1991-1996 | Associated with Dickinson, Wright, Moon, Van Dusen & Freeman Sp. z o.o. (Counsellors at Law), Warsaw office -branch of US law firm; |

| | |
|---|---|
| 1996 - 2007 | Associated with Baker & McKenzie. December 2000 – appointed by the Executive Committee of Baker & McKenzie as Of Counsel to the Warsaw Office |
| Since July 1, 2007 | Associated with Squire Sanders and Dempsey (Warsaw office) as Of Counsel |

**OTHER ACTIVITIES**

| | |
|---|---|
| 1991 - 1997 | Working with the Commission for Civil Law Reform at the Ministry of Justice in the area of collateral security law reform and bankruptcy law reform; representing the Government in the legislative process; involved in training seminars for judges and officers of the Registry of Pledges; |
| 1991 - 1996 | Adviser to IRIS Poland Project (IRIS Central Europe – program organized at the University of Maryland and founded by US AID) in the area of collateral security law reform and real estate law reform; |
| 1994 - 1996 | Adviser to the World Bank missions in the area of justice system reform in Poland and collateral law; |
| 1995 - 1996 | Adviser to BUD-BANK S.A. (Bank for Housing Development) - member of a team drafting the Law on mortgage bonds and mortgage banks; |
| 1997 | Consultant to Abt Associates Inc. (Washington, D.C.) in a project on the Future of Housing Finance in Poland prepared for the Urban Institute Consortium; |
| 2000 | Adviser to the World Bank with respect to the Financial Sector Assessment Program |
| 2006 | Advisor to the National Bank of Poland with respect to reform of Polish regulations of registered pledge |
| 2007 | Advisor to the Minister of Justice with respect to reform of Polish collateral law (draft pending in Polish Parliament) |

**RESEARCH STUDIES ABROAD**

| | |
|---|---|
| November-December 1987 | Research stay at Nuffield College, Oxford, United Kingdom. |
| October 1988 | Research stay at Moscow University; |
| February 1991 | Research stay at Nuffield College, Oxford, United Kingdom; |
| July-August 1992 | Practice in Dickinson Wright Moon Van Dusen & Freeman in Detroit and Washington D.C.; |
| May 1996 | Participation in the technical cooperation program in the field of Registry Systems Management (organized by IACA – International Association of Corporate Administrators) Boise, Idaho and Austin, Texas, USA; |
| 1998 – 1999 | Academic year – research stay at the National Law Center of George Washington University, Washington, D.C., USA; |

## WORK EXPERIENCE

As legal adviser, worked on transactions for *inter alia* European Bank for Reconstruction and Development, International Finance Corporation, Overseas Private Investment Corporation, Deutsche Investitions- und Entwicklungsgesellschaft mbH, ABN AMRO, Raiffeisen Centrobank S.A., Societe Generale and several Polish banks including BRE Bank S.A., Bank Handlowy S.A., PeKaO S.A. and Bank Zachodni WBK. Advising also investors and borrowers including
Europol Gaz S.A. (Yamal-Europe Gas Pipeline Project), Hochtief (real estate development), France Telecom (acquisition finance).

For several following years listed in the "Chambers Global The World's Leading Lawyers" listed among the "Leading individuals" in the International Banking & Finance (for Poland: 2000-2001, 2001-2002, 2002-2003, 2003, 2006 and 2007)

Lecturing on Polish law issues at Max Planck Institute for International Private Law in Hamburg, Germany, at UCC Institute in Washington, D.C., and Dickinson School of Law (Carlisle, Pennsylvania, USA); lecturing also for World Bank missions in Poland, workshops organized *inter alia* by United States Agency for International Development (USAID) in Poland, Lithuania and Macedonia, International Association of Corporate Administrators (IACA) in Boise, Idaho, USA, International Development Law Institute (IDLI) in Albania, Lithuanian Banking Association, Gdańsk Institute for Research on Market Economy, EuroForum in Warsaw etc.

