James David Jacobs (JJ-7351)
Vasilis F.L. Pappas (VP-4281)
BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, NY 10036
(212)626-4100

Attorneys for Defendants and
Counterclaim Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                  :

SPANSKI ENTERPRISES, INC. and
POLTEL INTERNATIONAL L.L.C.,          :

    Plaintiffs,                      :

           -against-           :

TELEWIZJA POLSKA, S.A., ANNA      :
MILEWSKA, KRZYSZTOF SZTANDERA,
MARCIN BOCHENEK, JOHN DOES 1-10,   :              07 CIV 930 (GEL) (GWG)

    Defendants and Counterclaim Plaintiffs,   :

           -against-                

SPANSKI ENTERPRISES, INC., POLTEL
INTERNATIONAL L.L.C., TELEWIZJA
POLSKA U.S.A. INC., TELEWIZJA
POLSKA CANADA INC. and BOGUSLAW
M. SPANSKI,

    Counterclaim Defendants.
-------------------------------------------------------- X

## REPLY MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION TO COMPEL AND
## IN FURTHER SUPPORT OF TELEWIZJA POLSKA S.A.'S
## MOTION FOR A PROTECTIVE ORDER

Plaintiffs[1] portray TVP's redaction of documents as "stonewalling," "us[ing] foreign law to shield itself from discovery," and as "an extreme lack of good faith." (P.B. 8, 9, 11).[2] This is simply not true. As set forth in both the Stawecki and Brudkowski Declarations, the PDP is a serious law, the violation of which can result in severe criminal and civil sanctions on TVP, its officers, and its employees. TVP, after conferring with its Polish and U.S. counsel, has redacted the documents it has produced in a reasonable, good faith effort to comply with the laws of Poland, as well as the laws of the United States. If TVP were simply stonewalling in bad faith, it would have refused to produce any documents. Instead, it has produced over 6000 pages of documents, compared with plaintiffs' production of merely 375 pages of documents.

In a further good faith effort to comply with its U.S. law obligations, TVP applied to GIODO on July 19, 2007 to have the PDP protection on personal data waived for the purposes of this lawsuit. GIODO informed TVP's Polish counsel that a decision on TVP's application should be forthcoming within approximately two weeks of its application. Rather than compel TVP to produce unredacted documents, exposing TVP, its officers, and its employees to serious criminal and civil penalties, GIODO should be given the opportunity to waive the PDP for purposes of the instant proceedings.

There is no question that the PDP applies to the instant case. Thus, the only issue is whether the exceptions on which plaintiffs rely apply. As we show below, they do not.

---

[1] All defined terms are the same as those in TVP's Memorandum of Law in Opposition to Plaintiffs' Motion to Compel and in Support of TVP's Motion for a Protective Order, dated July 19, 2006.

[2] References to "P.B. __" refer to Plaintiffs' Memorandum of Law in Support of Motion to Compel the Production of Information That Has Been Redacted from Defendant Telewizja Polska, S.A.'s Document Production, dated July 19, 2007.

I.    **THE PDP PROHIBITS THE DISCLOSURE OF UNREDACTED DOCUMENTS IN THE UNITED STATES**

A.    **The PDP Prohibits the Disclosure of Personal Data to the U.S.**

Plaintiffs expert states that "[w]here [personal] data are to be transferred to a country that is not a member of the European Union, such recipient country has to offer personal data protection guarantees at least equal to those offered by Poland ... [and that] [t]ransferring personal data abroad in violation of this requirement may lead to a fine, restriction of freedom or imprisonment for up to two years." (Declaration of Tomasz Brudkowski In Support of Plaintiffs' Motion to Compel, dated July 18, 2007 (the "Brudkowski Decl.", ¶ 10). Mr. Brudkowski concedes that "[a]ccording to EU authorities, the level of protection of personal data in the United States is not adequate to this in EU." (Brudkowski Decl., ¶ 11). Therefore, plaintiffs' and TVP's expert witnesses agree that unless an exception to the PDP applies, the transfer of personal data to the United States is prohibited by the PDP and EU law.[3]

B.    **The "Public Interest" Exception Does Not Apply**

Article 47 of the PDP states that personal data may be transferred to a third country like the United States "if the transfer is necessary or required by reasons of public interest ... ." (Stawecki Decl., ¶ 24.2.c). Plaintiffs claim that this exception applies here because "the names of the employees and directors referenced in the

---

[3] In the introduction to his declaration, Mr. Brudkowski states without authority that the PDP "applies only to specified data contained in a data processing system, not to a name found in individual documents." (Brudkowski Decl., ¶ 6). He does not expand upon this statement, and does not cite any authority under Polish or EU law for this proposition, nor could he, as it is not the law of Poland or the EU. (Stawecki Decl., ¶ 17). Indeed, plaintiffs themselves seem to have abandoned this argument, making no mention of it in their brief in support of their motion to compel.

documents are necessary for the court to determine the validity of the parties' claims."
(P.B. 5).

