UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SPANSKI ENTERPRISES, INC. and POLTEL
INTERNATIONAL L.L.C.,

    Plaintiffs and Counterclaim Defendants,

-against-

TELEWIZJA POLSKA, S.A., ANNA MILEWSKA,
KRZYSZTOF SZTANDERA, MARCIN BOCHENEK, JOHN
DOES 1-10,

    Defendants and Counterclaim Plaintiffs,

-against-

TELEWIZJA POLSKA U.S.A. INC., TELEWIZJA POLSKA
CANADA INC. and BOGUSLAW M. SPANSKI,

    Counterclaim Defendants.

07 CIV 930 (GEL) (GWG)

## DECLARATION OF DR HAB. TOMASZ STAWECKI
## IN FURTHER SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF UNREDACTED DOCUMENTS

    I, Dr hab. Tomasz Stawecki, under penalties of perjury, do hereby declare and state as follows:

### Introduction

    1. My name is Tomasz Jan Stawecki. My qualifications are set forth in my Declaration of July 19, 2007, which was previously submitted in support of defendants' opposition to plaintiffs' motion to compel production of unredacted documents. As one of the key arguments made in this Declaration refers to publicly available registries, I need to mention that I am the author of two comprehensive books on the system of the public registries in Poland and in Europe – Rejestry Publiczne. Funkcje instytucji (Public Registries

1

– Functions of the Institution), 2005 and Rejestry Przedsiębiorców w Europie (Business Registries in Europe), 2004.

2. I make this declaration in further support of defendants' opposition to plaintiffs' and, to the extent applicable, counterclaim defendants', motion to compel production of unredacted documents and to rebut the Declaration of Tomasz Brudkowski, dated July 18, 2007 (the "Brudkowski Decl."). This declaration is based upon my expert knowledge of Polish public law, civil law systems in general, applicable European law and in particular the Law of August 29, 1997 on Personal Data Protection (the "PDP Law").

### The Instant Case Does Not Fall Under the "Public Interest" Exception to the PDP

3. In his Declaration, Mr. Brudkowski states that personal data may be transferred to the United States if "the transfer is necessary or required by reasons of public interests." (Brudkowsky Decl., ¶ 11). He then concludes that plaintiffs' legal claims in the instant case can be viewed as being in the "public interest" because "[i]t is clearly in public interest to allow the Judge to proceed with the case and enable claims to be resolved, thus the transfer of personal data to United States, as necessary for the public interest, should not be considered breach of the [PDP]." (Brudkowski Decl., ¶ 16).

4. This is not the case. While reviewing whether the public interest exemption has been made, one needs to take into account only the Polish laws and not any foreign laws. The same view is supported by one of the leading commentators to the PDP Law, who not only confirms that but also even expressly emphasizes that in particular the public interest of the country to which the data is to be transferred (in the case of TVP that would be United States) should NOT be taken into account and is irrelevant in determining whether the public interest principle has been made (A. Drozd, Ustawa o ochronie danych osobowych. Komentarz. Wzory pism i przepisy, Warsaw 2006, page 305).

5. Under Polish legal doctrine the public interest exemption is to be interpreted very strictly. In the legal literature we find a few examples of what is and what is not public interest in the meaning of the PDP Law. For example, the transfer of data necessary to counter terrorist activities or stop money laundering do qualify as such. Even with respect to the last example - terrorist activities (which everyone must admit is quite obvious) - the commentator to the PDP Law stresses that the transfer of data is allowed only following a case-by-case review and only if such transfer is in fact "necessary" to such protection against terrorist activities (A. Drozd, Ustawa o ochronie danych osobowych. Komentarz. Wzory pism i przepisy, Warsaw 2006, page 305).

6. Moreover, in the EU Directive pursuant to which the PDP Law was enacted – (the Directive 95/46/EC of the European Parliament and of the Council of 24 October 1995 on the protection of individuals with regard to the processing of personal data and on the free movement of such data, Oj L 281.11.1995, p.31, "EU Directive"), the transfers necessary for the "public interest" are defined as international transfers of data between tax or customs administration or between services competent for social security matters. It is clear that the intention of the EU Parliament and the Council was to limit the public interest to obvious cases, as the two listed above. The same interpretation principle must apply with respect to the PDP Law.

