THIS AGREEMENT made the 30th, day of April 2002, and effective as of 1st day of January, 2002

BETWEEN:

        SPANSKI ENTERPRISES INC., a corporation incorporated under the laws of the Province of Ontario, and having its head office in the city of Mississauga, in the Province of Ontario, Canada (the "Licensor")

        - and -

        EUROVU S.A., a corporation incorporated under the laws of Switzerland, and having its head office in the city of Sion, Switzerland (the "Licensee")

WHEREAS by an agreement made as of the 14th day of December, 1994 with subsequent Amendments, the Licensor acquired the exclusive right throughout North America and South America to receive, retransmit and utilize the signal of a certain television programs known as "TV POLONIA" and "TVP 3 REGIONALNA" as produced by Telewizja Polska S.A., ("Head License" as per schedule "A");

AND WHEREAS the Licensor proposes to grant a license to the Licensee whereby the Licensee shall have the non-exclusive right to use of the said television programs throughout the territory of the United States of America.

ON CONSIDERATION OF mutual covenants contained in this Agreement, the Licensor and Licensee agree as follows:

1. DEFINITIONS:

In this Agreement the following phrases shall have the following meanings respectively:

"Signal" shall mean the signal of television program known as "TV POLONIA" produced and transmitted on to the European satellite by Telewizja Polska S.A, and the signal of program known as "TVP 3 REGIONALNA" as produced by Telewizja Polska S.A. and compiled by Licensor, and transmitted on to the North American satellite;

"Programming Service" shall mean the television programs known as "TV POLONIA", and "TVP 3 REGIONALNA" produced by Telewizja Polska S.A.;

"Territory" shall mean the territory of The United States of America.

CONFIDENTIAL                                            SEI 002787

2. **LICENSE**

    2.1   Grant of License.   Subject to the terms and conditions hereof, and the due performance by the Licensee of its obligations, the Licensor grants and the Licensee accepts a license to receive, retransmit and utilize the Signal in the Territory. This Agreement shall be the subject to and shall incorporate all the terms and conditions of the Head License.

    2.2   Right to sublicense.  Licensee may sub-license the rights and license granted hereby by this Agreement, for the purpose of obtaining commercial distribution of the Programming Services in the Territory. Such sub-license may be granted to entities operating within the Territory, and on the basis of generally accepted in the television industry, business terms.

3. **TERM**

    3.1   Term of the Agreement.   This Agreement is effective as of January 1st, 2002 and shall continue for the period of one (1) year, unless terminated pursuant to Article 5, below ("Initial Term").

    3.2   Term Renewal.   This Agreement shall automatically be renewed for additional one (1) year terms ("Renewal Term"), unless Licensor notifies Licensee of its intent to terminate it. Such notice shall be given in writing, minimum thirty (30) days prior to the expiry of the term that by Licensor choosing will be the last.

4. **SIGNAL DELIVERY TO THE TERRITORY**

    4.1   Cost of Transmission.   Licensee shall be responsible for the transmission of the Signal, including its cost, to and in the Territory.

5. **TERMINATION**

    5.1.   Termination for Breach or Default.  Subject to Section 5.2 below, upon thirty (30) days prior written notice either party may terminate this Agreement in the event: (i) the other party has made any material misrepresentation; (ii) the other party has breached any of the material warranties, covenants or material obligations; (iii) the other party becomes insolvent or seeks relief under any insolvency statute, is placed in receivership or liquidation, or makes any assignment for the benefit of creditors. The right of a party to terminate this Agreement in any such instances shall be in addition to any other rights or remedies it may have.

    5.2   Opportunity to Cure.  Upon receiving written notice of termination due to breach or default as specified in Section 5.1 above, the notified party shall use its

CONFIDENTIAL

reasonable efforts to immediately commence to cure such breach or default; provided however, that the notified party shall have up to a maximum of thirty (30) days, if needed, from the receipt of such notice to cure the breach or default or if such cure is capable of cure but cannot be reasonably completed in such period, and the defaulting party has commenced and is diligently pursuing such cure, then for such longer period necessary to complete such cure, but in no event to exceed ninety (90) days in total. If the breach or default is timely cured, the notice of termination shall be null and void.