## AWARDS

1995   Distinction in the 35th Annual Competition of *"Państwo i Prawo"* (legal periodic of the Polish Academy of Science) for the best doctoral thesis in law

1994, 1999, 2000 – Awards for teaching and research achievements granted by the President of Warsaw University

2007 – Faculty of Law and Administration award for outstanding academic achievement

## PROFESSIONAL AND SOCIAL ACTIVITY

2007   Admitted in legal practice in Poland, a member of Regional Board of Legal Advisors (Warsaw)
2006   Elected for the position of the Chairman of Polish Section of International Association for Legal and Social Philosophy (IVR – *Internationale Vereinigung für Rechts- und Sozialphilosophie*)

**SELECTED PUBLICATIONS:**

1. Wstęp do prawoznawstwa [*Introduction to jurisprudence (students handbook)*], together with Piotr Winczorek, C.B. Beck, Warszawa 1994 - 2003(four editions);
2. Konsorcjum bankowe w prawie polskim [*Syndicated lending under Polish law*], Część I „Gazeta Bankowa" nr 42/1992 (18.10.1992), Część II „Gazeta Bankowa" nr 43/1992 (25.10.1992) – together with P. Święcicki;
3. Rejestry zabezpieczeń w praktyce kredytowej [*Registration of the security interest*], „Bank (Przegląd Finansowo-Bankowy)" 1993 nr 1;
4. Ustawa o zastawie rejestrowym i rejestrze zastawów. Komentarz, [*Law on registered pledge and the registry of pledges. Commentary*], Wydawnictwo TWIGGER, Warszawa 1997 (together with M. Tomaszewski i F. Zedler);
5. Zastaw rejestrowy i podobne formy rzeczowego zabezpieczenia wierzytelności w krajach Europy Zachodniej i Ameryki Północnej [*Registered pledge and similar forms of security interests in the Western Europe and the United States*] (w:) Ustawa o zastawie rejestrowym i rejestrze zastawów. Komentarz, Warszawa 1997;
6. Zastaw rejestrowy – nowy sposób zabezpieczenia wierzytelności, [*Registered pledge - new method for securing transactions*] „Prawo Spółek" 1997 nr 3;
7. The registered pledge – A New Instrument of Collateral Security, „Central European and CIS Legal Update (Baker & McKenzie)", Summer 1997;
8. Secured Transactions in Poland: Coping with the Traditional Thinking and the New Challenges for Central and Eastern Europe, „Uniform Commercial Code Law Journal" Summer 1999 (vol. 32, no. 1);
9. Instrumentalne traktowanie prawa – różne perspektywy, [*Taking law instrumentally - various perspectives*], (w:) Prawo i ład społeczny. Księga Jubileuszowa dedykowana Profesor Annie Turskiej, Wyd.: Wydział Prawa i Administracji Uniwersytetu Warszawskiego, Katedra Socjologii Prawa, Warszawa 2000;
10. Zastaw na udziale w spółce z ograniczoną odpowiedzialnością. [*Pledging shares in the limited liability company, part 1*], Part I, „Przegląd Prawa Handlowego" Nr 8 (107), August 2001;
11. Zastaw na udziale w spółce z ograniczoną odpowiedzialnością. [*Pledging shares in the limited liability company, part 2*], Part II, „Przegląd Prawa Handlowego" Nr 9 (108), September 2001;
12. Rejestry nieruchomości, księgi hipoteczne i księgi wieczyste od czasów najdawniejszych do XXI wieku, [*Registries of real property, land books and mortgage books from the ancient times up to the 21st century*], „Studia Iuridica" XL/2002,
13. Rola notariuszy po wejściu w życie Kodeksu spółek handlowych, Prawa działalności gospodarczej oraz Ustawy o Krajowym Rejestrze Sądowym, [*Legal position of public notaries after enactment of Commercial Companies Code, Law on Economic Activity and Law on National Court Register*], „Łódzki Biuletyn Notarialny", Nr 1 (1), January 2002;
14. Hipoteka na rzecz banków tworzących konsorcjum bankowe, [*Real estate mortgage as a security for the banks in syndicated lending projects*], „Przegląd Sądowy", Nr 4/2003 (together with T. Czechem);
15. Obejście prawa. Szkic na temat granic prawa i zasad jego wykładni, [*Circumvention of laws. Essay on limits of law and on legal interpretation*], w: Nadużycie prawa.