This misconstrues the definition of "public interest" under Polish law.
(Declaration of Dr. Hab. Tomasz Stawecki in Further Support of Defendants' Opposition
to Plaintiffs' Motion to Compel Production of Unredacted Documents, dated July 24,
2007 (the "Rebuttal Stawecki Decl."), ¶ 4). Under Polish law, "the public interest
exception is to be interpreted very strictly." (Id., ¶ 5). "[T]he public interest of the
country to which the data is to be transferred (in the case of TVP that would be the
United States) should NOT be taken into account and is irrelevant in determining whether
the public interest principle has been made." (Id., ¶ 4).

Transfers necessary to the public interest under the PDP have been defined as
including transfers of data necessary to counter terrorist or money laundering activities.
(Id., ¶ 5). Under the EU Directive pursuant to which the PDP was enacted and with
which the PDP must be interpreted consistently, public interest transfers are limited to
international transfers of data between tax or customs administration authorities, or
between social security services. (Id., ¶ 6). Plaintiffs' expert himself concedes that
Polish commentators have defined public interest transfers as including transfers of
personal data necessary to counter money laundering activities, and transfers necessary
for tax, customs, or social security purposes." (Brudkowski Decl., ¶ 14). Significantly,
he does not cite one instance where the transfer was in aid of private party discovery.

In the present matter, the transfer of personal data of TVP employees and other
Polish citizens to the United States to allow the Court "to properly assess the legal
implications of various statements and correspondences contained in the documents, as

- 3 -

well as the validity of the parties' claims" is clearly not in the "public interest" as that

term is defined in Polish and EU law.  The instant case is a private commercial litigation

between private litigants.  It is not analogous in any way to the public interest activities to

which the public interest exception is limited in the PDP and EU law.

Indeed, taken to its logical conclusion, plaintiffs' assertion that the present private

litigation is in the public interest would render the entire PDP and EU Directive

meaningless.  In effect, plaintiffs argue that all private litigations between private litigants

are in the "public interest" rendering the Polish and EU laws wholly futile.  (Rebuttal

Stawecki Decl., ¶ 7).  Additionally, numerous U.S. Courts have recognized that European

Data Protection Acts prohibit the disclosure of personal data to the United States.  *See*,

*e.g.*, *In re Vitamins Antitrust Litigation*, 2001 U.S. Dist. LEXIS 8904 (D. D.C. June 20,

2001); *Salerno v. Lecia, Inc.*, 1999 U.S. Dist. LEXIS 7169 (W.D.N.Y. March 23, 1999);

*Volkswagen, A.G. v. Valdez*, 909 S.W.2d 900 (Sup. Ct. Tex. 1995).  Those courts did not

hold that the public interest exception applied.

**C.     The "Establishment of Legal Claims" Exception Does Not Apply**

Article 47 of the PDP states that the transfer of personal data outside the EU is

permitted if "required … for the establishment of legal claims."  (Stawecki Decl., ¶

24.2.c).  Plaintiffs contend this exception to the PDP applies here because "[t]he names of

the individuals contained in the documents are … necessary for the establishment of

Plaintiffs' legal claims and to defend against TVP's counterclaims."  (P.B. 6).[4]

---

[4] Mr. Brudkowski states that this exception is applicable for transfers in "pursuit" of legal claims, as opposed to the "establishment" of legal claims.  (Brudkowski Decl., ¶ 11).  However, in Mr. Brudkowski's own translation of the PDP, it states that the exception applies where "the transfer is necessary … for the <u>establishment</u> of legal claims."  (Id., Ex. 1, Art. 47.3.4;  emphasis added).