7. The interpretation as offered by Mr. Brudkowski is incorrect, not only in a purely legal sense, but also in a practical sense. To interpret this clause as broadly as does Mr. Brudkowski would in fact render the clause meaningless and so is also illogical.

8. Clearly, in the instant case, litigation between private litigants that does not affect the "public interest" as that term is defined in Polish or EU law and thus transfers of personal data to the United States are not permitted by this exception.

### The Instant Case Does Not Fall Under the "Legal Claims" Exception to the PDP

9. In his Declaration, Mr. Brudkowski also states that personal data may be transferred to the United States if such a transfer is "in the pursuit of legal claims." (Brudkowski Decl., ¶ 11). He then alleges that "since the disclosure of the names contained in TVP's documents is necessary for Plaintiff to both present its claims and in defense of TVP's counterclaims, the disclosure by Defendant is permitted by the [PDP]." (Brudkowski Decl., ¶ 18)

10. Again, Mr. Brudkowski is incorrect. As set forth in my Declaration of July 19, 2007, the present litigation between plaintiffs and defendants cannot fall under this exception to the PDP prohibition of cross-border transfers of personal data outside the EU. Mr. Brudkowski uses a standard of "pursuit", rather than that which the statute requires, i.e., "is NECESSARY for the purpose of exercise of rights and duties resulting from a legal provision" (article 23) or ""for the ESTABLISHMENT of legal claims" (article 47). This exception does not apply to the present litigation

### The Instant Case Does Not Fall Under the "Publicly Available Documents" Exception to the PDP

11. In his Declaration, Mr. Brudkowski also states that personal data may be transferred to the United States if "the transfer relates to data which are publicly available." (Brudkowski Decl., ¶ 11). He concludes that because the personal data of a number of TVP's officers and directors are publicly available, TVP is free to transfer that and other personal data cross-border to the United States. (Brudkowski, ¶¶ 19-23).

12. I do not share that view for reasons specified below.

13. Let me start by saying that while interpreting Polish law, one need to take into account the laws of the European Union. This has been confirmed by the Polish Supreme Court in several rulings, among others in resolution dated July 13, 2006 (III SZP 3.06), which

4

says that "due to the fact that provisions in the subject case have been implemented to the Polish legal system in order to adapt them to the European Union legal system, they must be interpreted taking into account the aims and content of such Directive (…)". The same ruling then says that "the provisions of the Polish law should be interpreted in the light of the European Union legislation, even if the facts of the case were related to events taking place before Poland's accession to the European Union" (see also: judgments of the Polish Supreme Court dated January 8, 2003, III RN 239/01 and III RN 240/01, OSNP 2004, no. 3, item 42; dated February 17, 2004, I PK 386/03, OSNP 2005, no. 16; dated August 12, 2004, III PK 38/04, OSNP 2005, no. 4, item 55).

14. Mr. Brudkowski's opinion – while describing the public availability principle - does not take into account the EU Directive. The PDP Law implements into Polish law the EU Directive. Article 47 of the PDP Law reflects and implements Article 26 of the EU Directive. While Article 47 Section 3 point 6 refers to data that is "publicly available", Article 26 Section 1 (f) – which was the basis for the adoption of Article 47 Section 3 point 6 in the first place – specifies that data can be transferred to a third country only if "the transfer is made <u>from</u> a register which according to laws or regulations is intended to provide information to the public and which is open to consultation either by the public in general or by any person who can demonstrate legitimate interest, to the extent that the conditions laid down in law for consultation are fulfilled in the particular case."

15. It should be noted that the cited provision of the EU Directive allows for the transfer of data to third countries only if the data is taken "<u>from the registry</u>" and not in case where the data is available "in the registry". The difference there is not linguistic but crucial to the interpretation process. The EU Directive clearly refers only to the situation where the data being subjected to the transfer is the data taken from the registry. This is not only correct but also logical. In any modern society in the world one may access huge amounts of data

5

available in public. It is logical to allow transferring the data obtained from such registry to third countries, even such which do not meet the EU data protection standards. Thus, for example, if one receives an excerpt from the commercial registry, where personal details of management board members are contained, one is allowed to send that excerpt to a third country. Having said this, I need to emphasize that the exemption, as specified in Article 26 Section 1 (f) of the EU Directive, does not go as far as to allow the transfer of any data which, although available in the registry, comes from private documents or otherwise and not be obtained from the registry itself.