## 6. MISCELLANEOUS

6.1   Licensor's rights in Programming Service.   All rights, title and interest in and to the Programming Service, and all advertising and promotional materials produced by Licensor, ideas, formats and concepts contained therein or used in connection therewith (including all copyrights) shall, as between the parties, at all times be the sole property of Licensor (as defined in the Head License), and Licensee shall not at any time do or cause to be done, and shall exercise its best efforts to ensure that none of its Representatives or customers does or causes to be done, any act or thing impairing or tending to impair any part of any right, title or interest of Licensor in or to any rights to the Programming Service; provided, however, that any challenge of the validity of any proprietary right in a legal proceeding shall not be construed to be an act tending to impair said right, title or interest.

Licensee agrees that:

(a) it shall immediately notify Licensor of any claims or objections, or indications of claims or objections, that use of the hereby granted rights to the Programming Services may, or will, infringe the proprietary rights of a third party;

(b) it shall not tolerate any infringement, illegal use or misuse by third parties of the hereby granted rights to the Programming Services, and it shall immediately notify Licensor of any such infringement, illegal use or misuse that comes to the attention of Licensee.

6.2   Counterparts.   This Agreement may be executed in one or more identical counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

6.3   Assignment.   Licensee shall not be entitled to assign this Agreement without the prior written consent of Licensor.

6.4   Force Majeure.   Notwithstanding anything to the contrary in this Agreement, neither party shall be liable to the other for failure to fulfill its obligations hereunder if such failure is caused by or arises out of an act of force majeure including acts of God, war, strike, riot, labor dispute, natural disaster, technical failure (including failure of all or part of the satellite transponders on which the Programming Service is delivered by Licensee to the Territory, or of the related uplinking or other equipment),

CONFIDENTIAL                                               SEI 002789

FROM :                           FAX NO. :                    Aug. 28 2007 06:06PM  P4

governmental order or regulation or any other reason beyond the reasonable control of the party whose performance is prevented during the period when party is unable to fulfill its obligations hereunder by reason of such occurrence.

6.5   Waiver.   The failure of either party at any time to enforce any right or remedy available to it under this Agreement or otherwise with respect to any breach or failure by the other party shall not be construed to be a waiver of such right or remedy with respect to any other breach or failure by the other party.

6.6   Notices.   Except as otherwise expressly set herein, any notices to be given pursuant to this Agreement ("Notice") shall be in writing, signed by the party issuing them, and sent by: (i) facsimile transmission; (ii) first class certified mail, postage prepaid; or (iii) overnight courier service, charges prepaid, to the party to be notified, addressed to such party at the following address, or sent by facsimile to the following fax number, or such other address or fax number as such party may have substituted by notice given to the others in accordance with this Section. The sending of such notice with confirmation or receipt thereof (in the case of facsimile transmission) or receipt of such notice (in the case of delivery by certified mail or by overnight courier service) shall constitute the giving thereof:

If to Licensee:   EuroVu S.A.
                  5, Rue du Pre-Fleuri.
                  1950 Sion (Valais)
                  Switzerland
                  Attention: Jean-Marc Viala
                  Fax No. 41.22.906.8182

If to Licensor:   Spanski Enterprises Inc.
                  5100 Montclair Drive
                  Mississauga, Ontario
                  L5M 5A6
                  Canada
                  Attention: B. M. (Bob) Spanski
                  Fax No.: 01.905.569.8099

6.7   Governing Law and Jurisdiction.   The laws of the State of New York shall govern this Agreement. The federal and state courts located in the City of New York shall have exclusive jurisdiction to hear and determine any claims, disputes, actions or suits which may arise under or out of this Agreement.

6.8   Severability.   The Parties agree that each provision of this Agreement shall be construed as separable and divisible from every other provision and that the enforceability of any one provision shall not limit the enforceability, in whole or in part, of any other provision hereof. The invalidation or unenforceability of any of the provision

SEI 002790

FROM : FAX NO. : Aug. 28 2007 06:07PM P6

cumulative and shall not affect in any manner any other remedies that the other party may have by reason of such default or breach. The exercise of any right or remedy herein provided shall be without prejudice to the right to exercise any other right or remedy provided herein, at law, or in equity.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

EUROVU S.A.

*(signature)*

Jean-Marc Viala
President

SPANSKI ENTERPRISES INC.

*(signature)*

Boguslaw M. Spanski
President

CONFIDENTIAL

SEI 002792