Konferencja Wydziału Prawa i Administracji Uniwersytetu Warszawskiego, redakcja naukowa H. Izdebski i Aleksander Stępkowski, LIBER, Warszawa 2003;

16. Rejestry przedsiębiorców w Europie [*Business registries in Europe*], (monografia - *book*), Oficyna Naukowa, Warszawa 2004;
17. Jawność jako wartość prawna [*Publicity as a value in law*], „Studia Iuridica", XLIII/2004
18. Budując na zdrowych podstawach. Przyszłość finansowania mieszkalnictwa w Polsce [*Building on progress. The future of housing finance in Poland*], *in Polish and English*. Raport opublikowany przez The Urban Institute Consortium (wraz z Fundacją Krakowski Instytut Nieruchomości), wspólnie z C. Rabenhorst, J. Łaszek, K.P. Follack ,Warszawa, maj 1997;
19. The Current Status of Polish Law on Statutory Liens (w:) Analysis and Recommendations for Revision of Statutory Lien Policy in Poland, raport w programie badawczym 180-0034, opublikowany przez The Urban Institute Consortium, wspólnie z C. Rabenhorst, J. Łaszek, K.P. Follack, Washington, July 1998;
20. The Economic Impact of Registered Pledge Systems in Countries Undergoing Economic Changes (Conference, Gdansk, 3-4 June 2002), published in: "Warsaw Newsletter. Baker & McKenzie", Summer Edition 2002, Vol. 4 No. 2 (19), in English and in Polish as: Wpływ zastawu rejestrowego na gospodarkę krajów dokonujących zmian systemowych, Gdańsk, 3-4 czerwca 2002 r., "Warsaw Newsletter. Baker & McKenzie", Summer edition 2002, Rok 4 Nr 2 (19);
21. Zastaw rejestrowy a inne prawne formy zabezpieczenia wierzytelności. Doświadczenia lat 2001 – 2003 na tle zmian prawa, w: Analiza ekonomicznego wpływu instytucji zastawu rejestrowego w Polsce, wydanie: Gdańska Akademia Bankowa oraz Instytut Badań nad Gospodarką Rynkową, Gdańsk, listopad 2003; [*Registered pledge and other legal instruments used to secure receivables. Experience from 2001 – 2003 comparing to changes in law, in: Analysis of the Economic Impact of the Registered Pledge, Editor: The Gdańsk Academy of Banking in co-operation with The Gdańsk Institute for Market Economy, Gdańsk, November 2003*] in English and in Polish, see web page of the East-West Management Institute www.ewmi.hu/banking2.php];
22. Doing business in 2004. Understanding regulation. A publication of the World Bank and Oxford University Press, Washington 2004 [Polish contributor], in English and in Polish as: Doing business 2004. Regulacje i ich znaczenie. Praca wydana wspólnie przez World Bank i Fundację Ius et Lex, Warszawa 2004;
23. Doing business in 2005. Removing obstacles to growth. Co-publication of the World Bank, the International Finance Corporation and Oxford University Press, Washington 2005 [Polish contributor]
24. Rejestry przedsiębiorców w Europie [*Business registries in Europe*] Oficyna Naukowa, Warsaw 2004 [*book, 120 pages*].
25. O praktycznym zastosowaniu hermeneutyki w wykładni prawa [*On practical use of hermeneutic philosophy in legal interpreattion*], w: Teoria i praktyka wykładni prawa. Materiały konferencji naukowej Wydziału Prawa i Administracji Uniwersytetu Warszawskiego odbytej w dniu 27 lutego 2004 roku, redaktor tomu Piotr Winczorek, LIBER, Warszawa 2005;