This argument must fail.  First, under Polish law, the "establishment of legal claims" must be interpreted very strictly.  (Stawecki Decl., ¶ 24.2.c).  Under the PDP, in order to meet this exception, "personal data to be transferred cross border must establish the claim, rather than just provide a means to possibly discover information or data that will establish the claim."  (Id.).  In other words, personal data may not be transferred to the United States from Poland as part of a routine U.S. discovery process to gather facts and discover evidence.  (Id.).  Here, TVP has produced 6000 pages of documents, which disclose the personal information of potentially hundreds of natural persons, only a fraction of whom could potentially yield any information relating to plaintiffs' claims and possibly none of which could "establish" plaintiffs' claims.  (Id.).  By plaintiffs' own admission, they seek to compel unredacted documents "to ascertain which TVP employees have relevant information and which individuals should be deposed."  (P.B. 6).  The transfer of personal data to the United States for this purpose is "improper and forbidden under Polish law."  (Stawecki Decl., ¶ 24.2.c).

The EU Directive provides much the same interpretation of this exception.  (Id.). In November, 2005, an independent European advisory body on data protection and privacy composed of representatives of each EU Member State and the EU (the "Working Party") adopted a "working document" interpreting the "establishment of legal claims" exception.  (Id.).  It stated that that the exception should "be subject to strict interpretation," and concluded that the exception could be used to justify the transfer of the personal data of a party to a litigation, but not the transfer of the personal data of a

---

Plaintiffs themselves refer to this exception in their memorandum of law as applying only where transfers are necessary for the "establishment" of legal claims.  (P.B. 5).  This is not a mere semantic difference, as Polish and EU law prohibit the transfer of personal data for the purpose of discovering information or data that will establish a claim

party's employees not parties to a lawsuit. (Id.). Therefore, this authority arguably authorizes the transfer of personal data of natural persons who are parties in this case (*e.g.*, Anna Milewska, Krzysztof Sztandera, and Marcin Bochenek) but not to transfer the personal data of TVP's other employees and natural persons.

The Working Party also concluded that the exception should be interpreted consistently with the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, to which both the United States and Poland are signatories. (Id.). Poland, however, made a reservation to the Hague Convention declaring that "it will not execute Letters of Request issued for the purpose of obtaining 'pre-trial discovery of documents' as known in common law countries." (Id.). That reservation to the Hague Convention precludes plaintiffs' argument that the personal data in TVP's documents -- which by plaintiffs' own admission is sought for the purpose of gathering facts and discovery evidence -- should be unredacted and disclosed to plaintiffs.

Furthermore, as set forth above, numerous U.S. Courts have recognized that European Data Protection Acts prohibit the disclosure of personal data to the United States. *See, e.g., In re Vitamins*, 2001 U.S. Dist. LEXIS 8904 at * 53; *Salerno*, 1999 U.S. Dist. LEXIS 7169 at *9-10; *Volkswagen*, 909 S.W.2d at 901-903. They did not hold that the "establishment of legal claims" exception applied.

### D.     The "Publicly Available Information" Exception Does Not Apply

Plaintiffs' expert claims that the PDP does not prohibit the disclosure of publicly available information. (Brudkowski Decl., ¶¶ 11, 19-23). Plaintiffs assert that because the identities of certain of TVP's employees are publicly available on Poland's national

register and, to a lesser extent, on TVP's website, it follows that TVP's redaction of all personal data in the documents produced is not required by the PDP. (P.B. 4-5).

However, this interpretation of the publicly available exception wholly ignores the EU Directive pursuant to which the PDP was enacted and with which the PDP must be consistently interpreted. The EU Directive provides that personal data can be transferred to a non-EU country only if the transfer is made _from_ a public source. (Rebuttal Stawecki Decl., ¶¶ 14-15). Personal data may not be transferred from a private source, merely because such personal data is otherwise available from a public source. (Id.). The identity of Polish individuals is available from a great many public sources. For example, an individual's identity may be located in a phone book, in a birth registry, and so on. The fact that an individual's identity is available from a public source does not permit a private company to disclose the identity of those individuals in private commercial documents. (Id.). If plaintiffs' interpretation of Polish and EU law were taken to its logical conclusion, nobody's identity would be protected by the PDP since practically everyone's identity is publicly available in some way, shape or form.

Even if plaintiffs were correct, the public availability of a limited number of TVP employees does not justify the wholesale production of unredacted documents to plaintiffs. (Id., ¶ 21). TVP is a company of over 4000 employees, whose privacy is protected by the PDP and EU law, and TVP has produced 6000 pages of documents which contain the personal data of possibly hundreds of TVP employees. (Id.). All of their personal data cannot be transferred to the United States simply because TVP has posted the personal data of a limited number of its employees on its website. "At most ... TVP would be permitted only to transfer the personal data of those very individuals

- 7 -

whose names are listed on TVP's website, and is compelled to redact the personal data of the rest." (Id.).