16. Now, let me comment on the Polish Supreme Court decision of November 19, 2003 ref. no. I PK 590/02 which Mr. Brudkowski cites. The cited Supreme Court case does not deal with date protection regime but rather with the general civil law regime regarding the protection of one's personal reputation, respect and goodwill as well as one's fundamental rights such as liberty (Article 23 and the following of the Civil Code), the breach of which qualifies as an act similar to what in the common law countries is known as defamation.

17. This case was about the infringement of the personal reputation of an employee who alleged that his name was improperly disclosed. The Supreme Court found that the disclosure by the employer of a surname (name) of an employee without the latter's consent is allowed only under certain conditions. Mr. Brudkowski does not, however, say what factual status was the background for entering such a judgment. In the case then under consideration the plaintiff (a natural person) accused his employer (a commercial company) of having placed, without the employee's consent, in one of the Polish newspapers an announcement where the plaintiff had been indicated as the contact person to deal with the matter described in the announcement. The plaintiff was the person in charge of dealing with this type of matters in the company. However, he argued in the lawsuit that using his surname next to the company's business name "could have aroused wrong connotations". The Court's

argumentation goes towards proving that since the plaintiff was in charge of handling the matter described in the announcement (selling a machine) and his key responsibilities included contacting the interested contractors, the employer had to disclose his surname together with his company telephone number in the press announcement. With such factual status underlying the case the Polish Supreme Court very rightly – also in my view – held that prohibiting the employer from using the employee's surname in such a situation in a Polish newspaper and in the territory of Poland would be just absurd.

18.   The issue of permissibility of disclosing in the press announcement in the territory of Poland that an X employee is entitled to handle a Y matter bears zero relation to the issue of transferring several thousands of pages of documents to the United States including the personal data of tens and hundreds of employees and persons co-operating with TVP. In the TVP case an utterly different legal regime has to be applied. The refusal by TVP to transfer the documents does not result from the concern about infringing employees' personal reputation or his or her fundamental rights. The latter is not protected under the PDP Law but rather under the mentioned above separate legal regime.

19. Additionally, one needs to note that if the proceedings were pending in Poland or in any other European Union country, the documents – if transferred in accordance with the civil procedure in operation in such country – would be transferred without redactions. But since the trial is held in the United States, the PDP Law, as interpreted in view of the EU Directive, governs the issue of permissibility of data transfer. The Supreme Court itself in the judgment cited by Mr. Brudkowski, which Mr. Brudkowski also fails to mention, emphasized that these two legal regimes were distinct from each other, i.e. the regulations governing the personal data protection as contained in the PDP Law and the laws governing the protection of employees' reputation as contained in the Polish Civil Code. The judgment pertains to the second of the said regimes and is more than justified. However, it by no means applies to the

TVP case, which is governed in the first place by the first set of regulations in Article 47 of the PDP Law and the EU Directive.

20. Finally, even if Mr. Brudkowski were correct in stating that publicly available personal data may be "widely processed by the employer without the consent of the data subject," this would be limited to the processing of personal data in Poland. (Brudkowski, ¶ 20). The processing of personal data in Poland is one activity covered by the PDP Law under Article 23. The cross-border transfer of personal data is a separate activity covered also by the PDP Law under Article 47 and is subject to significantly tighter restrictions. So even if Mr. Brudkowski was accurate in his statement that an employer may process personal data where such personal data is publicly available, it does not follow that an employer may transfer such personal data outside the EU.

21. With regard to Mr. Brudkowski's assertion that TVP publishes the personal data of its employees on its website, I may add even if it could be said that the public availability of personal data permits the cross-border transfer of personal data to the United States, this would be limited to the individuals specifically named on TVP's website. The fact that TVP has named a few of its employees on its website could not possibly justify the wholesale production of over 6000 pages of unredacted documents disclosing the personal data of a great many more employees. TVP is a company of over 4,000 employees, whose privacy is protected by the PDP and EU law. All of their personal data cannot be transferred to the United States simply because TVP has posted, whether intentionally or inadvertently, the personal data of 100 or so employees on its website. At most -- assuming Mr. Brudkowski's interpretation of Polish law is correct -- TVP would be permitted only to transfer the personal data of those very individuals whose names are listed on the website, and is compelled to redact the personal data of the rest.

8

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 24, 2007 in Warsaw Poland.

_____

Dr hab. Tomasz Stawecki

9