26. Rejestry publiczne. Funkcje instytucji [*Public Registries -Functions of the Institution*], Wydawnictwo LexisNexis, Warszawa 2005 (*book, 450 pages*);
27. Etyka prawnicza a filozofia prawa [*Legal ethics and philosophy of law*] (rozdział w książce pt. Etyka zawodów prawniczych, pod redakcją prof. H. Izdebskiego i P. Skuczyńskiego), Wydawnictwo LexisNexis, Warszawa 2006, s. 131-158;
28. Wpływ systemu prawa na rynek zabezpieczeń rzeczowych w Polsce. Raport Europejskiego Banku Odbudowy i Rozwoju, [*Impact of legal system to the security interests market in Poland. Report of European Bank for Reconstruction and Development*] „Prawo Bankowe", nr 2/2006, s. 44-53;
29. Filozofia prawa a teoria prawa: spór nierozstrzygalny czy pozorny?, „Studia Iuridica" XLV/2006, s. 211-232;
30. Uzasadnianie praw podmiotowych [*Justification of rights*] (poszerzona wersja wykładu przedstawionego na kolokwium habilitacyjnym w dniu 20 lutego 2006 r.), „Studia Iuridica" XLV/2006, s. 305-316;
31. Między *common law* a prawem kontynentalnym. Kodeks cywilny jako słownik angielsko-polski w praktyce banków, [*Between common law and civil law. The civil code as a dictionary in a banking practice*] „Przegląd Sądowy" nr 11-12/2006, s. 143-165.
32. Entre le *common law* et le droit continental. Code civil en tant que dictionnaire anglais-polonais dans la practique bancaire, w: "Langue, Droit et société", ed. Danuta Bartol, Presses Universitaires de Nancy P.U.N., 2006;
33. Sędziowie w procesie reformowania prawa. [*Judges in the process of reform in legal system*] w: J. Stelmach (red.) pt. Analiza ekonomiczna w zastosowaniach praktycznych [*Economic analysis of law in practical applications*], Kraków 2007;
34. Dostępność baz danych – stan dzisiejszy i kierunki zmian [*Access to public data basis – current regulations and perspectives*], „Biuletyn Bankowy" styczeń 2007, s. 22-26.

Exhibit B

EXHIBIT B

TO

DECLARATION OF DR HAB. TOMASZ STAWECKI

ENGLISH TRANSLATION OF EXCERPTS FROM THE

**ACT**
of August 29, 1997
**on the Protection of Personal Data**
(original text - Journal of Laws of October 29, 1997, No. 133, item 883)
(unified text - Journal of Laws of July 6, 2002, No. 101, item 926)
Amendment: 2004-01-01 Dz.U.2002.153.1271 art. 52
2004-05-01 Dz. U. 2004.33.285 art. 1,
2006-07-24 Dz. U. 2006.104.708 art. 178,
2006-10-01 Dz. U. 2006.104.711 art. 31)

Source:

website of
The Inspector General for the Protection of Personal Data of the Republic of Poland
>> http://www.giodo.gov.pl

**CHAPTER 1**
**General Provisions**

Article 1

1. Any person has a right to have his/her personal data protected.

2. The processing of personal data can be carried out in the public interest, the interest of the data subject, or the interest of any third party, within the scope and subject to the procedure provided for by the Act.

Article 2

1. The Act shall determine the principles of personal data processing and the rights of natural persons whose personal data is or can be processed as a part of a data filing system*.

2. The Act shall apply to the processing of personal data in:

1) files, indexes, books, lists and other registers,

2) computer systems, also in case where data are processed outside from a data filing system.

3) With regard to the personal data files prepared ad hoc, exclusively for technical, training, or higher education purposes, where the data after being used are immediately removed or rendered anonymous, only the provisions of Chapter 5 shall apply.

Article 3

1. The Act shall apply to state authorities, territorial self-government authorities, as well as to state and municipal organisational units.

2. The Act shall also apply to:   1) non-public bodies carrying out public tasks,   2) natural and legal persons and organisational units not being legal persons, if they are involved in the processing of personal data as a part of their business or professional activity or the implementation of statutory objectives - having the seat or residing in the territory of the Republic of Poland or in a third country, if they are involved in the processing of personal data by means of technical devices located in the territory of the Republic of Poland.

Article 3a

1. The Act shall not apply to:

1) natural persons involved in the processing of data for personal or domestic purposes exclusively,

2) subjects having the seat or residing in a third country, making use of technical devices located in the territory of the Republic of Poland for the transfer of data exclusively.