## II.   THE STIPULATED PROTECTIVE ORDER DOES NOT ADEQUATELY PROTECT THE PERSONAL DATA IN THE DOCUMENTS

Plaintiffs allege that "the interests of Poland in protecting the privacy of its citizens is not harmed here [because] … [t]he parties have agreed to a stipulated protective order, which, among other things, guarantees the privacy of these individuals." (P.B. 8). Plaintiffs claim that in the stipulated protective order, "the parties agreed that the information shall not be used for any purpose other than for this litigation and shall be kept confidential." (Id.).

This is simply not the case. If this Court orders the production of unredacted documents absent further modification, the stipulated protective order provides no privacy. In early drafts of the stipulated protective order, TVP suggested that any personal data disclosed to plaintiffs would not be used for any purpose other than for this litigation. (Affirmation of Vasilis F.L. Pappas, dated July 24, 2007 (the "Pappas Affirm."), ¶ 3). However, plaintiffs insisted that if the Court were to compel TVP to produce unredacted documents, as opposed to TVP producing unredacted documents pursuant to a GIODO decision, that the same protections not be afforded to individuals identified in the documents. (Id., ¶ 4). The stipulated protective order was accordingly modified. (Id., ¶ 6).

III.   **GIODO SHOULD BE GIVEN THE OPPORTUNITY TO RULE ON
       TVP'S APPLICATION TO WAIVE THE PDP**

Plaintiffs' assertion that TVP has not applied to GIODO to seek permission to release the personal data of the individuals identified in the documents is incorrect. Once the parties agreed to the final terms of the stipulated protective order, TVP applied to GIODO to seek this permission on July 19, 2007. (Pappas Decl., ¶ 7). TVP annexed a Polish translation of the stipulated protective order to its application to GIODO to demonstrate to GIODO that any personal data derived from the documents produced to plaintiffs would be maintained confidentially, thereby increasing the likelihood that GIODO would grant permission. (Id. at ¶¶ 8-9).

IV.   **PLAINTIFFS' EXPERT OPINION IS NOT ENTITLED TO FULL
      WEIGHT**

For the purposes of this reply brief, TVP has treated the Brudkowski Declaration as credible, albeit erroneous and incorrect. However, it is, at best, quite peculiar.

Unlike Mr. Stawecki, who disclosed in his declaration his Of Counsel relationship to TVP's Polish attorney, Mr. Brudkowski failed to disclose that he is, in fact, plaintiffs' attorney in Poland. (Stawecki Decl., ¶ 9). Furthermore, also unlike Mr. Stawecki, Mr. Brudkowski does not have, or even purports to have, any special expertise in the PDP, the EU Directive, or Polish or European privacy law. Rather, Mr. Brudkowski apparently bases his qualifications to testify on the PDP, at least in part, on the fact that the founding partner of his 7 year old law firm is a former partner of the Warsaw offices of Hogan & Hartson and White & Case. (Id., ¶ 2).

Apparently to rectify his lack of expertise on the subject which he testifies, Mr. Brudkowski states that he prepared his declaration with the assistance of a Polish

- 9 -

attorney, Mr. Wieszczycki, to whom he refers as a "privacy law expert." (Brudkowski Decl., ¶ 3). Mr. Brudkowski supports that conclusion citing Mr. Wieszczycki's experience as an "inspector" at GIODO for 2 years and his status as a Polish "lawyer." It is not disclosed what Mr. Wieszczycki's responsibilities at GIODO were, or how he developed his purported expertise in privacy law. Furthermore, Mr. Wieszczycki purports to sign Mr. Brudkowski's declaration, even though the declaration begins with "I, TOMASZ BRUDKOWSKI, hereby declare as follows," and concludes with Mr. Brudkowski's averment "I declare under penalty of perjury" that the declaration is true and correct.

## CONCLUSION

For the foregoing reasons, TVP requests that plaintiffs' motion to compel the production of unredacted documents be denied, and that TVP's motion for a protective order be granted.

Dated: New York, New York
       July 24, 2007

                                    BAKER & McKENZIE LLP

                                    By
                                       James David Jacobs (JJ-7351)
                                       Vasilis F.L. Pappas (VP-4281)
                                       Baker & McKenzie LLP
                                       1114 Avenue of the Americas
                                       New York, New York 10036
                                       (212) 626-4100

                                       *Attorneys for Defendant*
                                       *Telewizja Polska, S.A.*