2. Except for the provisions of Art. 14-19 and Art. 36 paragraph 1, the Act shall also not apply to press journalistic activity within the meaning of the Act of January 26, 1984 - Press Law (Journal of Laws No. 5, item 24, with later amendments) and artistic and literary activity, unless the freedom of expression and information dissemination considerably violates the rights and freedoms of the data subject.

Article 4

The provisions of the Act shall apply, save where otherwise provided for by any international agreement to which the Republic of Poland is a party.

Article 5

Should the provisions of any separate laws on the processing of data provide for more effective protection of the data than the provisions hereof, the provisions of those laws shall apply.

Article 6

1. Within the meaning of the Act personal data shall mean any information relating to an identified or identifiable natural person.

2. An identifiable person is the one who can be identified, directly or indirectly, in particular by reference to an identification number or to one or more factors specific to his physical, physiological, mental, economic, cultural or social identity.

3. A piece of information shall not be regarded as identifiable where the identification requires an unreasonable amount of time, cost and manpower.

Article 7

Whenever in this Act a reference is made to any of the following, it shall mean:

1) data filing system - shall mean any structured set of personal data which are accessible pursuant to specific criteria, whether centralised, decentralised or dispersed on a functional basis,

2) processing of data - shall mean any operation which is performed upon personal data, such as collection, recording, storage, organisation, alteration, disclosure and erasure, and in particular those performed in the computer systems,

2a) computer system - shall mean a set of co-operating devices, utilities, procedures of data processing and software tools which assist personal data processing,

2b) security of data within computer systems - shall mean an implementation and usage of appropriate technical and administrative measures applied to protect data against unauthorized processing,

3) data erasure - shall mean destruction of personal data or such modification which would prevent determining the identity of the data subject,

4) controller - shall mean a body, an organisational unit, an establishment or a person referred to in Article 3, who decides on the purposes and means of the processing of personal data,

5) the data subject's consent - shall mean a declaration of will by which the data subject signifies his/her agreement to personal data relating to him/her being processed; the consent cannot be alleged or presumed on the basis of the declaration of will of other content,

6) data recipient - shall mean any person to whom the data are disclosed, exclusive of:
   a) the data subject,
   b) a person authorised to carry out data processing,

c) a representative referred to in Article 31a,
d) a subject referred to in Article 31,
e) state authorities or territorial self-government authorities to whom the data are disclosed in connection with the proceedings conducted,

7) third country - shall mean a country which does not belong to the European Economic Area.

## CHAPTER 2
## Supervisory Authority for Personal Data Protection

Article 8

1. The supervisory authority for the protection of personal data shall be the Inspector General for Personal Data Protection, hereinafter called "the Inspector General".

Article 12

The duties entrusted to the Inspector General comprise, in particular:

1) supervision over ensuring the compliance of data processing with the provisions on the protection of personal data,

2) issuing administrative decisions and considering complaints with respect to the enforcement of the provisions on the protection of personal data,

3) keeping the register of data filing systems and providing information on the registered data files,

4) issuing opinions on bills and regulations with respect to the protection of personal data,

5) initiating and undertaking activities to improve the protection of personal data,

6) participating in the work of international organisations and institutions involved in personal data protection.

Article 18

1. In case of any breach of the provision on personal data protection, the Inspector General ex officio or upon a motion of a person concerned, by means of an administrative decision, shall order to restore the proper legal state, and in particular:
1) to remedy the negligence,

2) to complete, update, correct, disclose, or not to disclose personal data,
3) to apply additional measures protecting the collected personal data,
4) to suspend the flow of personal data to a third country,
5) to safeguard the data or to transfer them to other subjects,
6) to erase the personal data.

2. The Inspector General's decisions referred to in Article 18 paragraph 1 may not restrict the freedom of the subject which nominates candidates or submits lists of candidates for presidential elections or the elections to the Diet, the Senate or territorial selfgovernment bodies or elections to the European Parliament, between the day when the election is announced and the voting day.

2a. The Inspector General's decisions as mentioned in Article 18 paragraph 1, regarding the filing systems referred in article 43 paragraph 1 point 1a, cannot order an erasure of personal data collected in inquiry activities carried out on a basis of legal provisions.

3. Should provisions of other laws regulate otherwise the performance of the actions referred to in Article 18 paragraph 1, these provisions are applicable.

## CHAPTER 3
## The Principles of Personal Data Processing

Article 23

1. The processing of data is permitted only if:
1) the data subject has given his/her consent, unless the processing consists in erasure of personal data,
2) processing is necessary for the purpose of exercise of rights and duties resulting from a legal provision,
3) processing is necessary for the performance of a contract to which the data subject is a party or in order to take steps at the request of the data subject prior to entering into a contract,
4) processing is necessary for the performance of a task provided for by law and carried out in the public interest,
5) processing is necessary for the purpose of the legitimate interests pursued by the controllers or data recipients, provided that the processing does not violate the rights and freedoms of the data subject.

2. The consent referred to in paragraph 1, point 1 may also be applied to future data processing, on the condition that the purpose of the processing remains unchanged.

3. Should the processing of data be necessary to protect the vital interests of the data subject and the condition referred to in paragraph 1, point 1 cannot be fulfilled, the data may be processed without the consent of the data subject until such consent can be

obtained.

4. The legitimate interests, referred to in paragraph 1, point 5 in particular, are considered to be:
1) direct marketing of own products or services provided by the controller,
2) vindication of claims resulting from economic activity.

# CHAPTER 7
## Transfer of Personal Data to a Third Country

Article 47

1. The transfer of personal data to a third country may take place only, if the country of destination ensures at least the same level of personal data protection in its territory as that in force in the territory of the Republic of Poland.

2. The provision of paragraph 1 above shall not apply to the transfer of personal data required by other laws or by the provisions of any ratified international agreement.

3. Nevertheless the controller may transfer the personal data to a third country provided that:
1) the data subject has given his/her written consent,
2) the transfer is necessary for the performance of a contract between the data subject and the controller or takes place in response to the data subject's request,
3) the transfer is necessary for the performance of a contract concluded in the interests of the data subject between the controller and third party,
4) the transfer is necessary or required by reasons of public interests or for the establishment of legal claims,
5) the transfer is necessary in order to protect the vital interests of the data subject,
6) the transfer relates to data which are publicly available.

Article 48

In cases other than those referred to in Article 47 paragraph 2 and 3 the transfer of personal data to a third country which does not ensure at least the same level of personal data protection as that in force in the territory of the Republic of Poland, may take place subject to a prior consent of the Inspector General, provided that the controller ensures adequate safeguards with respect to the protection of privacy, rights and freedoms of the data subject.

# CHAPTER 8
## Sanctions

Article 49

1. A person, who processes personal data in a data filing system where such processing is forbidden or where he is not authorised to carry out such processing, shall be liable to a fine, a partial restriction of freedom or a prison sentence of up to two years.

2. Where the offence mentioned at point 1 of this article relates to information on racial or ethnic origin, political opinions, religious or philosophical beliefs, religious, party or trade-union membership, health records, genetic code, addictions or sexual life, the person who processes the data shall be liable to a fine, a partial restriction of freedom or a prison sentence of up to three years.

Article 50

A person who, being the controller of a data filing system, stores personal data incompatible with the intended purpose for which the system has been created, shall be liable to a fine, the penalty of restriction of liberty or deprivation of liberty up to one year.

Article 51

1. A person who, being the controller of a data filing system or being obliged to protect the personal data, discloses them or provides access to unauthorised persons, shall be liable to a fine, the penalty of restriction of liberty or deprivation of liberty up to two years.

2. In case of unintentional character of the above offence, the offender shall be liable to a fine, the penalty of restriction of liberty or deprivation of liberty up to one year.

Article 52

A person who, being the controller of a data filing system violates, whether intentionally or unintentionally, the obligation to protect the data against unauthorised access, damage or destruction, shall be liable to a fine, the penalty of restriction of liberty or deprivation of liberty up to one year.

Article 53

A person who, regardless of the obligation, fails to notify of the data filing system for registration, shall be liable to a fine, the penalty of restriction of liberty or deprivation of liberty up to one year.

Article 54

A person who, being the controller, fails to inform the party to which the data relates, of its rights or of information which would enable that person to benefit from the provisions of this Act, is liable to a fine, partial restriction of freedom or prison sentence of up to one year.